## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TERESA Y. WEINACKER,            )
)
     Plaintiff,              )
)
vs.                       )
)
**CHARLES BAER**, Assistant District    )        CIVIL ACTION
Attorney, in individual and official    )        FILE NO.
capacities; **TRAVIS M. BEDSOLE, JR.**,  )        15-CV-0267-WS-C
Bankruptcy Administrator, United States )
Bankruptcy Court, in individual and official )
capacities; **HENRY A. CALLAWAY**, Hand  )
Arendall Lawyer, in individual and     )
official capacities; **KRISTI K. DUBOSE**, in individual )
and official capacities; **DONALD A. FRIEDLANDER**, )
Friedlander Law Firm, in individual and   )
official capacities; **JONATHAN B.**       )
**FRIEDLANDER**, Friedlander Law Firm, an )
individual and official capacities;    )
**IRVIN GRODSKY**, Irvin Grodsky     )
PC Lawyer, in individual and official   )
capacities; **CALLIE V. S. GRANADE**, District )
Judge, United States District Court, in  )
individual and official capacities; **CHARLES** )
**HENDRICKS**, Wal-Mart Lawyer, in individual )      **DEMAND FOR JURY TRIAL**
and official capacities; **KATHERINE P.**   )
**NELSON**, Magistrate Judge, United States )
District Court, in individual and official  )
capacities; **LISA M. REITER**, FBI Special   )
Agent, in individual and official capacities; )
**WILLIAM S. SHULMAN**, Judge, United  )
States Bankruptcy Court, in individual and )
official capacities; **AMY WHITE**, FBI Special )
Agent, in individual and official capacities; )
**DEPARTMENT OF JUSTICE, LORETTA E. LYNCH** )
and/or **ERIC H. HOLDER, JR.**, a federal executive )
department of the U.S. government;    )
**OFFICES of the UNITED STATES ATTORNEYS**, )
Southern District of Alabama,      )
**KENYEN R. BROWN** and **JOHN CHERRY**, an  )

FILED MAY 21 '15 PM 2:44 USDC-ALS

agency of the U.S. government;
**FEDERAL BUREAU INVESTIGATION, JAMES**
**COMEY**, an agency of the U.S. government;
**UNITED STATES COURTS – JUDICIARY,** federal
government – judicial branch; **UNITED**
**STATES COURTS – ADMINISTRATIVE, JAMES C.**
**DUFF**, federal government – administrative
Branch; **FRIEDLANDER LAW FIRM**, Mobile,
Alabama law firm, privately held company
and/or corporation in Mobile, Alabama;
**HAND ARENDALL LLC, ROGER L. BATES, JAMES**
**T. ALLEN**, Mobile, Alabama law firm, limited
liability corporation; **IRVIN GRODSKY PC**, Mobile,
Alabama law firm, a professional corporation;
**WAL-MART STORES, INC., DOUG MCMILLON,**
**KAREN ROBERTS,** a Delaware corporation;
**NATIONAL LOAN ACQUISITIONS COMPANY,**
**ROBERT L. STEVENSON**, privately held
Company and/or corporation in Wilsonville,
Oregon; **JOHN DOES I THROUGH X,**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Defendants.

## COMPLAINT FOR VIOLATIONS OF CONSTITUTIONAL
## RIGHTS, CONSPIRACY AND OBSTRUCTION

This complaint arises from a hearing on December 1, 2009 (Adversary Proceeding No. 09-01122, National Loan Acquisitions Company v. Teresa Y. Weinacker). Audio recordings, FBI discovery, court transcripts, interview notes, court documents, bank records, Wal-Mart records, etc. is the evidence. Beginning at the hearing, throughout the proceedings, during the investigation, presentment at the Grand Jury, during the criminal proceedings and continuing into the future, Weinacker's Fourth, Fifth, Sixth, Ninth and Fourteenth United States Constitutional rights were violated as well as violations of the Alabama Constitution Article 1 §§ One, Five, Six, Thirteen, Thirty-Five and Thirty-Six. The discovery in this case will provide the reasons Weinacker needed to be neutralized. Trashing Weinacker's reputation, making her seem dishonest even criminal was the way Weinacker was neutralized by the Defendants in this case. It was not hard for the Defendants to accomplish their mission.

COMES NOW, Weinacker, Teresa Y. Weinacker, *pro se*, and hereby files this Complaint for Damages and Injunctive Relief, and swears and certifies of her personal knowledge the following allegations and facts:

## JURISDICTION AND VENUE

1) Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1332, 1343 (a), 1357 and 1390 (a), as this action seeks redress for the violation of Weinacker's Constitutional and civil rights. This action arises under the authority vested in this Court by virtue of 42 U.S.C. §§ 1981 (a), 1983, 1985 (3), 1986, and 1988 as this action seeks damages for the violation of Weinacker's Constitutional and civil rights.

2) Venue lies in the Southern District of Alabama in Mobile as the claims arise from acts of the Defendants perpetrated therein Mobile and Baldwin County, Alabama.

3) On information and belief, it is alleged that each of the named Defendants resides in this judicial district with at least one defendant outside of this judicial district.

## PARTIES

4) TERESA WEINACKER ("Weinacker") at all times relevant hereto, Weinacker was a citizen of the United States and a resident of the State of Alabama.

5) CHARLES BAER ("Baer") at all times relevant hereto, Baer was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in his capacity as an Assistant U.S. Attorney for the Southern District of Alabama. Baer was an employee of the Department of Justice. Baer is sued individually and in his official capacity.

6) TRAVIS M. BEDSOLE, JR. ("Bedsole") at all times relevant hereto, Bedsole was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in his capacity as a bankruptcy administrator for the U. S. Bankruptcy Court for the Southern District of Alabama. Bedsole was an employee of the U.S. Courts. Bedsole is sued individually and in his official capacity.

7) HENRY A. CALLAWAY ("Callaway") at all times relevant hereto, Callaway was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in his capacity as a lawyer licensed to practice in the State of Alabama. Callaway was an employee of Hand Arendall LLC. Callaway was hired by National Loan Acquisitions Company. Callaway is sued individually and in his official capacity.

8) KRISTI K. DUBOSE ("DUBOSE") at all times relevant hereto, DuBose was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in her capacity as a federal district judge for the U. S. District for the Southern District of Alabama. DuBose was an employee of the U.S. Courts. DuBose is sued individually and in her official capacity.

9) DONALD A. FRIEDLANDER ("DFriedlander") at all times relevant hereto, DFriedlander was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in his

capacity as a lawyer licensed to practice in the State of Alabama. DFriedlander is with the Friedlander Law Firm. DFriedlander is sued individually and in his official capacity.

10) JONATHAN B. FRIEDLANDER ("JFriedlander") at all times relevant hereto, JFriedlander was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in his capacity as a lawyer licensed to practice in the State of Alabama. JFriedlander is with the Friedlander Law Firm. JFriedlander is sued individually and in his official capacity.

11) IRVIN GRODSKY ("Grodsky") at all times relevant hereto, Grodsky was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in his capacity as a lawyer licensed to practice in the State of Alabama. Grodsky was an employee of Irvin Grodsky PC. Grodsky is sued individually and in his official capacity.

12) CALLIE V. S. GRANADE ("Granade") at all times relevant hereto, Granade was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in her capacity as a federal district judge for the U. S. District for the Southern District of Alabama. Granade was an employee of the U.S. Courts. Granade is sued individually and in her official capacity.

13) CHARLES HENDRICKS ("Hendricks") at all times relevant hereto, Hendricks was a citizen of the United States and was acting under color of law in his capacity as a lawyer to practice law in the State of Alabama. Hendricks was hired by Wal-Mart Stores, Inc. Hendricks is sued individually and in his official capacity.

14) KATHERINE NELSON ("Nelson") at all times relevant hereto, Nelson was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in her capacity as a magistrate judge for the U. S. District for the Southern District of Alabama. Nelson was an employee of the U.S. Courts. Nelson is sued individually and in her official capacity.

15) LISA M. REITER ("Reiter") at all times relevant hereto, Reiter was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in her capacity as a FBI Special Agent. Reiter was an employee of the Federal Bureau of Investigation. Reiter is sued individually and in her official capacity.

16) WILLIAM S. SHULMAN ("Shulman") at all times relevant hereto, Shulman was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in his capacity as a bankruptcy judge for the U. S. Bankruptcy Court for the Southern District of Alabama. Shulman was an employee of the U.S. Courts. Shulman is sued individually and in his official capacity.

17) AMY WHITE "(White") at all times relevant hereto, White was a citizen of the United States and a resident of the State of Alabama and was acting under color of law in her capacity as a FBI Special

Agent. White was an employee of the Federal Bureau of Investigation. White is sued individually and in her official capacity.

18) DEPARTMENT OF JUSTICE ("DOJ") is responsible for enforcing the law; providing Federal leadership in preventing and controlling crime; punishing those guilty of unlawful behavior; and ensuring fair and impartial administration of justice for all Americans. The Department is headed by the Attorney General, LORETTA E. LYNCH. At all times relevant hereto, ERIC H. HOLDER, Jr. was the Attorney General; however, he resigned September 25, 2014. The Attorney General has ultimate authority for supervising all of the operations and functions of the Department of Justice. The DOJ includes the Federal Bureau of Investigation, the principal investigatory arm of the Department of Justice. The Attorney General is the highest-ranking law enforcement officer in the United States. The United States has established or delegated to the Department of Justice the responsibility for establishing, the implementation of policies, the practices, procedures or customs used by each DOJ employee. The Attorney General has final authority to make policy, rules and regulations for the Department of Justice and has been delegated to create or execute policies and regulations which govern the conduct of DOJ employees. The Attorney General is sued individually and in their official capacity.

19) OFFICES of the UNITED STATES ATTORNEYS, ("OUSA") Southern District of Alabama, represent the United States government in United States district court and United States court of appeals in the Southern District of Alabama. KENYEN R. BROWN is the chief federal law enforcement officer for the Southern District of Alabama and JOHN CHERRY is the chief of the criminal division for the Southern District of Alabama. Brown and Cherry are responsible for the employees of their offices and departments to follow the policies, rules and regulations for the Southern District of Alabama Attorneys' offices and they have been delegated to execute policies and regulations which govern the conduct of their employees. Brown and Cherry are sued individually and in their official capacities.

20) FEDERAL BUREAU OF INVESTIGATION ("FBI") is responsible for upholding and enforcing the laws of the United States and to provide leadership and criminal justice services to federal, state, and municipal agencies and partners. The FBI focuses on threats that challenge the foundations of America society. The FBI as a law enforcement organization produces and uses intelligence to bring justice to those who violate the laws including protecting civil rights. Rigorous obedience to the Constitution of the United States, respect for the dignity of those they protect, fairness, uncompromising personal and institutional integrity and accountability by accepting responsibility

for actions and decisions and the consequences of these actions and decisions are the core values of the FBI. The Director of the FBI is responsible for the day-to-day operations insuring cases and operations are handled correctly. The director is in charge of staffing the leadership in any one of the FBI field offices with qualified agents. JAMES COMEY is the FBI director. The FBI Director has final authority to make policy, rules and regulations for the Federal Bureau of Investigation and has been delegated to create or execute policies and regulations which govern the conduct of FBI employees. The United States has established or delegated to the Federal Bureau of Investigation the responsibility for establishing, the implementation of policies, the practices, procedures or customs used by each FBI employee. James Comey is sued individually and in his official capacity.

21) UNITED STATES COURTS – FEDERAL JUDICIARY ("USCFJ") is one of the three co-equal branches of the federal government organized under the United States Constitution and the laws of the federal government. The United States Courts are an independent, national judiciary providing fair and impartial justice within the jurisdiction conferred by the Constitution and Congress. As an equal branch of government, the federal judiciary preserves and enhances its core values as the courts meet changing national and local needs. JAMES C. DUFF is the director of the Administrative Office and is the chief administrative officer for the federal courts and secretary to the Judicial Conference of the United States. James C. Duff is sued individually and in his official capacity.

22) ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS – ("AOUSC") serves the federal Judiciary in carrying out its Constitutional mission to provide equal justice under law. It is the central support entity for the Judicial Branch. It provides support and staff counsel to the Judicial Conference of the United States and its committees and implements and executes Judicial Conference policies, as well as applicable federal statutes and regulations. James C. Duff is the director of the Administrative Office and is the chief administrative officer for the federal courts and secretary to the Judicial Conference of the United States. JAMES C. DUFF is sued individually and in his official capacity. The United States Courts has established or delegated to the Director the responsibility for establishing, the implementation of policies, the practices, procedures or customs used by each employee. He has final authority to make policy, rules and regulations and has been delegated to create or execute policies and regulations which govern the conduct of the employees. James C. Duff is sued individually and in his official capacity.

23) FRIEDLANDER LAW FIRM ("FLF") is a law firm in the State of Alabama with offices in Mobile, Alabama. The law firm had policies, rules and regulations which govern the conduct of their

employees. DFriedlander and JFriedlander were in charge of operations and actions of their employees. DFriedlander and JFriedlander are sued individually and in their official capacities.

24) HAND ARENDALL ("HA") is one of the largest law firms in the State of Alabama with offices in Mobile, Birmingham, Fairhope and Athens, Alabama. The firm has a fundamental commitment to providing quality legal services with cases and projects staffed with the goal of achieving success. The law firm had policies, rules and regulations which govern the conduct of their employees. ROGER L. BATES and JAMES T. ALLEN were in charge of operations and actions of their employees. Roger L. Bates and James T. Allen are sued individually and in their official capacities.

25) IRVIN GRODSKY, P. C. ("IGPC") is a firm representing clients in the Mobile, Alabama area. The law firm had policies, rules and regulations which govern the conduct of their employees. GRODSKY was in charge of operations and actions of his employees. Grodsky is sued individually and in his official capacities.

26) WAL-MART STORES, INC. ("Walmart") is a corporation with their registered office in the City of Wilmington, County of New Castle, and State of Delaware. Walmart is an American multinational retail corporation headquartered in Bentonville, Arkansas. Wal-Mart hired Charles Hendricks to legally represent them relevant to this complaint. Karen Roberts oversees the legal department which is responsible for handling all legal matters affecting the company. Wal-Mart has a complete set of policies providing guidance to their employees. It is Doug McMillon's and Karen Roberts' responsibility to know all of the policies that apply to Wal-Mart and their operations. DOUG MCMILLON is President and CEO and KAREN ROBERTS is Executive Vice President and General Counsel for Wal-Mart Stores, Inc. Each of them is sued individually and in their official capacity.

27) NATIONAL LOAN ACQUISITIONS COMPANY ("NLAC") is a domestic business corporation with their registered office in City of Wilsonville, State of Oregon. NLAC specializes in purchasing commercial loans from respected financial institutions. NLAC hired Callaway at the Hand, Arendall law firm in Mobile, Alabama. ROBERT L. STEVENSON is the president of NLAC and responsible for handling legal matters affecting NLAC. Robert L. Stevenson is sued individually and in his official capacity.

28) JOHN DOES I though X ("JDOES") are individual defendants listed as John Does unidentified to Weinacker. On information and belief there are other involved Defendant John Doe and Defendant Jane Doe individuals presently unknown who actively participated in the allegations contained herein or have knowledge of these wrongful individual Defendant acts and Weinacker gives notice that she may amend this Complaint to add additional parties after discovery.

## FACTS NOT IN DISPUTE

29) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

30) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

31) On December 1, 2009 in the United States Bankruptcy Court Southern District of Alabama, Division I before Judge William Shulman for the case pertaining to National Loan Acquisition v. Teresa Weinacker, No. 09-01122 a hearing was held. Attending for on behalf of NLAC Henry Callaway; on behalf of Wal-Mart Stores, Inc. Charles Hendricks; also appearing was Irvin Grodsky for the debtor. (12/1/9 Tr. 1) First page of transcript is Exhibit "A"

32) In the transcript, Judge Shulman: "All right, now we're proceeding on number 15, National Loan Acquisitions versus Weinacker. I'd like the witness sworn in, please." (12/1/9 Tr. 2:2-5) Exhibit "B"

33) In the transcript, Grodsky: "Judge, if I may just make a statement Ms. Weinacker was subpoenaed to appear today and she is here pursuant to that subpoena." (12/1/9 Tr. 2:8-11) Exhibit "B"

34) In the transcript, Grodsky: "I do not represent her personally." (12/1/9 Tr. 2:11) Exhibit "B"

35) In the transcript, Judge Shulman: "Well, let's at least let her get her name out. I don't think there's any violation of Constitutional rights with that." (12/1/9 Tr. 2:16-19) Exhibit "B"

36) In the transcript, Grodsky: "I don't think Ms. Weinacker has had an opportunity to look at that" (12/1/9 Tr. 8:18-19) Exhibit "C"

37) In the transcript, Weinacker: "I refuse to answer the question." (12/1/9 Tr. 10:22-23) Exhibit "D"

38) In the transcript, Judge Shulman: "… for the record I'm going to advise you that under the Fifth Amendment of the Constitution you do not have to answer any questions that may incriminate you. That's the Amendment that keeps people from incriminating themselves. "(12/1/9 Tr. 10:24-25 & 12/1/9 Tr. 11:1-5) Exhibit "D" and Exhibit "E"

39) In the transcript, Judge Shulman: "So you do not have a lawyer here." (12/1/9 Tr. 11:5) Exhibit "E"

40) In the transcript, Judge Shulman: "So it's up to you to state whether or not you will refuse to answer a question." (12/1/9 Tr. 11:7-9) Exhibit "E"

41) In the transcript, Weinacker: "I'm not answering any question … until I talk to an attorney, period. (12/1/9 Tr. 11:10-11) Exhibit "E"

42) In the transcript, Callaway: "Are you refusing to answer on the basis that it may tend to incriminate you, on the basis of the Fifth Amendment?" (12/1/9 Tr. 11:13-15) Exhibit "E"

43) In the transcript, Weinacker: "I stated I will not answer until I talk to an attorney...Can't make it any clearer that what I just said." (12/1/9 Tr. 11:16-18) Exhibit "E"

44) In the transcript, Judge Shulman: "Well, you can make it clearer. Are you claiming your Fifth Amendment rights?" (12/1/9 Tr. 11:19-21) Exhibit "E"

45) In the transcript, Weinacker: "If that's what I have to do, yes. (12/1/9 Tr. 11:22) Exhibit "E"

46) In the transcript, Weinacker: "I just told you I'm not answering ... until I talk to my own personal attorney." (12/1/9 Tr. 12:6-8) Exhibit "F"

47) In the transcript, Judge Shulman: "You can shorten your response by just saying, I take the Fifth. Go ahead." (12/1/9 Tr. 12:9-11) Exhibit "F"

48) In the transcript, Judge Shulman: "You have the right to take the Fifth Amendment, against self-incrimination. (12/1/9 Tr. 15:10-12) Exhibit "G"

49) In the transcript, Weinacker: "Correct, until I seek counsel." (12/1/9 Tr. 17:2) Exhibit "H"

50) In the transcript, Judge Shulman: "You have the right to take the Fifth Amendment. (12/1/9 Tr. 23:25 & 12/1/9 Tr. 24:1) Exhibit "I" and Exhibit "J"

51) In the transcript, Grodsky: "Judge, I would say to your Honor is a ruling, an entry of an order that says she has to provide an accounting and return funds she has converted is a conclusion that is not merited by the evidence at this point." (12/1/9 Tr. 33:15-20) Exhibit "K"

52) In the transcript, Judge Shulman: "The Court can draw conclusions from somebody taking the Fifth as to what the evidence shows. I have the documentary evidence before me. And the fact that she is taking the Fifth, the Court can still draw conclusions from the other evidence and draw an inference, a negative inference from her refusing to testify. And that's what I'm doing. I think that's what the rules say with respect to somebody that takes the Fifth, that the Court can draw a negative inference from that. And, plus, I've got all of the documentary evidence which is in evidence. (12/1/9 Tr. 33:24-25 & 12/1/9 Tr. 34:1-12) Exhibit "K" and Exhibit "L"

53) In the transcript, Grodsky: "Judge, all that you have is evidence that there were monies that were in the account. First, much of that is in an account that was established before the filing of Chapter 11. If fact, the disposition of that monies, the Court has no evidence of what exactly those monies were used for. And that does not mean that it was used by her, and it does not establish a conversion by her." (12/1/9 Tr. 34:13-21) Exhibit "L"

54) In the transcript, Grodsky: "Judge, the other inference is that $23,000 was used to pay expenses of the company. You haven't heard that testimony. And there's a trustee being appointed, and the trustee is going to be able to get to the issue. At this point the Court has not had the evidence to establish she received that money. There was a check, but there's no indication that money was her money – (12/1/9 Tr. 35:1-12) Exhibit "M"

55) United States District Court for the Southern District of Alabama, United States of America v. Teresa Weinacker, Case No. 1:12-cr-00168-CG, Summons in a Criminal Case – You are summoned to appear before the United States district court at the time, date and place set forth below to answer to one or more offenses or violations based on the following filed with the court: Indictment is marked. (Appear in the U. S. District Court, 113 St. Joseph St., Mobile, AL, Court B on September 5, 2012 at 2:00 p.m.) (Offense is briefly described: Bankruptcy Fraud (1-2), Falsification of Records (3), Wire Fraud (4)) (Dated August 21, 2012 and signed by Charles R. Diard, Jr.) Exhibit "N"

56) The August 21, 2012 Summons in a Criminal Case was hand-delivered by Special Agent, Mobile Field Office, Amy White, Federal Bureau of Investigation and Special Agent Lisa M. Reiter, Federal Bureau of Investigation their business cards with White's cell number in ink on her card. Exhibit "O"

57) Page 3 of 4 of the Federal Bureau Investigation interview on August 12, 2012 at Robertsdale, Alabama, United States (in person) File # 49B-MO-46440 by Lisa M. Reiter, Amy E. White – "At the conclusion of the interview, Teresa [Weinacker] was advised that she had been indicted by the Federal Grand Jury, and served with a summons for her appearance on September 5, 2012 at 2:00pm." Exhibit "P"

58) On February 25, 2013 in the United States District Court Southern District of Alabama Sentencing – Part Two before the Honorable Callie V. S. Granade, United States District Judge for the case pertaining to United States of America v. Teresa Weinacker, Case No. 1:12-cr-00168-CG Weinacker's sentencing hearing was held. Attending for the Government Charles Baer, for the defendant Donald and Jonathan Friedlander, and attending Clerk, Mary Ann Boyles and Court Reporter, Roy Isbell (2/25/13 Tr. 1) First Page of Transcript is Exhibit "Q"

59) In the transcript, Friedlander: "…met with Baer before today…" (2/25/12 Tr. 17:14) Exhibit "R"

60) In the transcript, Grodsky: "Once." (2/25/12 Tr. 17:17) Exhibit "R"

61) In the transcript, Friedlander: "…October 15, 2009 … when where the schedules filed? (2/25/12 Tr. 18:3-4) Exhibit "S"

62) In the transcript, Grodsky: "…November 10 (2009)…." (2/25/12 Tr. 18:5) Exhibit "S"

63) In the transcript, Friedlander: "...effective date of the filing of the bankruptcy... (2/25/12 Tr. 18:6-7) Exhibit "S"

64) In the transcript, Grodsky: "October 15 (2009)... (2/25/12 Tr. 18:9) Exhibit "S"

65) In the transcript, Grodsky: "Ms. Weinacker provided us with a great deal of information to put into the schedules..." (2/25/12 Tr. 21:16-17) Exhibit "T"

66) In the transcript, Grodsky regarding furnishing Hancock Bank information: "No, I'm not absolutely sure...." (2/25/12 Tr. 23:1) Exhibit "U"

67) In the transcript, Granade: "...Weinacker to give an accounting..." (2/25/12 Tr. 26:24) Exhibit "V"

68) In the transcript, Grodsky: "... she did give me a listing ... provided to chapter seven trustee in April 2010 ... she gave it to me in November and December 1 (2009)... (2/25/13 Tr. 27:10-16) Exhibit "W"

69) In the transcript, Callaway: "...it's never been provided..." (2/25/12 Tr. 27:17) Exhibit "W"

70) In the transcript, Callaway: "it's never been provided..." (2/25/12 Tr. 28:4) Exhibit "X"

71) In the transcript, Grodsky: "It was provided to me... (2/25/12 Tr. 28:10) Exhibit "X"

72) In the transcript, Grodsky: "... the request was made to amend schedules which would have reflected all of that ..." (2/25/13 Tr. 28:19) Exhibit "X"

73) In the transcript, Reiter: "...she [Weinacker] provided me ... a spreadsheet of the expenses [accounting]... (2/25/13 Tr. 30:22-24) Exhibit "Y"

74) In the transcript, Reiter: "... There was one individual [former employee] who recognized some of the names ..." (2/25/13 Tr. 33:17-19) Exhibit "Z"

75) In the transcript, Reiter: "... if they don't have a driver's license or criminal record, they would not have shown up in our law enforcement databases ... " (2/25/13 Tr. 35:21-22) Exhibit "AA"

76) In the transcript, Granade: "...the one email she authored and sent after the fact also indicates that she didn't accept responsibility... (2/25/12 Tr. 37:11-12) Exhibit "BB"

77) In the transcript, Granade: "...he [Callaway] clearly stated that it was his own personal capacity and it was not on behalf of the victim..." (2/25/12 Tr. 39:10-12) Exhibit "CC"

78) In the transcript, Donald Friedlander: "... conflict of interest between Mr. Callaway's law firm ... Hand Arendall" (2/25/13 Tr. 39:24-25) Exhibit "CC"

79) In the transcript, Friedlander: "... he's [Callaway] speaking on his behalf. How can he write the letter that he initially did and then now he's going to speak on behalf of the victim? ... appears to be an obvious conflict ..." (2/25/12 Tr. 40:6-10) Exhibit "DD"

80) In the transcript, Granade: "I've heard from him [Callaway] in that letter as to what his personal opinion is ..." (2/25/12 Tr. 40:21-22) Exhibit "DD"

81) In the transcript, Callaway: "…I represented National Loan Acquisitions Company in the underlying offense and was intimately involved in uncovering the fraud. And I'm also authorized by National Loan Acquisitions Company to speak on its behalf here today. When I wrote you [Granade] a letter … I put in there I was doing on my own behalf because I wanted to shield my client in case there's some kind of blow back. I didn't want my client to be sued … to make the situation even worse." (2/25/12 Tr. 41:1-9) Exhibit "EE"

82) In the transcript, Callaway: "… essentially out of business" (2/25/13 Tr. 41:24) Exhibit "EE"

83) In the transcript, Callaway: "Today is the first time I ever heard about any accounting." (2/25/13 Tr. 44:2-3) Exhibit "FF"

84) In the transcript, Callaway: "…if I hadn't started snooping around." (2/25/12 Tr. 45:6) Exhibit "GG"

85) In the transcript, Callaway: "There's never been a dime paid on it since that time." (2/25/12 Tr. 45:21-22) Exhibit "GG"

86) In the transcript, Callaway: "… I turned it over to the U.S. Attorney's Office" (2/25/13 Tr. 46:14) Exhibit "HH"

87) In the transcript, Callaway: "…I've done everything according to the law and everything according to the proper procedure" (2/25/13 Tr. 46:21-22) *Exhibit "HH"*

88) The four-page (4) Grand Jury Indictment filed on July 26, 2013 is Exhibit "II".

89) Page 5 of the Statement of Financial Affairs which shows Question 10 and Weinacker's correct answer. Exhibit "JJ"

90) Three-page (3) December 27, 2012 personal letter from Callaway to Granade. Exhibit "KK"

91) On the Follow-up Pre-Trial October 16, 2012 audio transcript recording, Baer: "…short period of incarceration 30 to 60 days …" (Approximately 15:22 into the 28:44 minute audio transcript recording)

92) On the Follow-up Pre-trial October 16, 2012 audio transcript recording, Baer: "…lied on bankruptcy …" (Approximately 17:39 into the 28:44 minute audio transcript recording)

93) On the Follow-up Pre-Trial October 16, 2012 audio transcript recording, Baer: "…with § 152…" (Approximately 17:49 into the 28:44 minute audio transcript recording)

94) On the Follow-up Pre-Trial October 16, 2012 audio transcript recording, Baer: "…I have not talked with Irvin…" (Approximately 18:05 into the 28:44 minute audio transcript recording)

## FACTUAL ALLEGATIONS

95) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are

hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

96) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

97) Xena Express, Inc. f/k/a/ Pet Friendly, Inc. ("Xena") filed a voluntary Chapter 11 bankruptcy petition (Case No. 09-14817) on October 15, 2009 on the advice of Grodsky to reorganize Weinacker's business. Chapter 11 was filed since the company had plans to reorganize and restructure their manufacturing operations and continue their 17 year old manufacturing business. [The business was organized in 1992 with Neil Johnston (Hand Arendall) as a majority shareholder.]

98) Upon filing the voluntary Chapter 11 petition, the debtor automatically assumes the identity as "debtor-in-possession" ("DIP") or "trustee" under 11 U.S.C. § 1101 if an appointment of trustee or examiner is not appointed under 11 U.S.C. § 1104. The debtor keeps possession and control of the company's assets retaining the power to operate the business in the ordinary course of business. Weinacker was the DIP or trustee of Xena.

99) Under 11 U.S.C. § 363 (c) (1): If the business of the debtor is authorized to be operated under § 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the DIP (trustee) may enter into transactions, in the ordinary course of business. [11 U.S.C. § 721: "court may authorize the trustee to operate the business of the debtor" 11 U.S.C. § 1108: "the trustee may operate the debtor's business" 11 U.S.C. § 1203: "debtor in possession shall have all the rights, other than the right to compensation and shall perform all the functions and duties of the business"] The DIP can operate in the ordinary course of business without being required to seek court approval for actions unless they fall outside the scope of regular business activities. Weinacker operated Xena in the ordinary course of business and none of actions fell outside the scope of Xena's regular business activities.

100)    NLAC and Robert L. Stevenson hired Hand Arendall LLC to represent their company's interests in Case No. 09-14817 and instigated the proceedings in Case No. 09-01122 which lead to Weinacker's criminal charges in Case No. 1:12-CR-12-00168-CG.

101)    Wal-Mart, Karen Roberts and Doug McMillon hired Hendricks to represent Wal-Mart in their company's interests in Case No. 09-14817 that instigated the proceedings in Case No. 09-01122 which resulted in Weinacker's criminal charges in Case No. 1:12-CR-12-00168-CG.

102) DOJ, FBI, U.S. Courts and Offices of the U.S. Attorney either hired or were elected as employees: Baer, Lynch, Holder, Comey, Bedsole, Granade, Nelson, DuBose, Shulman, Duff, White, Reiter, Brown and Cherry. Each of them a was party in Case No. 09-14817 that instigated the proceedings in Case No. 09-01122 which resulted in Weinacker's criminal charges in Case No. 1:12-CR-12-00168-CG.

103) Hand Arendall LLC hired Callaway as a lawyer for their law firm. Callaway represented NLAC in Case No. 09-14817, his stirring up strife and litigation instigated the proceedings in Case No. 09-01122 which lead to Weinacker's criminal charges in Case No. 1:12-CR-12-00168-CG.

104) Weinacker hired DFriedlander and the Friedlander Law Firm to represent her interests in the criminal charges in Case No. 1:12-CR-12-00168-CG.

105) The schedules and Statement of Financial Affairs ("SFA") for Xena's Chapter 11 bankruptcy was filed on November 10, 2009 by Grodsky. The First § 341 Creditor's Meeting was held on November 10, 2009. Grodsky advised Weinacker the schedules he filed did not include updated information. He had not amended the schedules and SFA for the November 10, 2009 Creditor's Meeting implying she should answer questions as to the filed documents.

106) Weinacker requested amended schedules and SFA in Xena's bankruptcy. Grodsky stated he attempted to prepare the amendments "in a way he felt was proper". Grodsky refused and never amended schedules and SFA as requested. [Bankruptcy Rule 1009 states "a voluntary petition, list, schedule or statement may be amended by the debtor at any time before the case is closed. The court can order any voluntary petition, list, schedule or statement to be amended."]

107) A second First § 341 Creditor's Meeting was scheduled on November 24, 2009. This Creditor's Meeting never commenced. This meeting should have taken place after Weinacker's amended schedules and SFA was filed by Grodsky. The schedules and SFA would have included updated and missing information. Grodsky refused to file amended schedules and the Statement of Financial Affairs.

108) A Subpoena in a Case under the Bankruptcy Code in Case No. 09-14817 was issued for Weinacker to appear on December 1, 2009 to testify in Case No. 09-14817 (Xena's bankruptcy).

109) The hearing on December 1, 2009 was transcribed by Donna Duggan, Duggan Transcription Service. [A transcript is a written record of all conversations, decisions and arguments which was recorded at the court proceeding on December 1, 2009.] The transcription by Duggan dated December 1, 2009 had Case No. 09-01122 but Weinacker's subpoena was for Case No. 09-14817.

110) Weinacker appeared pursuant to Bankruptcy Form 256 Subpoena in a Case under the Bankruptcy Code which was captioned: *In re: Xena Express, Inc. f/k/a Pet Friendly, Inc., Debtor - Case No. 09-14817.*

111) Callaway, issuing officer of the 256 Subpoena, knew or should have known he had a lawful requirement to inform Weinacker she needed personal legal representation. Callaway knew this case did not pertain to Case No. 09-14817 - Xena's bankruptcy. ["…no advice would be unconscionable and a violation of the Sixth Amendment guarantee." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010)]

112) Grodsky, attorney for debtor, Xena, knew or should have known he was legally obligated to inform Weinacker, an individual, the proceeding was not a bankruptcy proceeding for her company, Xena, Case No. 09-14817, but a hearing against her personally and individually. Grodsky informed the Court he did not represent Weinacker "personally" so he was aware the subpoena was not issued for Xena but for her personally. ["…no advice would be unconscionable and a violation of the Sixth Amendment guarantee." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010)]

113) Attending the hearing was Shulman, Callaway, Grodsky, Hendricks, Baer, Bedsole, Faith Hoffman and Donna Duggan. Weinacker requested legal representation. Each of them made the decision to do nothing. [One of the duties as officers of the court is to protect citizens from Constitutional violations. If an officer of the court witnesses violations of a citizen's civil rights and does nothing to stop it, that officer of the court is liable for failing to intervene.] Each of them conspired to deprive Weinacker of her rights guaranteed by the Constitution of the United States by failing to intervene.

114) Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, moved into an attitude of a determined act of depriving Weinacker equal protection of the laws and violating her Constitutional rights. Defendants knowingly and intentionally chose these acts. These acts inferred with Weinacker's civil rights and influenced and obstructed justice and is illegal under 42 U.S.C § 1985 (Conspiracy to interfere with civil rights).

115) Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, moved into a concerted action to commit offense and defraud the United States by prosecuting Weinacker and depriving her equal protection of the laws and violating her Constitutional rights. Defendants knowingly and intentionally chose these concerted actions. Concerted actions "in any manner or for any purpose" are illegal under 18 U.S.C. § 371 (Conspiracy Laws of the United States where defendants knew of pending judicial proceeding).

116) Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, decided to defraud the United States by prosecuting Weinacker and depriving her equal protection of the laws and violating her Constitutional rights. The intentions of the Defendants weren't justice but injustice. Defendants knowingly and intentionally chose these actions for $50,000+. Concerted actions "in any manner or for any purpose" are illegal under 18 U.S.C. § 371 (Conspiracy Laws of the United States where defendants knew of pending judicial proceeding).

117) Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, conspired to injure, oppress and intimidate Weinacker from the free exercise and enjoyment of her rights and privileges secured to her by the Constitution and the laws of the United States. Defendants knowingly and intentionally chose this conspiracy to deprive Weinacker of her Constitutional rights. By Defendants disallowing Weinacker the free exercise and enjoyment of her rights and privileges guaranteed by the Constitution and the laws of the United States are illegal under 18 U.S.C § 241 (Conspiracy against rights).

118) Defendants had an obligation to promote justice and provide effective operations of the judicial system. Officers of the court include judges, lawyers who appear in court, bailiffs, clerks, and other personnel. *Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, are officers of the court, and have an absolute ethical duty to tell the truth, including avoiding dishonesty or failing to intervene when Weinacker's Constitutional rights were violated.*

119) Shulman stated it was not a violation of Weinacker's Constitutional rights to get her name on record. Nevertheless it was a violation of the Sixth Amendment of the United States Constitution for Weinacker not to have legal representation if she requested it. Shulman states it is not a violation to *get Weinacker's name on record so he knew it was a violation of Weinacker's Constitutional rights* to not let her have legal representation.

120) Under Federal Rules of Bankruptcy Procedure Rule 1009 (a), the Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, knew or should have known Weinacker had a right to amend any petition, list, schedule or statement at any time before the bankruptcy case was closed.

121) Under Federal Rules of Bankruptcy Procedure Rule 1009 (a), the Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, knew or should have known  the court could have ordered Weinacker to amend Xena's voluntary petition, list, schedules or statements at any time before the bankruptcy was closed.

122) Defendants knowingly concealed, covered up and provided unconfirmed documents and records with the intent to obstruct and influence the investigation and proper administration of

Weinacker's company, Xena, in voluntary Chapter 11 bankruptcy. Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole did not follow bankruptcy rules. [If relevant information is knowingly concealed, withheld or falsely entered with the intent to impede or influence the investigation of any matter within the jurisdiction of the United States it is in violation of 18 U.S.C. § 1519 (Falsification of records in a federal investigation and/or bankruptcy – a federal crime).]

123) Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer and Bedsole knowingly concealed and withheld the amended and updated bankruptcy information provided numerous times by Weinacker to Grodsky with the intent to influence the investigation into Weinacker which is a clear violation of 18 U.S.C. § 1519.

124) Shulman asked Weinacker if she was represented by a lawyer - Weinacker said no. Weinacker requested legal representation numerous times in the December 1, 2009 hearing. Shulman knew Weinacker did not have legal representation. Shulman would not let Weinacker have legal representation. ["When a judge acts intentionally and knowingly to deprive a person of his Constitutional rights he exercises no discretion or individual judgment; he acts no longer as a judge, but as a 'minister' of his own prejudices". *Pierson v. Ray*, 386 U.S. 547, 567 (1967)]

125) *Weinacker was denied legal representation after requesting it numerous times during* questioning at the December 1, 2009 hearing. [The Supreme Court has ruled that a defendant gains the right to an attorney "at or after the time that judicial proceedings have been initiated against him, whether by formal charge, preliminary hearing, indictment, information, or arraignment". [*Brewer v. Williams*, 430 U.S. 387, 398 (1976)]

126) After Weinacker invoked her Sixth Amendment right to have legal representation, Callaway *continued his questioning of Weinacker, a clear violation of Federal Rules of Evidence Rule 611* (Mode and Order of Examining Witness and Presenting Evidence). ["When counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146 (1990); and, "that once an accused requests counsel, officials may not reinitiate questioning "until counsel has been made available" to him" *Edwards v. Arizona*, 451 U.S. 477 (1981)]

127) Hendricks approached the stand and told Weinacker he represented Wal-Mart Stores, Inc. at the December 1, 2009 hearing. Hendricks questioned Weinacker after hearing Weinacker request legal representation repeatedly. ["When counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146 (1990); and, "that once an accused

requests counsel, officials may not reinitiate questioning "until counsel has been made available" to him" *Edwards v. Arizona*, 451 U.S. 477 (1981)]

128) Hendricks, representing Wal-Mart Stores, Inc., observed Weinacker request legal representation repeatedly. Hendricks made the decision to do nothing. [One of the duties as officers of the court is to protect citizens from Constitutional violations. If an officer of the court witnesses violations of a citizen's civil rights and does nothing to stop it, that officer of the court is liable for failing to intervene.] Hendricks conspired to deprive Weinacker of her rights guaranteed by the Constitution of the United States by failing to intervene.

129) Weinacker was not aware the December 1, 2009 hearing was for a preliminary injunction until she heard Shulman state "the motion for Preliminary Injunction is granted". Weinacker was subpoenaed in her company's bankruptcy Case No. 09-14817. Shulman requested Callaway to prepare an order and to provide copies to Bedsole, Grodsky and Hendricks in Case No. 09-01122.

130) Shulman stated the Court can take a negative inference when a witness invokes their right against self-incrimination protected by the Fifth Amendment and because Weinacker refused to answer any questions the Court can find her "guilty". [In the 2001 case, *Ohio v. Reiner*, the U.S. Supreme Court held that "a witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing. The [Fifth Amendment] right against self-incrimination serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Ohio v. Reiner,* 532 U.S. 17 (2001)]

131) Shulman tells the Court he has all the documentary evidence he needs. [Evidence is regarded as being of central importance to the law. The evidence should be proof without a reasonable doubt.] *The evidence introduced at the hearing implied an existence of fraud, but did not in itself prove, without a reasonable doubt as to the conclusions made by the Court.* [If there is doubt based upon reason and common sense after careful and impartial consideration of **all evidence** or **lack of evidence** then the level of **proof has not been met**.] [emphasis added] The documentary evidence did not include any records from Grodsky's files on Xena's bankruptcy.

132) Grodsky tells the Court the evidence the Court has only establishes an account with money prior to the filing of Chapter 11. Grodsky does not tell the Court Weinacker provided accounting and information to amend and update schedules and SFA for Xena's bankruptcy. The November 2009 files contained information for August 2009.

133) The Court had no evidence of how the monies in question were spent. Weinacker provided the accounting to Grodsky in 2009 and 2010. Grodsky stated on court record, the court appointed

trustee would get the facts. Amended schedules and SFA would have eliminated any and all investigations and proceedings which Grodsky refused to file.

134)     All evidence from Callaway's investigation was provided to Baer by Callaway. Defendant, Callaway, in concert with the other Defendants, instituted criminal proceedings against Weinacker with malice for the alleged violation of bankruptcy and wire fraud and obstruction of justice. The criminal Case No. 1:12-CR-12-00168-CG. Callaway's investigation documents did not contain Xena records from Grodsky.

135)     FBI investigation, Case ID# 49B-MO-46440, into Character, Teresa Weinacker dba Pet Friendly was for alleged bankruptcy fraud for about $50,000. [The FBI is the primary investigative agency responsible for addressing bankruptcy fraud. The FBI focuses on bankruptcy cases with large dollar amounts and they take their responsibility pursuing allegations very seriously.]

136)     Before the issuance of an indictment, there has to be an investigation and a gathering of evidence by the prosecutor (Baer). The FBI'S investigation included Callaway's "December 1, 2009 evidence" from his search for defects in Xena's bankruptcy. The FBI did not include a fact finding investigation to prove Weinacker's innocence, just her "guilt". The fact finding investigation done by the FBI was not a serious investigation. The FBI did not look for evidence as to Weinacker's innocence. The FBI's investigation did not include questioning or requesting documents from Grodsky.

137)     The FBI's Investigation was presented to Baer with a summary dated May 23, 2012. The FBI presented a data storage device with reports of the evidence collected. [On the data storage device there are three files, (1) "addl discover for ARGN_Redacted" - 311 pages; (2) "Checks" - 32 pages; and, (3) "r_weinacker disc - 396 pages.] The FBI included in their investigation reports Callaway's December 1, 2009 evidence from his pursuit for deficiencies in Xena's bankruptcy.

138)     Bedsole testified in the FBI's investigation as to the" materiality of concealment of an account", for Weinacker's alleged violation of criminal statutes - Concealment of Assets 18 U.S.C. § 152 and Wire Fraud 18 U.S.C. § 1343. In the FBI's report to Baer, it showed charges for 18 U.S.C. § 152 and 18 U.S.C. § 1343. None of Bedsole's records were included in the FBI's investigation.

139)     Criminal charges against Weinacker, from the formal grand jury five-page (5) indictment, states the following violations: 18 U.S.C. § 152, 18 U.S.C. § 1343, and, 18 U.S.C. § 1519. [The violations reads as follows: Count One in violation of 18 U.S.C. § 152(7) [knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation]; Count Two in violation of 18 U.S.C. § 152(1) [knowingly and fraudulently conceals ...any property belonging to the

estate of a debtor]; Count Three in violation of 18 U.S.C. § 1519 [knowingly alters, conceals, falsifies, any record, document, with the intent to obstruct investigation or proper administration of any matter]; and, Count Four in violation of 18 U.S.C. § 1343 [having devised any scheme for obtaining money by means of false representations, or causes to be transmitted by means of wire]. ]

140)   The FBI evidence along with Callaway's "December 1, 2009 evidence" was presented to the grand jury around July 2012. There was no evidence presented from Grodsky. An indictment was handed-up finding cause to make charges against Weinacker. [The Grand Jury is made up of average laypersons and has the law explained to them by the prosecutor - who in this case was Baer.]

141)   Count One of the Indictment states Weinacker knowingly transferred or concealed Xena's property with the intent to defeat the provisions of Title 11 sometime between September 9, 2009 to October 15, 2009 in violation of 18 U.S.C. § 152(7). Weinacker did not transfer or conceal any of Xena's real or personal property.  Below 18.U.S.C. §152(7) is quoted. Also cited is the legal definition of property proving Weinacker did not transfer or conceal property of Xena. [Funds are not property but financial transactions.]

>  **18 U.S.C. §152** A person who - **(7)** in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation;

>  Legal definition of property: (n) anything that is owned by a person or entity. Property is divided into two types: "real property" which is any interest in land, real estate, growing plants or the improvements on it and "personal property" which is such items as animals, merchandise, jewelry, stocks, bonds, patents, copyrights, equipment, furniture, vehicles, clothing, and art.

142)   Count Three of the Grand Jury Indictment filed on July 26, 2012 states: Weinacker "did knowingly and fraudulently conceal, cover up, falsify and make a false entry by answering "None" to Question 10 of the SFA when she transferred to receive payments to a doing business as Pet Friendly (Xena) bank account in violation of 18 U.S.C. § 1519. Below is Question 10 of the SFA, the United States Courts Instructions from their website, and definitions of transfer and ordinary course of business as well as the answer most bankruptcy lawyers use to explain Question 10 of the SFA proving "None" was **the** correct answer.

>  Statement of Financial Affairs (Xena Express a/k/a Pet Friendly)
>  **10. Other transfers**
>  a. List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor transferred either absolutely or as security within **two years** immediately preceding the commencement of this case….

>  United States Courts Instructions, Official Form B7 - Page 6 - 12.1.09

Item 10(a) requires the debtor to list all other property, other than property **transferred** in the **ordinary course of the business** or **financial affairs** of the debtor transferred either absolutely or as security within two years before the commencement of the case. Any security interest that meets the foregoing criteria should be listed. The date of the transfer, a description of the property transferred, and the value received should be included. (2005-2007 Cumulative Committee Note) In Question 10, the extension of the reach-back period for transfers from one year to two years reflects the 2005 amendment to § 548(a)(1) of the Code to permit a trustee to avoid a fraudulent transfer made by the debtor within two years of the filing of the petition.

United States Courts definition of **transfer** is "any mode or means by which a debtor disposes or parts with property". Definition of **ordinary course of business** is "a term of activities that are necessary, normal and incidental to the business. These are common practices and customs of commercial transactions."

Many bankruptcy lawyers explain question 10 of SFA "the court wants to know the details of anything you sold or gave away within 2 years of filing the case."

Weinacker did not sell, give away, dispose or part with any of Xena's property. Wire transfers are in the ordinary course of Xena's business operations. And any type of banking including wire transfers are financial affairs making "NONE" the correct answer for SFA Question 10.

143) A Summons in a Criminal Case showing a filing of an indictment for Weinacker was issued and hand-delivered by FBI Special Agents Reiter and White on August 27, 2012. On July 26, 2012, Weinacker was formally accused she had committed a crime. [At the issuance of the indictment Weinacker was formally charged and was entitled to legal representation.] [The Supreme Court has ruled that a defendant gains the right to an attorney "at or after the time that judicial proceedings have been initiated against him, whether by ...indictment ...". [*Brewer v. Williams*, 430 U.S. 387, 398 (1976)]

144) When Weinacker opened her door at the appearance of Reiter and White, Reiter and White should have informed Weinacker she had been formally charged with committing a crime and was to appear in Court on September 5, 2012. Reiter and White did not tell Weinacker of the indictment and proceeded to interview her and Charles Weinacker (Weinacker's spouse). At the conclusion of the interview, Reiter and White advised Weinacker she had been indicted and handed her the Summons.  [See Page 3 of their  August 27, 2012 investigation typewritten notes "At the conclusion of the interview ... advised indicted ..."]

145) Weinacker answered Reiter's and White's questions before she knew she had been formally accused of committing a crime. Weinacker did not waive her rights for legal representation. Weinacker was not aware she was charged with a crime and needed legal representation. In Reiter's and White's report they state "at the conclusion of the interview, Weinacker was advised she had been indicted. ["In those cases in which the suspect is indicted by a grand jury, he becomes

"charged" at the point the indictment is issued. See *Brewer v. Williams,* 430 US 387, 398 (1977). The reason the Sixth Amendment right to counsel is triggered at … the issuance of an indictment signals that "the government has committed itself to prosecute, and the adverse positions of government and defendant have solidified. It is then a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."]

146) Weinacker appeared before Nelson or DuBose on September 5, 2012 in the United States District Court for the Southern District of Alabama Southern Division in Criminal Action 1:12-cr-00168-CG as requested by the Summons delivered by Reiter and White. Weinacker entered the plea of "Not Guilty" at the arraignment.

147) Nelson and/or Granade and/or DuBose had a responsibility to read and evaluate evidence and records specific to their cases, i.e. Weinacker's. The judge is the sole finder of fact and responsible for reading, researching and reviewing evidence. Nelson, DuBose and Granade knew or should have known they violated rules on the admissibility of evidence, the proper administration of criminal justice and respecting the legal and Constitutional rights owed to Weinacker. In a review of the December 1, 2009 transcript, Nelson, DuBose and Granade would have seen Weinacker was refused legal representation. In a review of Weinacker's case would have seen there was no documents supplied from Grodsky.

148) Nelson and/or Granade and/or DuBose knew or should have known evidence is regarded as being the central importance to the law. The evidence should be proof without a reasonable doubt in finding someone "guilty". A review of the evidence presented by Baer implied an existence but did not in itself prove without a reasonable doubt as to the conclusions made by the Court. A review of evidence would have shown Weinacker was denied equal protection of the laws. The evidence presented to the Court, tended to show guilt even though the prosecution had a duty to provide all evidence. No evidence was obtained from debtor's attorney, Grodsky.

149) Granade asked at the February 25, 2013 sentencing about an accounting. Grodsky informs Granade the accounting was provided in 2009 and 2010. With this information, Granade knew all evidence had not been provided for a finding of guilt. Granade should have known all evidence had not been gathered to prove criminal charges against Weinacker. Grodsky informs Granade he was not questioned or interviewed about Xena's bankruptcy by Callaway or Baer. Grodsky was interviewed once by Baer between January and February 2013.

150)     Reviewing the December 1, 2009 transcript, Nelson and/or Granade and/or DuBose should have seen on page 11 of that transcript Shulman ask Weinacker if she had a lawyer. Weinacker stated no. Weinacker stated she was not answering until she talked with a lawyer.  A clear violation of Weinacker's Constitutional rights. Nelson, DuBose and Granade took an oath to uphold the Constitution of the United States. Nelson, DuBose and Granade should know a Constitutional violation when they see it.

151)     In a review of the December 1, 2009 transcript, Nelson and/or DuBose and/or Granade should have reported the criminal activities of Shulman. Shulman denied Weinacker her legal and Constitutional rights which are a criminal activity. No judge will report the criminal activity of another judge making Nelson, DuBose and Granade as guilty as Shulman in depriving Weinacker of her civil rights.

152)     In a review of the August 27, 2012 FBI interview report on Weinacker, it unmistakably states "at the conclusion of the interview, Weinacker was advised that she had been indicted (July 26, 2012). Weinacker had been indicted by the grand jury on July 26, 2012 and the FBI interview was August 27, 2012. Nelson, DuBose and Granade should know when Weinacker was indicted by the grand jury she was "charged with a crime". Weinacker's right to counsel was triggered at the issuance of the indictment. Weinacker was not aware or informed she had been charged with a crime. Weinacker was not aware she needed legal representation and her Miranda warning was not given. A strong indication Nelson, DuBose and Granade did not review Weinacker's case because they should know a Constitutional violation when they see it.

153)     Nelson and/or Granade and/or DuBose have a responsibility to assess evidence and records to their cases. Nelson and/or Granade and/or DuBose knew or should have known that Weinacker's Constitutional Rights were violated after reviewing transcripts and interviews. Weinacker's records were not reviewed by Nelson or Granade or DuBose or anyone in their offices. Nelson and/or Granade and/or DuBose knew or should have known by not reviewing evidence they violated rules on admissibility of evidence and the proper administration of criminal justice.

154)     Nelson and/or Granade and/or DuBose did not review evidence establishing the bank account was opened prior to the filing of Chapter 11. The Court had no evidence of how the monies in question were spent even though the accounting was provided to the FBI. Grodsky had been provided documents and accounting in November 2009 which Granade was informed at the February 25, 2013 sentencing. When Granade learned the accounting and documents was not

included in the evidence, she should have asked and what other documents have not been included. A review of the case would have shown Weinacker's case should have been dismissed.

155)   Nelson and/or Granade and/or DuBose did not review Weinacker's files because it would have shown Grodsky had never been questioned by Baer or Callaway. The files would have shown no documents were included in the Court's records from Grodsky.

156)   Upon learning of the existence of the (2009) accounting and documentation at the February 25, 2013 sentencing, Granade should have dismissed Weinacker's case. By Callaway or Baer not questioning Grodsky, it proves without a doubt, all evidence was not provided and shows no one really care about the evidence. The evidence Baer presented could not prove without a reasonable doubt as to the conclusions made by Nelson and/or Granade and/or DuBose and the Court. It proves Callaway and Baer were more interested in a finding of guilt than justice.

157)   Weinacker appeared before DuBose on October 9, 2012 in the United States District Court for the Southern District of Alabama Southern Division in Criminal Action 1:12-cr-00168-CG for a pretrial conference. At the conference, a follow-up pretrial conference was scheduled for October 16, 2012.

158)   Weinacker appeared before DuBose on October 16, 2012 in the United States District Court for the Southern District of Alabama Southern Division in Criminal Action 1:12-cr-00168-CG for the follow-up pretrial conference.  After much badgering, harassing, intimidation, and coercion, Weinacker changed her plea and pled to bankruptcy fraud not falsification of records. In listening to the audio transcript of Weinacker's follow-up pretrial conference, she pled to 18 U.S.C. § 152 instead of the charge18 U.S.C. § 1519 which she was sentenced. No judge, lawyer, law clerk, or prosecutor caught the mistake.

159)   Weinacker took a plea agreement and pled guilty knowing she was innocent of any wrongdoing. [One must ask would the founding fathers - who included the Bill of Rights in the Constitution as a protective measure against the government - consider this justice, a system that gives criminals the easy way out and puts innocent people in a tricky predicament.] [Plea bargaining's innocence problem is not isolated to an obscure and rare set of cases. Strikingly, a study demonstrated that more than half of innocent defendants will falsely admit guilt.] [Prosecutor's duty is to seek justice not threatened and bully the defendant with heavier and longer sentences. The innocent are cast into prison, have their liberties infringed and have been unjustly removed from society challenging the justice system's legitimacy.]

160)   Weinacker was innocent and she knew she was innocent. A review of all evidence would have shown Weinacker's innocence. No interview or documents from Grodsky was ever obtained which

Weinacker was not even aware of until her sentencing. [Judge John Gleeson (U.S. District Court for the Eastern District of New York) wrote "An excessively high rate of guilty pleas is unhealthy for our justice system." Ninety –seven percent of federal criminal prosecutions are resolved by plea bargain. The only scrutiny a case may receive in federal court is that afforded by a grand jury and, as a long-time district attorney once said, he could get a grand jury to indict a "ham sandwich". Proof beyond a reasonable doubt never enters the question.]

161)    DFriedlander and JFriedlander, criminal defense lawyers, should know what key errors and weaknesses to look for in a prosecution's case. DFriedlander or JFriedlander should have been able to turn those errors and weaknesses into strengths which would have meant the difference between a conviction and freedom for Weinacker. DFriedlander or JFriedlander never investigated Weinacker's case to locate those errors and/or weaknesses made by Baer.

162)    DFriedlander, criminal defense lawyer, should know how to take advantage of prosecutorial errors and how to incorporate those mistakes into a vigorous criminal defense strategy. No criminal defense strategy was ever planned by DFriedlander or JFriedlander.

163)    DFriedlander has been a lawyer for over 41 years with "many hundreds of cases and thousands of clients". DFriedlander should have been aware of at least one of the most common weakness in a typical prosecution's case is Constitutional violations. There were multiple Constitutional violations in Weinacker's case which a review by either DFriedlander or JFriedlander of her case files would have shown.

164)    In a review of Weinacker's case, DFriedlander or JFriedlander should have noticed Weinacker was never Mirandized before the service of the indictment by the FBI. Weinacker was charged with a crime on July 26, 2012 and informed by the FBI of the charges on August 27, 2012 after the FBI's interview. The FBI report states "At the conclusion of the interview Weinacker was advised she had been indicted by the grand jury…" A copy of the FBI report was in Weinacker's files. This one error would have barred Baer's evidence. The entire case would have been dismissed because of a lack of evidence but neither DFriedlander nor JFriedlander caught that Weinacker had not been Mirandized before she was questioned by the FBI.

165)    DFriedlander's and JFriedlander's first task was to determine whether there were grounds on which Weinacker's case could be dismissed.

166)    DFriedlander and JFriedlander should know criminal law is based on the notion a person is "innocent until proven guilty". This concept should not be taken lightly – it has very real and significant importance in the criminal justice system. DFriedlander and JFriedlander should know

Baer must have enough evidence, including defendants' evidence, to show beyond a reasonable doubt Weinacker had committed the charged crimes. There was no evidence in the Court's records from Grodsky, Xena's lawyer.

167) DFriedlander and JFriedlander should know that many times, including Weinacker's case, prosecutors use evidence that is inadmissible and not allowed. Baer's evidence should have been disallowed because it had been obtained illegally and improperly in violation of Weinacker's Constitutional rights.

168) The biggest mistake Baer made was not conducting a thorough investigation. Baer never interviewed Grodsky. Baer never requested Grodsky's, files, documents, etc. for Xena. The biggest mistake DFriedlander or JFriedlander made was not conducting a thorough investigation. [Baer did not question Grodsky looking for evidence he only interviewed Grodsky once and that was before Weinacker's sentencing.] The facts in this case by DFriedlander and JFriedlander were not carefully evaluated and never discovered crucial evidence was missed.

169) DFriedlander or JFriedlander never analyzed facts, never investigated and never spoke with Weinacker about the strengths and weaknesses of Baer's case. Friedlander never looked for a way to exonerate Weinacker with a dismissal of the case, a "not guilty" verdict or for the case go to trial.

170) DFriedlander or JFriedlander never reviewed Weinacker's files because the many violations in her case were never found by DFriedlander or JFriedlander.

171) Baer charged Weinacker with more offenses than were warranted. Baer withheld, delayed and never sought exculpatory evidence. Baer overstated the strength of the evidence. An investigation of Weinacker's case by DFriedlander and/or JFriedlander would have shown these errors.

172) DFriedlander and JFriedlander wanted Weinacker to plea bargain right away. This did Weinacker a disservice but also a disservice to the legal and judicial system. DFriedlander and JFriedlander wanted to take their $15,000.00 and run. DFriedlander and JFriedlander want to make as much money as possible while doing as little work as possible.

173) With Weinacker's case, a case that would affect her life from now on, DFriedlander or JFriedlander should have taken the approach of forcing Baer to prove his case beyond a reasonable doubt. DFriedlander or JFriedlander should have sought to see if Weinacker's case should have even been filed (inadmissible evidence, Constitutional violations, conspiracy, etc.). An aggressive approach of Weinacker's case from the get-go by DFriedlander or JFriedlander should have happened.

174) DFriedlander and JFriedlander should have seen that Weinacker was afforded all the protections provided through the laws and the Constitution of the federal government and the Alabama Constitution. In Weinacker's case there were arguments and facts that would have mitigated or even negated any crime.

175) Legal rules and regulations even prior court opinions were never reviewed by DFriedlander or JFriedlander. They never gathered evidence and statements. They never investigated Weinacker's case. The many Constitutional violations were never noted by DFriedlander or JFriedlander.

176) [Canon 7 ABA Model Code of Professional Responsibility states defense attorneys are ethically bound to zealously represent all clients, those whom they think will be justly found guilty as well as those whom they think are factually innocent.] Neither DFriedlander nor JFriedlander did a vigorous defense necessary to protect Weinacker.

177) Weinacker always believed the cornerstone of the U.S. criminal justice system is the belief that all people are innocent until proven guilty. Baer, the prosecutor, told Weinacker she would be charged with the most serious charges unless she was willing to enter a plea bargain and could be sentenced up to 20 years. The prosecutor controls the decision to charge a crime and with the grand jury getting to hear only from the prosecutor Baer could get the grand jury to approve any charge he recommends.

178) Callaway's December 27, 2012 personal letter ("letter") to Granade stated: "he was writing in his personal capacity" and "he discovered the fraud" for Weinacker's criminal charges. Callaway included with his letter his "pages and pages of evidence". Granade knew or should have known from Callaway's letter it was a personal matter and not a legal one.

179) Granade knew or should have known Callaway violated Rules of Professional Conduct and Ethics for Attorneys by writing to her in a personal capacity. Granade knew or should have known it was disreputable for Callaway to hunt up defects in Weinacker's bankruptcy which could have been corrected with amended bankruptcy documents.

180) Granade knew or should have known Callaway's letter was his attempt to exert personal influence on her and the Court. Granade should not have reviewed Callaway's information. Granade knew or should have known a lawyer should not offer evidence in a case the lawyer is not involved. Granade knew or should have known Callaway should not have introduced remarks, statements or evidence intended to influence her and the Court. Granade knew or should have known these and all kindred practices are unprofessional and unworthy of an officer of the law.

181)  Granade knew or should have known by Callaway's statements – "Weinacker never produced documents", "she did not comply", "she did not reveal", and "now says monies were used to pay employees" - clearly shows his "discovery of the fraud" and his search for deficiencies was not a thorough investigation. Callaway never requested documents from Grodsky. Callaway never questioned Grodsky. Callaway's investigation was only to prove fraud and validate Weinacker's guilt.

182)  The documents Granade reviewed in Weinacker's case were Callaway's documents provided in his December 27, 2012 personal correspondence. These were the only documents Granade reviewed in Weinacker's case. Granade should have requested Grodsky's files. Granade knew or should have known Callaway wanted to damage, harass, and injure Weinacker.

183)  Granade knew or should have known stirring up strife and litigation is not only unprofessional but it is indictable as indicated by the American Bar Association's Code of Ethics in Canon 28. Granade knew or should have known Callaway's intent was not to see justice done but to convict Weinacker.

184)  Callaway's letter to Granade states he is writing in his personal capacity clearly indicating his attempt to exert personal influence on the court.

185)  Weinacker filed Chapter 11 on October 15, 2009 but Callaway tells Granade that Weinacker's business closed on September 8, 2009. Granade knew or should have known to review Weinacker's files before placing any type of sentence. Grodsky, with 20+ year's bankruptcy experience, filed the Chapter 11 reorganization but Callaway states the company closed some five (5) weeks earlier. Granade knew or should have known she did not have all of the facts or evidence.  Granade knew or should have known the suppression of facts capable of establishing the innocence of Weinacker is highly reprehensible.

186)  Granade should not have allowed Callaway's personal letter. Granade should not have allowed communications with a lawyer not involved in a pending case. Callaway did not represent anyone at the February 25, 2012 sentencing. The victim, not the victim's lawyer, could be considered involved in Weinacker's case. [ABA Canon 3 "A lawyer should not communicate … with the Judge as the merits of a pending cause, and he deserves rebuke and denunciation for any device or attempt to gain from a Judge special personal consideration.]

187)  Callaway should not have knowingly misrepresented, mischaracterized, or misquoted facts in his personal letter to Granade in Weinacker's case. Callaway should not have written his personal letter to Granade in connection with Weinacker's pending case.

188) Callaway's letter to Granade included an email Weinacker emailed to bankruptcy court personnel on April 10, 2010. Granade knew or should have known the email was not addressed to Callaway. Granade should have known the email was not evidence. Granade should have asked why Callaway was providing the email since it was not sent to him and did not concern him. Granade knew or should have known the email was sent prior to criminal proceedings (2010 to 2013). Granade should not have read the email.

189) In Callaway's personal letter to Granade he enclosed Charles Weinacker (Weinacker's husband) emails. Granade should have asked what Weinacker's husband's email had to do with Weinacker. Weinacker's husband's email was not addressed to Callaway, did not come from Weinacker and, in fact, Granade did not need to see them. Granade knew or should have known these emails should have been rejected. Granade should not have read the emails.

190) Granade knew or should have known Callaway's letter and evidence was not fair, brought an unjustifiable litigation, stirred up strife, violated conduct and ethical rules as well as succeeding in exerting personal influence on the court. Granade knew or should have known there was no reason those emails should have been provided.

191) Weinacker appeared before Granade on February 25, 2013 in the United States District Court for the Southern District of Alabama Southern Division in Criminal Action 12-00168-CG. Granade allowed Callaway to speak as a victim of Weinacker's "crime". Granade knew or should have known that Callaway did not have a statutory right to make a statement. Granade should have known Callaway did not fit the definition of a "victim". Granade knew or should have known a lawyer for the victim is not the victim. Granade knew or should have known the purpose of the victim making a statement is to allow the person most directly affected by the crime to address the court.

192) Granade knew or should have known after reading, reviewing and listening to Callaway this was a personal vendetta. Callaway had become single sighted when his emotions got twisted into the mix because he attempted (and succeeded) to exert personal influence on the Court. Callaway communicated privately with Granade as to the merits of Weinacker's pending case. Callaway violated Weinacker's Constitutional rights. Callaway stirred up and motivated Weinacker's litigation. Callaway sought deficiencies in Xena's bankruptcy. Callaway offered evidence which he knew the Court should reject.

193) Callaway states in the February 25, 2013 sentencing transcript when he spoke as the "victim" he wrote the letter "personally" to "shield NLAC, his client, in case there's some kind of blow back and "he didn't want NLAC, his client, to get sued making the situation worse". Callaway states NLAC

authorized him to speak on their behalf making NLAC and Hand Arendall them parties to this Complaint.

194) Weinacker appeared before Granade on February 25, 2013 in the United States District Court for the Southern District of Alabama Southern Division in Criminal Action 12-00168-CG. Granade sentenced Weinacker to five (5) months in prison, five (5) months home confinement and three (3) years supervised release and restitution of $54,961.57. After listening to testimony at the sentencing hearing, Granade knew or should have known Weinacker was innocent and her case should have been dismissed.

195) Weinacker was born in 1960 and grew up in southern Alabama with the perception that a "woman's place was in the home". She graduated from Fairhope High School in 1978. With a 12th grade education, she went on to realize her dream of starting and owning a company. The company manufactured pet products. Early in her life she learned she could never have children and the company became her child. She devoted 17 years of her life to her "child" as most mothers would do for their children. After 17 years her child was destroyed by the Defendants.

## ACTIONS UNDER COLOR OF LAW

196) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

197) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

198) Weinacker in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 18 U.S.C. §§ 241 and 242, and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.

199) All individual Defendants, Baer, White, Reiter, Shulman, Granade, Nelson, DuBose, Bedsole, Lynch, Holder, Brown, Cherry, Comey, Duff, to this claim, at all times relevant hereto, were acting under the color of law in their capacity as federal and/or state actors/employees and their acts or omissions were conducted within the scope of their official duties or employment of 18 U.S.C. § 242 and 42 U.S.C. §1983.

200) All individual Defendants, Callaway, DFriedlander, JFriedlander, Grodsky, Hendricks, Bates, Allen, Crawford, McMillion, Roberts, The Corporation Trust Company, Stevenson, to this claim, at all times

relevant hereto, were acting under the color of law in their capacity and their acts or omissions were conducted within the scope of their official duties or employment of 18 U.S.C. § 242 and 42 U.S.C. §1983.

201) Weinacker possesses the right to have Defendants not misuse their power, under pretense of law, to be deprived of her Constitutional and statutory rights.

202) Weinacker has the right to not have Defendants willfully and purposefully deprive Weinacker of her Constitutional rights as guaranteed by the United States Constitution.

203) Weinacker has the right to sue each Defendant individually and in their personal capacity to impose individual personal liability on the government officer for actions they took under the "badge" of authority.

204) Defendants acted intentionally and in concert, in their official capacities to deprive Weinacker of her rights protected by the United States Constitution.

205) Weinacker possesses the right to not have Defendants misuse their power just because they are clothed with authority.

206) Defendants should know the legal definition of willfully: "Willfully means a voluntary, intentional violation of a known legal duty. In other words, defendants must have acted voluntarily and intentionally and with the specific intent to do something that the law forbids; that is to say, with a purpose either to disobey or disregard the law."

207) Defendants should know the legal definition of actual intent: "Personal intention; the state of mind in respect of intelligent volition; the voluntary purposing of an act: often distinguishable from the motive which led to the formation of the intent."

208) By way of example, Weinacker directs this Court's attention to clearly established law:

i) 18 U.S.C. §242: This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S. Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of their official duties. This definition includes, in addition to law enforcement officials, individuals such as Mayors, Council persons, Judges, etc., persons who are bound by laws, statutes ordinances, or customs.

ii) 42 U.S.C. § 1893: Every person who, under color of any statute, ordinance, regulation, custom, or usage, subjects, or causes to be subjected, any citizen of the United States within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action of law.

iii) "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'" *United States v. Classic,* 313 U.S. 299, 326 (1941)

iv) "It is clear that under 'color' of law means under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111 (1945)

v) The Supreme Court construed the provision "under color of any statute" to include virtually any state action including the exercise of power of one "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" (*United States v. Classic*, 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)), "local officials may be sued in their "personal capacity" where suit seeks to impose individual personal liability on the government officer for actions taken under color of state law with the badge of state authority." *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d. 301 (1991), "willful participant in activity with state or agents". *Adickes v. Kress*, 398 U.S. 144 (1970).

vi) Insofar as "willfully" was concerned under such circumstances, according to the majority, "Petitioner and his associates acted willfully and purposefully; their aim was precisely to deny the protection that the Constitution affords." *Williams v. United States,* 341 U.S. 97, 102 (1951)

vii) *Greenwood v. Peacock*, 384 U.S. 808 (1966), observed that, under Section 1983, state "officers may be made to respond in damages not only for violations of rights conferred by federal equal civil rights laws, but for violations of other federal Constitutional and statutory rights as well."

viii) That right was his because he was an American citizen because he was a human being. As such he was entitled to all the respect and fair treatment that befits the dignity of man, a dignity that is recognized and guaranteed by the Constitution. Yet not even the semblance of due process has been accorded him … [W]hereas, as here, the states are unwilling for some reason to prosecute such crimes the federal government must step in unless Constitutional guarantees are to become atrophied. *Screws v. United States*, 325 U.S. 91 (1945)

209)    All Defendants are persons under 42 U.S.C. § 1983 and all Defendants acted under color of law.

210)    As a proximate result of the acts and omissions described herein, Defendants, in collaboration and/or conspiracy with the agencies that employed them and with the private Defendants listed herein, Weinacker has been injured and damaged, in amounts to be determined at trial.

211) Among under wrongs described herein, Defendants and agencies employing defendants, violated the statutory and Constitutional rights of Weinacker and clearly established as detailed in this Complaint, in amounts to be proven at trial.

212) The damages to Weinacker include compensatory, general, exemplary and punitive damages, in amounts to be determined at trial.

## REPRESENTATION AS *PRO SE*

213) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

214) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

215) Defendants at all times relevant herein violated the statutory and Constitutional rights of Weinacker and clearly established law as described herein.

216) Weinacker has the right to file this complaint *pro se*.

217) Weinacker possesses the right to have this Honorable Court accept the factual allegations of this Complaint as true.

218) Weinacker has the right to have this Honorable Court take an unbiased view of all evidence and evaluate it and give it the weight Weinacker believes it is entitled to receive.

219) Weinacker possesses the right to not have the Complaint dismissed because this Honorable Court does not believe the factual allegations.

220) Weinacker's Sixth Amendment guarantees her the right to represent herself as *pro se*.

221) Weinacker has the right to have this complaint held to a less rigid standard than a Complaint filed by a lawyer who has attended law school and has a license to practice law.

222) Defendants acted and conspired to engage in a course of conduct the object of which was the destruction of Weinacker as well as Weinacker's freedom in direct contravention to the United States and Alabama Constitutions, U.S. Constitution Amendments Four, Five, Six, Nine and Fourteen; and, Alabama Constitution Article I, §§ 1, 5, 6, 13, 35 and 36.

223) By way of example, Weinacker directs this Court's attention to clearly established law:

   i) The Supreme Court in *Haines v. Kerner*, 404 U.S. 519, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972), pro se pleadings are to be construed and held to a less stringent standard than formal pleadings drafted by lawyers; if the Court can reasonably read pleadings to state

a valid claim on which litigant can prevail, it should do so despite failure to cite proper legal authority confusing legal theories, poor syntax, and sentence structure, or litigant's unfamiliarity with pleading requirements.

ii) "A court must accept the factual allegations of the complaint as true." *Shotz v. American Airlines, Inc.,* 420 F. 3d 1332 (2005) and dismissal is not permissible because of a "judge's disbelief of a complaint's factual allegations". *Bell Atl. Corp v. Twombly*, 127 S. Ct. 1955 (2007) quoting *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

iii) Although the court must limit its review to the facts stated on the face of the complaint, (*Allen v. WestPoint-Pepperell, Inc.*, 945 F. 2d 40 (1991)), a complaint drafted by a *pro se* plaintiff must be construed liberally. *McGarry v. Pallito*, 687 F. 3d 505 (2012); *Julian v. New York City Transit Authority*, 857 F. Supp. 242 (1994), *aff'd*, 52 F. 3d 312 (1995) (citing *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (*per curiam*). Because the sanction of dismissal is harsh, courts are adjured to apply the rule of liberal construction "with particular strictness where the complaint alleges a violation of civil rights." *Alie v. NYNEX Corp.*, 158 F.R.D. 239 (1994) (citing *Branum v. Clark*, 927 F. 2d 698 (1991)); see also *McGarry v. Pallito*, 687 F. 3d 505 (2012).

iv) "In the recent ruling by the Supreme Court, the court clarified the fact that defendants 'are generally ill-equipped to represent themselves' where they have no brief from counsel and no court opinion addressing their claim." *Martinez v. Ryan*, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012)

v) The judge has the duty to take an unbiased view of all the evidence, both direct and circumstantial and evaluate it and accord it the weight that he believes it is entitled to receive. *In re: Waikiki Hobron Associates*, 6 B.R. 643 (Bankr. D. Hawaii 1980) (Rule 41(b)) (citing *Weissinger v. U.S.*, 423 F. 2d 795 (5th Cir, 1970)).

vi) The U.S. Supreme Court has held that factual allegations sufficient to support a claim trump the need to cite the specific statute supporting the plaintiff's legal theory. In *Johnson v. City of Shelby*, 135 S.Ct. 346 (2014), the high court found that even without a statutory reference, if the complaint contains a short and plain statement of the claim showing that the plaintiff is entitled to relief, then dismissal is improper. The Court concluded that a complaint should not be dismissed solely for an "imperfect statement of the legal theory supporting the claim asserted, "and noted that there is no pleading rule that requires a plaintiff seeking redress for a violation of Constitutional rights to expressly invoke § 1983 in order to state a claim.

224) As a proximate result of the acts and omissions described herein, Defendants, in collaboration and/or conspiracy with the agencies that employed them and with the private Defendants listed herein, Weinacker has been injured, damaged, suffered emotional distress and psychological damage, in amounts to be proven at trial.

225)     As a result of Defendants' conduct, Weinacker has suffered substantial injuries and losses, entitling her to compensatory, general, exemplary, punitive damages and special damages, including but limited to loss of Constitutional and statutory rights, legal expenses, emotional distress, reputational assault, stigma, and ongoing special damages, in amounts to be determined at trial.

## STATUTE OF LIMITATIONS

226)     Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

227)     Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

228)     Defendants at all times relevant herein violated the statutory and Constitutional rights of Weinacker and clearly established law as described herein.

229)     Weinacker possesses the right to have this Honorable Court to rule statute of limitations does not begin to run until the completion of the crime by Defendants.

230)     Weinacker has the right to not be deprived of due process of law because Weinacker did not know or find out the many violations of statutory and Constitutional violations until she was imprisoned.

231)     An enforcement of a statute of limitation defense would indeed cast the Defendants as being above the law.

232)     Weinacker possess the right to not have the Complaint dismissed because § 1983 provides an additional period of time in which to bring a lawsuit equal to the period of time in which Weinacker was legally disabled.

233)     Weinacker possesses the right to pursue these violations with reasonable diligence.

234)     Weinacker has all the evidence to prove these claims without a reasonable doubt. Evidence in this case includes transcripts of court proceedings, District Court and Bankruptcy Court records, FBI records and lawyer records. All of this documentation is easily located to prove all claims.

235)     Defendants' crime against Weinacker is not complete. Weinacker has the rights to be not deprived of justice because Defendants' violations of Weinacker's statutory and Constitutional rights are not finished. The outcome of Defendants violations is ongoing in that the last element of their crime has not been satisfied. Weinacker is on probation after serving time in prison. After Weinacker

served her prison term and served her motion location stint, she was placed on three-year probation and is still under court supervision.

236)    The discovery rule provides a point of entry starting from the date of injury or when damage was discovered or reasonably should have been discovered by Weinacker.

237)    The statute of limitations was tolled on February 25, 2013 when Weinacker was sentenced and the tolling continues until Weinacker's sentence is complete which will be at the end of the three-year probation period.

238)    By way of example, Weinacker directs this Court's attention to clearly established law:

   i)   Statutes of limitation "normally begin to run when the crime is complete" which occurs when the last element of the crime has been satisfied. *Toussie v. United States*, 397 U.S. 112, 115 (1970), quoting, *Pendergast v. United States*, 317 U.S. 412, 418 (1943); *see also, United States v. Venti*, 687 F.3d 501, 503 (1st Cir. 2012); *United States v. Eppolito*, 543 F.3d 25, 46 (2nd Cir. 2008); *United States v. Reitmeyer*, 356 F.3d 1313, 1317 (10th Cir. 2004); *United States v. Najjor*, 255 F.3d 979, 983 (9th Cir. 2001); *United States v. Dees*, 215 F.3d 378, 380 (3rd Cir. 2000); *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999); *United States v. Lutz*, 154 F.3d 581, 586 (6th Cir. 1998); *United States v. Gilbert*, 136 F.3d 1451, 1453 (11th Cir. 1998); *United States v. Gomez*, 38 F.3d 1031, 1034 (8th Cir. 1994); *United States v. Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994). 84 *United States v. Reitmeyer*, 356 F.3d 1313, 1317 (10th Cir. 2004); *United States v. Carlson*, 235 F.3d 466, 470 (9th Cir. 2000); *United States v. Crossley*, 224 F.3d 847, 859 (6th Cir. 2000); *United States v. Yashar*, 166 F.3d at 875; *United States v. Vebeliunas*, 76 F.3d 1283, 1293 (2nd Cir. 1996).

   ii)  The Supreme Court has held that state tolling statutes, which provide a plaintiff with an additional period of time in which to bring a lawsuit equal to the period of time in which the plaintiff was legally disabled, apply to section 1983 cases. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980).

   iii) Under section 1983, the statute of limitations does not begin to run until the cause of action accrues. The cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the action" (*Cox v. Stanton*, 529 F. 2d. 47 (1975))

   iv)  … we have held that the Government must prove the time of the conspiracy offense if a statute-of-limitations defense is raised. *Grunewald* v. *United States*, 353 U. S. 391, 396 (1957) But the Government satisfied that burden here when it proved that the conspiracy continued past the statute-of-limitations period. (See *Smith v. United States*. 568 U.S. _____ (2013), S.C. No. 11-8976)

239)    As a proximate result of the Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, legal expenses, emotional and

mental distress, reputational assault, stigma, and ongoing special damages, in amounts to be determined at trial

240) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, to be proven at trial.

241) Weinacker is entitled to punitive damages against Defendants, in that the actions were taken maliciously, willfully or with a reckless or wanton disregard of Weinacker's Constitutional rights.

242) As a proximate result of the acts and omissions described herein, Defendants, in collaboration and/or conspiracy with the agencies that employed them and with the private Defendants listed herein, Weinacker has been injured, damaged, suffered emotional distress and psychological damage, in amounts to be determined at trial.

243) The damages to the Plaintiff include compensatory, general, exemplary, and special and punitive damages, in amounts to be proven at trial.

## IMMUNITY

244) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

245) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

246) Defendants knew or should have known their actions, as described herein, violated Weinacker's statutory and Constitutional rights and were contrary to clearly established law.

247) The acts of the Defendants were not objectively reasonable with respect to Weinacker's statutory and Constitutional rights and were contrary to clearly established law.

248) The acts of the Defendants complained herein, were conducted in bad faith.

249) The acts of the Defendants complained of herein, were conducted with deliberate indifference to the outcome in the life of Weinacker.

250) The acts of the Defendants complained of herein, were conducted with reckless disregard for their consequences in the life of Weinacker.

251) The acts of the Defendants were committed in gross disregard for clearly established Constitutional rights of Weinacker.

252)     Weinacker possesses the right to bring this lawsuit against Defendants for violations of Weinacker's clearly established Constitutional rights.

253)     Weinacker has the right to have Defendants uphold the highest standards of behavior because they are keepers of the peace and officers of the law and they should operate within the same guidelines themselves as they expect of regular citizens.

254)     Defendants, Shulman, DuBose, Granade and Nelson acted intentionally and knowingly to deprive Weinacker of her Constitutional rights and in doing so they exercised no discretion or individual judgment. They no longer acted as a judge, but as a "minister" of their own prejudice.

255)     Weinacker possesses the right to have Shulman, DuBose, Granade and Nelson lose immunity from civil as well as criminal action because they violated the Constitutions and laws of the United States of America which they took an oath to uphold.

256)     Weinacker has the right to have Shulman, Granade, DuBose and Nelson punished criminally for willful deprivation of Weinacker's Constitutional rights.

257)     Defendants are bound to uphold the laws and the laws of the Constitution and by denying Weinacker these rights have committed offenses against the justice system.

258)     Defendants, *DOJ, FBI, U.S. Attorneys' Office, U.S. Courts, at all times relevant to this cause of* action, were state and/or federal actors/agencies, acting under color of law within the meaning of 18 U.S.C. § 242 and 42 U.S.C. § 1983, *et seq.*

259)     Weinacker was injured and damaged by actions which flowed from the legal and judicial acts of Defendants denying Weinacker Constitutional rights.

260)     Defendants did not act or operate within accepted legal and judicial authority.

261)     *Defendants were incompetent, negligent and malicious in denying Weinacker her Constitutional* rights guaranteed by the United States Constitution.

262)     Defendants, including DuBose, Shulman, Granade and Nelson, are in positions to safeguard the rights of all parties, including Weinacker's Constitutional rights.

263)     Defendants plainly and clearly violated Weinacker's Constitutional rights when she was refused assistance of counsel as well as due process which is mistakenly violations of the United States Constitution. These violations were committed by Defendants, including Shulman, DuBose, Granade and Nelson, in their official capacities.

264)     By way of example, Weinacker directs this Court's attention to clearly established law:

i)     In *Bivens v. Six Unknown Fed. Narcotics Agents* [403 U.S. 388 (1971)], federal agents had allegedly arrested and searched Bivens without [*Davis v. Passman*, 442 U.S. 228, 234, (1979)]   probable cause, thereby subjecting him to great humiliation, embarrassment,

and mental suffering. *Bivens* held that the Fourth Amendment guarantee against "unreasonable searches and seizures" was a Constitutional right which *Bivens* could enforce through a private cause of action, and that a damages remedy was an appropriate form of redress. Last Term, *Butz v. Economou*, 438 U.S. 478 (1978), reaffirmed this holding, stating that "the decision in *Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Id* at 504.

ii) *"Bivens* action" takes its name from a seminal U.S. Supreme Court case, *Bivens v. Six Unknown Named Agents*, in which the Court first held that lawsuits against federal officers were permissible for alleged Constitutional violations, even when no specific federal statute authorized the lawsuit. This makes the *Bivens* actions a federal counterpart to the § 1983 lawsuit, which is used exclusively against state officers and local governments for violations of individuals' clearly established First, Fourth, Fifth, Sixth, and Eighth Amendment rights.

iii) "'No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.' *United States v. Lee*, 106 U.S. [196,] 220 [(1882)]." *Butz v. Economou*, 438 U.S. 478, 506 (1978)

iv) When a judge acts intentionally and knowingly to deprive a person of his Constitutional rights, he exercises no discretion or individual judgment; he acts no longer as a judge, but as a "minister" of his own prejudice. *Pierson v. Ray*, 386 U.S. 547 (1967)

v) Career prosecutors believe that nobody can touch them. Nobody! *Prosecutorial Misconduct*, Public Broadcasting System Religion and Ethics Newsweekly (July 13, 2012) www.pbs.org/wnet/religionandethics/2012/07/13/july-13-2012-prosecutorial-misconduct/11821

vi) ABA Ethical Standard 3-3.9(f) requires, "The prosecutor should not bring or seek charges greater in number…than are necessary to fairly reflect the gravity of the offense." The attorney general's facile dismissal of the senator's question raises the concern: Has over-charging become so routine that the Department of Justice director no longer regards the practice as unethical?

vii) The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original] By law, a judge is a state officer. The judge then acts not as a judge, but as private individual (in his person).

viii) Judges who violated the Constitutions and laws of the United States of America lose all immunity from civil suit as well as criminal action. Judges may be punished criminally for willful deprivation of rights on the strength of 18 U.S.C. § 242. *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984 (1976)

ix) Federal officials should enjoy no greater zone of protection when they violate federal Constitutional rules than do state officers. *Butz v. Economou*, 438 U.S. 478, 479 (1978)

265) As a proximate result of the Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, legal expenses, emotional and mental distress, reputational assault, stigma, and ongoing special damages, in amounts to be determined at trial.

266) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be proven at trial.

267) Weinacker is entitled to punitive damages against Defendants, in that the actions were taken maliciously, willfully or with a reckless or wanton disregard of Weinacker's Constitutional rights.

268) As a proximate result of the acts and omissions described herein, Defendants, in collaboration and/or conspiracy with the agencies that employed them and with the private Defendants listed herein, Weinacker has been injured, damaged, suffered emotional distress and psychological damage, in amounts to be determined at trial.

269) The damages to the Plaintiff include compensatory, general, exemplary, and special and punitive damages, in amounts to be proven at trial.

**FIRST CLAIM FOR RELIEF – COUNT ONE**
**VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.***
**<u>Fourth & Fourteenth Amendment Violations</u>**

270) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

271) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

272) Weinacker's rights protected by the Fourth Amendment prohibited unreasonable search and seizure which was conducted by Reiter and White. Weinacker's rights protected by the Fourteenth Amendment prohibit use of any evidence unconstitutionally obtained. Callaway's, Baer's, White's and Reiter's evidence was obtained unconstitutionally making their evidence inadmissible in any criminal proceedings.

273) Weinacker possesses privacy rights to be from unwanted governmental intrusion into her life, property and liberty interests.

274) By Defendants, not reviewing Weinacker's case in its entirety violated Weinacker Constitutional rights as to the inadmissibility of evidence.

275) Weinacker has liberty rights to be free from seizure and incarceration without probable cause or exigent circumstances.

276) Documents produced as evidence contained materially untrue statements and omissions which were relied on for the instituting of criminal charges against Weinacker. Evidence obtained in Defendants' investigation was inadmissible.

277) Weinacker possesses Constitutional rights to have a competent and professional investigation before criminal proceedings are instigated.

278) Weinacker has the rights to have a complete investigation before criminal charges are brought. Xena's bankruptcy lawyer, Grodsky, was never questioned and documents were never requested of him making the "investigation" incomplete.

279) Documents obtained through subpoenas could not be used against Weinacker because they were obtained in violation of Weinacker's clearly established Constitutional rights.

280) Weinacker possesses rights in the notice of a hearing. FRCP 32 (a) (1) & 5(a) allows Weinacker to have 14 days' notice of the hearing. Records reflect Weinacker had less than 14 days (service of subpoena on November 24, 2009 to hearing on December 1, 2009.)

281) Weinacker possesses rights against the introduction of incriminating evidence in any criminal proceeding procured in contravention of Weinacker's clearly established Constitutional rights.

282) Weinacker possess rights protecting Weinacker before the grand jury as it does in any court proceeding. Weinacker's protection rights are as extensive before the grand jury as before any investigative officers.

283) By way of example, Weinacker directs this Court's attention to clearly established law:

   i) The Court stated in *Elkins v. United States,* 36 U.S. 206 (1960) that the rule's function "is to deter—to compel respect for the Constitutional guaranty in the only effectively available way—by removing the incentive to disregard."

ii) In *Silverthorne Lumber Co. v. United States,* 251 U.S. 385 (1920) and *Nardone v. United States*, 308 U.S. 338 (1939), Court ruled that leads or other evidence resulting from illegally obtained evidence are also inadmissible in trials.

iii) The Supreme Court noted, "A rule thus declaring 'prosecution may hide, Defendant must seek', is not tenable in a system constitutionally bound to accord Defendant's due process". The controversial proposition a prosecutor may not lead the defense to believe it possesses all relevant information when, in fact, the defense is mistaken about significant details only the government knows. *Banks v. Dretke*, 540 U.S. 688, 74 CrL. 342 (2004), the U.S. Court of Appeals for the 6th Cir. ruled June 20, 2013. (*U.S. v. Tavera*, 6th Cir. No. 11-6175, 06/20/2013))

284)     As a proximate result of the Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, legal expenses, emotional and mental distress, reputational assault, stigma, and ongoing special damages, in amounts to be determined at trial

285)     Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, to be proven at trial.

286)     Weinacker is entitled to punitive damages against Defendants, in that the actions were taken maliciously, willfully or with a reckless or wanton disregard of Weinacker's Constitutional rights.

287)     As a proximate result of the acts and omissions described herein, Defendants, in collaboration and/or conspiracy with the agencies that employed them and with the private Defendants listed herein, Weinacker has been injured, damaged, suffered emotional distress and psychological damage, in amounts to be determined at trial.

288)     As a proximate result of Defendants' unlawful conduct, Weinacker suffered injuries and losses, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial relationships, loss of enjoyment of life, pain and suffering, actual and special damages, in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF – COUNT TWO
## VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.*
### Fifth & Fourteenth Amendment Violations

289)     Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are

hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

290) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

291) Weinacker's rights protected by the Fifth Amendment have an explicit requirement that the federal government cannot deprive Weinacker of "life, liberty, or property" without due process of law and an implicit guarantee she receives equal protection of the laws. Defendants are liable for the violation of Weinacker's Constitutional right to be free from any deprivation of life and liberty. Weinacker's rights protected by the Fourteenth Amendment explicitly prohibit violations of Weinacker's rights of due process and equal protection.

292) Weinacker possesses due process rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

293) Weinacker possesses liberty rights guaranteed by the Fifth and Fourteenth Amendments of the United States of America to be free from unwanted governmental intrusion without probable cause or exigent circumstances.

294) Weinacker has due process rights entitling her to fairness and justness in that all are equal under the law and entitled without any discrimination to equal protection of the law.

295) Weinacker's due process fairness is extended to ineffective assistance of counsel. The finding of unfairness in the conduct of Weinacker's criminal proceedings due to a low level of defense representation by Defendants, DFriedlander and JFriedlander, requiring a reversal of her conviction on the grounds Weinacker was deprived her due process rights to counsel.

296) Weinacker was deprived her due process rights to counsel when Defendants, Shulman, Callaway, Grodsky, Hendricks, Baer, and Bedsole, refused Weinacker's request for counsel.

297) The acts of the individual Defendants were taken with deliberate indifference without lawful justification to Weinacker's rights and were designed to and did cause specific and serious harm, pain and suffering in violation of Weinacker's clearly established Constitutional rights protected under the Fifth and Fourteenth Amendments.

298) Defendants' conduct, as described herein, are liable for the violation of the Constitutional right to be free from any deprivation of life and liberty without legal representation under the Fifth and Fourteenth Amendment's due process clause provided in the United States Constitution.

299) Weinacker possesses the rights to due process of law, rights to liberty and rights to equal protection of the laws, against concerted unlawful and cruel prosecution, detention and confinement which impeded the due course of justice and prevented the legal process to take its course.

300) Weinacker has the right to be free from unreasonable searches and seizures, the right not to be deprived of property without due process of law, the right to have legal representation, the right to be free from unjustness and unfairness and the right to just compensation for taking of life, liberty and property.

301) Weinacker's allegations are factual as referenced and demonstrate disparate treatment, discrimination, bias and prejudice. Defendants ignored the incomplete evidence and engaged in violations and subsequently deprived Weinacker of her freedoms and equal protection under the laws as guaranteed by the Constitution of the United States.

302) In violating Weinacker's rights, as set forth herein, Defendants' conducted an unlawful, dishonest and illegal questioning and introduction of evidence setting into motion the chain of events leading to a conspired, hateful and spiteful prosecution and conviction of Weinacker.

303) Defendants' actions caused Constitutional violations of discrimination, equality, liberty, security and freedoms as protected by the United States Constitution. Weinacker's due process rights were denied to her by the Defendants. Defendants acted to conceal Constitutional right violations of Weinacker.

304) Based upon statements and "evidence", without any proper investigation and without taking into consideration exculpatory evidence, Defendants, individually, deliberately, intentionally and with reckless disregard ignored the Constitutional and civil rights of Weinacker by continuing to "investigate" and ultimately prosecute Weinacker. Defendants' investigation did not include requesting documents from Grodsky or questioning Grodsky.

305) As result of the intentional, deliberate and reckless acts of Defendants, the acts caused Weinacker to acquiesce to the unreasonable demands of Defendants and take a plea agreement.

306) The violations by Defendants of Weinacker's rights to due process of law were not based upon exigent circumstances or imminent danger.

307) The violations by Defendants of Weinacker's rights to due process of law were not objectively reasonable.

308) The violations by Defendants of Weinacker's rights to due process of law were conducted with reckless disregard for the consequences in the life of Weinacker.

309) The violations by Defendants of Weinacker's rights to due process of law were undertaken with gross disregard for the clearly established Constitutional rights of Weinacker.

310) By way of example, Weinacker directs this Court's attention to clearly established law:

i) The Constitution's command is that all "persons" shall be accorded the full privileges of citizenship; no person shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985)

ii) ... though his motive was pure and though his purpose was unrelated to the disregard of any Constitutional guarantee. The treacherous ground on which -- police, prosecutors, legislators, and judges -- would walk is indicated by the character and closeness of decisions of this Court interpreting the due process clause of the Fourteenth Amendment. A confession obtained by too long questioning (*Ashcraft v. Tennessee*, 322 U.S. 143, 64 S.Ct. 921, 88 L. Ed. 1192); the enforcement of an ordinance requiring a license for the distribution of religious literature (*Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L. Ed. 1292, 146 A.L.R. 81); the denial of the assistance of counsel in certain types of cases (*Cf. Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527, with *Betts v. Brady*, supra); —these are illustrative of the kind dependent on the prevailing view of the Court as constituted when the case arose. *Screws et al. v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L. Ed. 1495 (1945)

iii) "A fundamental principle of liberty and justice which inheres in the very idea of a free government and is the inalienable right of a citizen of such government". *Twining v. New Jersey*, 211 U.S. 78, 106 (1908)

iv) Commitment proceedings which lead to the imposition of essentially criminal punishment are subject to the due process clause and require the assistance of counsel. *Specht v. Patterson*, 386 U.S. 605 (1967)

v) "...the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment" "... the Court decided that the right to assistance of counsel is "fundamental" and the Fourteenth Amendment does make the right Constitutionally required" "... to assign counsel for him as a necessary requisite of due process of law . . . ." *Powell v. State of Alabama*, 287 U.S. 45 (1932)

311) As a proximate result of the Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial

312) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of

Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

313)     Weinacker is entitled to punitive damages against Defendants, in that the actions were taken cruelly, intentionally, and with a thoughtless and excessive neglect of Weinacker's Constitutional rights.

314)     Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

315)     As a proximate result of Defendants' illicit conduct, Weinacker suffered grievances and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial interactions, and loss of enjoyment of life, pain and grief, actual and special damages, in amounts to be proven at trial.

**THIRD CLAIM FOR RELIEF – COUNT THREE**
**VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.***
**<u>Fourteenth Amendment Violations</u>**

316)     Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

317)     Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

318)     Weinacker possesses rights to equal protection of the laws, citizenship rights and prohibits the government from depriving her of life, liberty or property as guaranteed by the Fourteenth Amendment to the Constitution of the United States of America.

319)     Weinacker possesses liberty rights guaranteed by the Fourteenth Amendment to the Constitution of the United States of America to be free from cruel, false and fraudulent prosecutions in criminal court.

320)     The collaboration and conspiracy of Defendants, including state and/or federal actors and private persons, were intended to support criminal proceedings in the criminal court against Weinacker.

321)     These acts by Defendants, including state and/or federal actors/agencies and private persons, were intended to deny and deprive Weinacker the equal protection of law.

322) These acts by Defendants, including state and/or federal actors/agencies and private persons, were intended to subject Weinacker to a denial of her Constitutional rights.

323) The acts and omissions of Defendants, including state and/or federal actors/agencies and private persons, were conducted with reckless disregard for their consequences in the life of Weinacker.

324) The acts and omissions of Defendants, including state and/or federal actors/agencies and private persons, were not objectively reasonable.

325) The acts and omissions of Defendants, including state and/or federal actors/agencies and private persons, were undertaken with gross disregard for clearly established Constitutional rights of Weinacker.

326) By way of example, Weinacker directs this Court's attention to clearly established law:

i) Due process is violated if a practice or rule "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)

ii) A party must be given an opportunity not only to present evidence, but also to know the claims of the opposing party and to meet them. Due process tends to secure equality of law in the sense that it makes a required minimum of protection for every one's right of life, liberty and property, which the Congress or the legislature may not withhold. Our whole system of law is predicated on the general, fundamental principle of equality of application of the law." *Truax v. Corrigan*, 257 U.S. 312, 331 (1921) See also *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)

327) As a proximate result of Defendants' illicit conduct, Weinacker suffered grievances and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial interactions, loss of enjoyment of life, pain and grief, actual and special damages, all in amounts to be proven at trial.

328) Because of Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial.

329) Compensatory damages for Weinacker's psychological and emotional distress and damages, loss of standing in her community and industry, damage to her reputation and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

330) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, to be proven at trial.

331) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

### FOURTH CLAIM FOR RELIEF – COUNT FOUR
### VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.*
### Ninth Amendment Violations

332) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

333) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

334) Weinacker's rights protected by the Ninth Amendment are rights not specifically enumerated in the Constitution. Weinacker has latent rights, still to be evoked and enacted into law, a reservoir of other, unenumerated rights.

335) Weinacker processes the right to privacy.

336) Weinacker has the right that none of her rights can be lost through omission.

337) The acts and omissions of these state and/or federal actors/agencies and private persons Weinacker suffered loss of liberty and freedom and has been publicly humiliated. Weinacker's harm has been immense, to her confidence, to her pride, to her life and relationships. Weinacker's reputation has been ruined and she has incurred unnecessary expenses including criminal attorney's fees.

338) Defendants conduct was extreme and outrageous beyond all possible bounds of decency and utterly intolerable in a civilized community. It was outrageous because Weinacker did not commit any crime or violation which would lead a reasonably prudent person to believe a crime had been committed.

339) Defendants owed a duty to act according to the standard of ordinary case, to wit conduct a proper investigation and the failure of a proper investigation was the proximate cause of

Weinacker's injuries and public scandal, humiliation, mental suffering, damaged reputation, and loss of capacity for the enjoyment of life.

340) Weinacker, despite due diligence, could not or did not discover the injuries the Defendants inflicted until after Weinacker's 152 days incarcerated at FMC Carswell and thereafter by extensively researching and reviewing laws, rules, codes, regulations, civil rights, Constitutional rights and court cases. Weinacker knew nothing of the law and was naïve in believing the legal system operated within the guidelines, Constitution, rules and laws of the United States.

341) Weinacker's time to file was tolled because there was a delay in the discovery of the injuries and harm inflicted by Defendants. The Defendants crime is not complete as to violations of Weinacker's statutory and Constitutional rights. The last element of the Defendants crime has not been satisfied because Weinacker's sentence included three-year probation time after prison.

342) By way of example, Weinacker directs this Court's attention to clearly established law:

   i) The Ninth Amendment shows that fundamental rights exist that are not expressly enumerated in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive. Justice Douglas, writing the opinion of the Court, asserted that the "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance." *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965)

   ii) Moreover, a judicial construction that this fundamental right is not protected by the Constitution because it is not mentioned in explicit terms by one of the first eight amendments or elsewhere in the Constitution would violate the Ninth Amendment. . . . Rather, the Ninth Amendment shows a belief of the Constitution's authors that fundamental rights exist that are not expressly enumerated in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive. *Griswold v. Connecticut*, 381 U.S. 479, 488, 491, 492 (1965)

   iii) The Constitution does not explicitly mention any right of privacy. In a line of decisions, however, going back perhaps as far as *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251 (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. *Roe, et al. v. Wade*, 410 U.S. 113 (1973)

   iv) The U.S. Supreme Court has explained: Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. *Brady v. Maryland*, 373 U.S. 83 (1963)

343) As a proximate result of Defendants' illicit conduct, Weinacker suffered grievances and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss

of familial interactions, loss of enjoyment of life, pain and grief, actual and special damages, all in amounts to be proven at trial.

344) Because of Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial.

345) Compensatory damages for Weinacker's psychological and emotional distress and damages, loss of standing in her community and industry, damage to her reputation and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

346) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

347) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

**FIFTH CLAIM FOR RELIEF – COUNT FIVE**
**VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.***
**<u>Fifth Amendment Violations</u>**

348) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

349) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

350) Weinacker, possesses the rights as stated in the U.S. Attorney's Manual Rule 9-11.233, that when conducting a grand jury inquiry if there is or may be substantial evidence that negates the guilt of the subject, such as Weinacker, it must be presented to the grand jury before seeking an indictment.

351) Weinacker has the right to the protection of the Fifth Amendment for Baer not to raising the presumption of guilt in the grand jurors' minds.

352) Weinacker possesses the right for the grand jury to be composed in a regulated manner to meet Constitutional requirements.

353) Defendants' duty is to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It was the Defendants' duty to protect the fairness of the judicial proceedings when evidence was presented before the grand jury.

354) Weinacker possesses the right to have had the grand jury to gather evidence through their broad subpoena power into Weinacker's criminal investigation. Evidence presented to grand jury contained nothing from Weinacker.

355) Weinacker had the right for the grand jury to make it difficult for Baer and Defendants to use unjust prosecution as a harassment weapon against Weinacker.

356) Baer conceded he could indict anybody, at any time, for almost anything, before any grand jury.

357) Defendants' duty is to remember the interest of the United States in a criminal proceeding is not just to win a case but to see justice is done. Defendants' had a duty not to mislead the grand jury into believing there was probable cause to indict by withholding evidence to the contrary.

358) Defendants knew or should have known they were to alert the grand jury to the nature and extent of the available exculpatory evidence because otherwise the grand jury merely functions as an arm of the prosecution.

359) Weinacker possesses the right to have had the grand jury subpoena individuals such as Grodsky for Xena's documents and/or testimony concerning Weinacker and/or Xena.

360) Defendants knew or should have known the grand jury may consider any form of evidence to fulfill its investigatory function. However, this does not mean the otherwise inadmissible evidence may be considered during later stages in the case, including at Weinacker's trial.

361) The Defendants knew or should have known that about 97% of federal criminal prosecutions are resolved by plea bargain and the only scrutiny a case receives in federal court is afforded by a grand jury. [It has been said a prosecutor could get a grand jury to indict a "ham sandwich".] Grand juries almost always indict people on the prosecutor's recommendation. Proof beyond a reasonable doubt never enters the question.

362)     Weinacker has the right to have the grand jury indictment be correct if she is to be charged with a crime. The July 26, 2012 grand jury indictment is signed by the foreman of the U.S. Grand Jury [redacted], Baer and John G. Cherry, Chief, Criminal Division of the United States Attorney's office.

363)     Count One - Indictment states: ...from September 9, 2009 to October 15, 2009, Weinacker, personally and as president of Xena in contemplation of a voluntary Chapter 11 bankruptcy knowingly and fraudulently, transfer and conceal property of Xena, including Wal-Mart funds in excess of $48,000 violating 18 U.S.C. § 152(7). Weinacker did not transfer or conceal Xena's property neither real nor personal.  Count One of the July 26, 2012 indictment was fabricated, incorrect, wrong and false. Funds, bank transfers, and financial transactions are not property, not real property, and not personal property. Funds are financial transactions as defined by bankruptcy code. Money and funds a medium of payment and considered legal tender. Count One is incorrect and Weinacker should never have been charged with transferring or concealing Xena's property.

364)     Count Two - Indictment states: ...on October 15, 2009 until April 30, 2010 Weinacker concealed from creditors property belonging to Xena including Wal-Mart funds violating 18 U.S.C. § 152(1). Weinacker did not conceal Xena's property.   Count Two of the July 26, 2012 indictment was fabricated, incorrect, wrong and false. Funds, bank transfers, and financial transactions are not property, not real property, not personal property. Funds are financial transactions as defined by bankruptcy code. Count Two is incorrect and Weinacker should never have been charged with concealing Xena's property.

365)     Count Three – Indictment states: ...on November 10, 2009 Weinacker answered "NONE" to question 10 of the SFA knowingly and fraudulently concealing Xena's property transfer violating 18 U.S.C. § 1519. Weinacker did not transfer or conceal Xena's property.  Count Three of the July 26, 2012 indictment is fabricated, incorrect, wrong and false. Funds, bank transfers, and financial transactions are not property, not real property, not personal property. Funds are financial transactions as defined by bankruptcy code. Count Three is incorrect and Weinacker should never have been charged with transferring or concealing Xena's property.

366)     Count Four - Indictment states: ...on September  2009 Weinacker with the intent to deceive and defraud to obtain money owed to Xena for invoices (over 60 days old) faxed Wal-Mart a bank change to receive those monies violating 18 U.S.C § 1343. At the time, Weinacker had not filed bankruptcy and had no intention of filing bankruptcy. The change was faxed to Wal-Mart because BankTrust had a "freeze" on Xena's account. The Wal-Mart fax was not done to fraudulently obtain funds. A thorough investigation would have clearly provided this information. Count Four is

incorrect and Weinacker should never have been charged with fraudulently obtaining Xena's money.

Weinacker did it in the ordinary course of business.

367) By way of example, Weinacker directs this Court's attention to clearly established law:

i) United States Attorney Manual states "when a prosecutor conducting a grand jury inquiry is aware of evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or disclose such evidence to the grand jury before seeking an indictment.

ii) For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal. *In re Fried*, F. 2d 453, 459 (2d Cir. 1947)

iii) In *United States v. R. Enterprises*, 498 U.S. 292 (1991), the Supreme Court held that "a grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" (quoting *Branzburg v. Hayes*, 408 U.S. 665 (1972)

iv) In *United States v. Kleen Laundry & Cleaners,Inc.,*381 F. Supp. 519 (1974), the court noted that "the grand jury's independence in the criminal justice system has declined with the increasing complexity of crime and the growth of the role of prosecutors, professional police, and investigative forces.

v) A grand jury investigation "is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." *United States v. Stone,* 429 F.2d 138 (1970)

vi) The prosecutor has more control over life, liberty, and reputation that any other person in America. *His discretion is tremendous...While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives; he is one of the worst. Former U.S. Attorney General Robert Jackson, The Federal Prosecutor, Address to the Second Annual Conference of United States Attorneys* (April 1, 1940) www.roberthjackson.org/the-man/speeches-articles/speeches/speeches-by-robert-h-jackson/the-federal-prosecutor

vii) When the grand jury is performing its investigatory function into a general problem area . . . , society's interest is best served by a thorough and extensive investigation." *Wood v. Georgia,* 370 U.S. 375, 392 (1962)

viii) ABA Model Rules of Professional Conduct - Rule 3.8, which is entitled Special Responsibilities of a Prosecutor, provides in the comment that "[a]prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence."

ix) ABA Canons of Professional Ethics - Canon 5, the primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible.

x) Grand juries provide little protection to accused suspects and are much more useful to prosecutors. Grand jurors also often lack the ability and knowledge to judge sophisticated cases and complicated federal laws. This puts them at the mercy of very well trained and experienced federal prosecutors. Grand jurors often hear only the prosecutor's side of the case and are usually persuaded by them. Grand juries almost always indict people on the prosecutor's recommendation. "Grand Jury Clause - 5th Amendment" Revolutionary War and Beyond Retrieved 7 October 2012

xi) A chief judge of New York State's highest court, Sol Wachtler, once said that grand juries were so pliable that a prosecutor could get a grand jury to "indict a ham sandwich." "Zimmerman's Bill of Rights". *The New York Sun*. 16 April 2012. Retrieved 7 October 2012.

xii) And William J. Campbell, a former federal district judge in Chicago, noted: "[T]oday, the grand jury is the total captive of the prosecutor who, if he is candid, will concede that he can indict anybody, at any time, for almost anything, before any grand jury." Campbell, William J. (1973). *Eliminate the Grand Jury, 64 J. Crim. L. & Criminology 174, 180*.

xiii) Prosecutors have an immense discretion in instituting criminal proceedings which may lastingly besmirch reputations. That discretion is almost completely unfettered. It should surely not extend so far as to preclude judicial interference with a prosecutor's aim to induce an indictment by offering to a grand jury evidence which is the product of illegal acts of federal officers. *In Re Fried*, 161 F 2d3 453 (2nd Cir 1947)

368)    As a proximate result of Defendants' illicit conduct, Weinacker suffered grievances and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial interactions, loss of enjoyment of life, pain and grief, actual and special damages, all in amounts to be proven at trial.

369)    Because of Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial.

370)    Compensatory damages for Weinacker's psychological and emotional distress and damages, loss of standing in her community and industry, damage to her reputation and her family's

unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be determined at trial.

371) Defendants, private Defendants and the agencies or companies employing the Defendants, violated the statutory and Constitutional rights of Weinacker and she has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, all in amounts to be determined at trial.

372) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

## SIXTH CLAIM FOR RELIEF – COUNT SIX
## VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.*
## Fifth Amendment Violations

373) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

374) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

375) Weinacker had the right to "plead the Fifth" as to being forced to incriminate herself.

376) By Weinacker taking the oath *ex officio mero* she was not to be considered guilty.

377) Weinacker had protection against compelled self-incrimination as stating in the Miranda Rule.

378) Weinacker possesses the right to invoke her Fifth Amendment guaranteed by the United States Constitution. The testimony, incriminating admissions or evidence cannot be used or introduced against Weinacker to establish guilt and the "fruits" of such cannot be used.

379) Weinacker possesses the right to plead the Fifth and the Court cannot take Weinacker's refusal as an admission of guilt.

380) Weinacker has the right upon an issuance of an indictment summons to her Miranda warning. Questioning Weinacker without the Miranda warning and without Weinacker waving her rights guaranteed to her by the United States Constitution is a violation and any information obtained in this violation is inadmissible.

381)    Defendants knew or should have known definitely drawing a negative inference from Weinacker invoking her Fifth Amendment right as guaranteed by the United States Constitution imposed an unconstitutional cost on Weinacker's exercise of the right to remain silent.

382)    By way of example, Weinacker directs this Court's attention to clearly established law:

i)   Post-indictment interrogation without the presence of counsel seemed doomed after *Spano v. New York*, 360 U.S. 315 (1959), and this was confirmed in *Massiah v. United States*, 377 U.S 201 (1964)

ii)  The U.S. Supreme Court – "Too many, even those who should be better advised; view this privilege as a shelter for wrongdoers. They readily assume those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Ullmann v. United States*, 350 U.S. 422, 426 (1956) (footnote omitted)

iii) Witnesses can assert the privilege against self-incrimination … they can assert it in state or federal court, in a wide variety of proceedings (including trials, depositions, administrative law proceedings, and investigatory proceedings like grand jury hearings). *United States v. Balsys*, 524 U.S. 666 (1998)

iv)  The United States Supreme Court stated that the Fifth Amendment privilege: … protects the innocent as well as the guilty.... one of the Fifth Amendment's basic functions . . . is to protect innocent men . . . who otherwise might be ensnared by ambiguous circumstances ..... truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth. *Ohio v. Reiner*, 532 U.S. 17 (2001) (*per curiam*)

383)    As a proximate result of Defendants' illicit conduct, Weinacker suffered grievances and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial interactions, loss of enjoyment of life, pain and grief, actual and special damages, all in amounts to be proven at trial.

384)    Because of Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial.

385)    Compensatory damages for Weinacker's psychological and emotional distress and damages, loss of standing in her community and industry, damage to her reputation and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

386) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

387) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

**SEVENTH CLAIM FOR RELIEF – COUNT SEVEN**
**VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.***
**Sixth Amendment Violations**

388) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

389) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint. Weinacker had the right to the help of a lawyer.

390) Weinacker had the Constitutional right to effective assistance of counsel in her criminal proceedings. Mere formal representation does not satisfy the Sixth Amendment guarantee.

391) Weinacker's Sixth Amendment guaranteed reasonably competent representation.

392) Weinacker possesses the right to have legal representation when the government interrogated her.

393) Weinacker has the right to be represented by legal counsel as guaranteed by her Sixth Amendment right.

394) Weinacker's Sixth Amendment rights provide her effective assistance of counsel.

395) Weinacker possesses rights as guaranteed to her by the Sixth Amendment of the United States Constitution for legal representation. [Federal Rules of Civil Procedure 32 (5) (b) states discovery against Weinacker cannot be used against Weinacker "despite diligent efforts to obtain counsel" and her not knowing of her need for counsel after service of the subpoena for her presence at the December 1, 2009 hearing.]

396) Weinacker has the right to legal assistance and once Weinacker indicated the wish of assistance of counsel all questioning should have ceased until she had counsel as guaranteed by the Sixth Amendment of the United States Constitution.

397)     Weinacker possesses the right to fundamental human rights of life and liberty and these rights are protected from infringement by the United States Constitution.

398)     By their conduct, as described herein, Defendants are liable for the violation of the Constitutional right to be free from any deprivation of life and liberty without assistance of counsel under the Sixth Amendment to the United States Constitution.

399)     By their conduct herein, Defendants' are liable for the criminal proceedings instigated against Weinacker and were unconstitutional because of the denial of Weinacker's request for legal representation.

400)     By way of example, Weinacker directs this Court's attention to clearly established law:

i)     "The noble idea that every defendant stands before the law cannot be realized if someone charged with a crime has to face his accusers without a lawyer." *Gideon v. Wainwright*, 372 U.S. 335 (1963)

ii)     In *Coleman v. Alabama*, 399 U.S. 1 (1970),  the Court denominated a preliminary hearing as a ''critical stage'' necessitating counsel even though the only functions of the hearing were to determine probable cause to warrant presenting the case to a grand jury.

iii)     The remedy for violation of the Sixth Amendment rule is exclusion from evidence of statements so obtained. See *Michigan v. Jackson*, 475 U.S. 625 (1986).

iv)     In *Spano v. New York*, 360 U.S. 315 (1959), that under the totality of circumstances a confession obtained in a post-indictment interrogation was involuntary, and four Justices wished to place the holding solely on the basis that post-indictment interrogation in the absence of defendant's lawyer was a denial of his right to assistance of counsel. Then, in *Escobedo v. Illinois*, 378 U.S. 478 (1964), the Court held that pre-indictment interrogation was a violation of the Sixth Amendment.

v)     Without it [aid of counsel], though he may not be guilty, he faces the danger of conviction because he does not know how to establish his innocence.   *Powell v. Alabama*, 287 U.S. 45 (1932) A necessary corollary is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth.' *Chandler v. Fretag*, 348 U.S. 3 (1954)

401)     As a proximate result of Defendants' illicit conduct, Weinacker suffered grievances and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial interactions, loss of enjoyment of life, pain and grief, actual and special damages, all in amounts to be proven at trial.

402)     Because of Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress,

reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial.

403) Compensatory damages for Weinacker's psychological and emotional distress and damages, loss of standing in her community and industry, damage to her reputation and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

404) Weinacker is entitled to punitive damages against Defendants, in that the actions were taken maliciously, willfully and with a reckless or wanton disregard of the Constitutional rights of Weinacker.

405) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

406) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

### EIGHTH CLAIM FOR RELIEF – COUNT EIGHT
### VIOLATION OF CIVIL RIGHTS 42 U.S.C § 1983 *et seq.*
### CONSPIRACY UNDER 42 U.S.C. § 241 *et seq.*

407) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

408) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

409) Defendants, Shulman, Granade, Nelson, Bedsole, Baer, DuBose, White and Reiter, for all times relevant to this cause of action, were acting in their capacity and their acts or omissions were conducted within the scope of their official duties or employment of 18 U.S.C. § 242 *et seq.* and 42 U.S.C. §1983 *et seq.*

410) Defendants, DOJ, FBI, U.S. Attorney's offices, U.S. Courts, for all times relevant to this cause of action, were acting in their capacity and their acts or omissions were conducted within the scope of their official duties or employment of 18 U.S.C. § 242 *et seq.* and 42 U.S.C. §1983 *et seq.*

411) Defendants, Baer, DuBose, White, Reiter, Shulman, Granade, Nelson, Bedsole, Lynch, Holder, Brown, Cherry, Comey, Duff, to this claim, at all times relevant hereto, were acting in their capacity and their acts or omissions were conducted within the scope of their official duties or employment of 18 U.S.C. § 242 *et seq*. and 42 U.S.C. §1983 *et seq*.

412) Defendants, Callaway, DFriedlander, JFriedlander, Grodsky, Hendricks, Bates, Allen, Crawford, McMillion, Roberts, The Corporation Trust Company, Stevenson, to this claim, at all times relevant hereto, were acting in their capacity and their acts or omissions were conducted within the scope of their official duties or employment of 18 U.S.C. § 242 *et seq*. and 42 U.S.C. §1983 *et seq*.

413) Defendants, HA, IGPC, Walmart and NLAC, for all times relevant to this case of action, were acting in their capacity and their acts or omissions were conducted within the scope of their official duties or employment of 18 U.S.C. § 242 *et seq*. and 42 U.S.C. §1983 *et seq*.

414) Defendants, private persons by themselves and/or through their acts conspired and/or agreed to the common objective with the state and/or federal actors to deprive Weinacker of life, liberty and her Constitutional rights.

415) Defendants, corporations, partnerships, companies and/or law firms by themselves and/or through their employees and/or through their acts conspired and/or agreed to the common objective with the state and/or federal actors to deprive Weinacker of her Constitutional rights.

416) Specifically and as more particularly set out herein the common objective for which the Defendants, private persons conspired and/or agreed with the state and/or federal actors and/or their agencies and/or their companies was to influence the grand jury in handing up an indictment for Weinacker, and subject her to a thoroughly illegal and unconstitutional process in the United States District Court, Southern District of Alabama.

417) Specifically and as more particularly set out herein the common objective for which the Defendants. private persons conspired and/or agreed with the state and/or federal actors and/or their agencies and/or their companies was to influence the Court and Judges in sentencing Weinacker, and subject her to a thoroughly illegal and unconstitutional process in the United States District Court, Southern District of Alabama.

418) The Defendants, each of them, acted in furtherance of the common objective of influencing the grand jury proceedings against Weinacker.

419) The Defendants, each of them, acted in furtherance of the common objective of influencing the criminal proceedings against Weinacker.

420) Defendants, each of them, did the acts and things herein alleged pursuant to and in furtherance of the conspiracy. Defendants furthered the conspiracy by cooperation with or lent aid and encouragement to or ratified and adopted the acts of defendants in turning a blind eye.

421) Defendants, each of them, did the actions herein alleged pursuant and in continuance of the conspiracy in that upon witnessing the violations of a Weinacker's civil rights they did nothing to stop it making each Defendant liable for failing to intervene.

422) On, before, or about December 1, 2009, Defendants each of them knowingly and willfully conspired and agreed among themselves to intentionally harm and injure Weinacker.

423) Defendants, knowledgeable of the fact that Weinacker's Constitutional rights were being violated, Defendants deliberately closed their eyes to what would otherwise been obvious.

424) By way of example, Weinacker directs this Court's attention to clearly established law:

i) 18 U.S.C. § 241: If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

ii) [t]he primary purpose of a conspiracy must be to cause injury to another.... the intentional doing of an injurious act without justification or excuse." *Bliss*, 212 Or. 634, 321 P.2d at 328... An act may also be the basis for a civil conspiracy when, although done without a direct intention to injure another, it is "done to benefit the conspirators, [and] its natural and necessary consequences is the prejudice of the public or the oppression of individuals. *Hotel Riviera, Inc. v. Short*, 80 Nev. 505, 396 P.2d 855, 859-60 (1964)

iii) The conspirators can be guilty even if they do not know the identity of the other members of the conspiracy. See *United States v. Monroe*, 73 F.3d 129 (7th Cir. 1995), *aff'd.*, 124 F.3d 206 (7th Cir. 1997).

iv) The essence of conspiracy is "the combination of minds in an unlawful purpose." *United States* v. *Hirsch*, 100 U. S. 33, 34 (1879) (See *Smith v. United States*. 568 U.S. _____ (2013), S.C. No. 11-8976)

v) Says the Government, "from the very nature of the conspiracy . . . there had to be, and was, from the outset a conscious, deliberate, agreement to conceal . . . each and every aspect of the conspiracy. . . ." It is then argued that, since the alleged conspiracy to conceal clearly continued long after the main criminal purpose of the conspiracy was accomplished ... *Grunewald v. United States*, 353 U.S. 391, 395 (1957)

vi) You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. *United States v. Brown*, 186 F. 3d 661 (1999)

425) As a proximate result of Defendants' unlawful conduct, Weinacker suffered accusations, injuries, losses and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial interactions, loss of enjoyment of life, pain and grief, actual and special damages, all in amounts to be determined at trial.

426) Because of Defendants' behavior, Weinacker has suffered considerable injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be proven at trial.

427) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

428) Compensatory damages for Weinacker's mental and emotional distress and damages, loss of standing in her community and business relations, damage to her character and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

429) Weinacker is entitled to punitive damages against Defendants, in that the actions were taken cruelly, willfully and with a reckless or malevolent disregard of the Constitutional rights of Weinacker.

430) Weinacker has suffered emotional and mental distress and psychological damage, and her reputation has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

431) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

**NINTH CLAIM FOR RELIEF – COUNT NINE**
**<u>GROSS NEGLIGENCE</u>**

432) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are

hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

433)     Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

434)     Defendants, named herein, owed clearly cognizable legal duties to Weinacker to avoid in engaging in intentional acts designed to falsely convict Weinacker of a crime which she did not commit and which the Defendants knew she did not commit.

435)     Defendants, each of them, acted with conduct towards Weinacker which was callously indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury or harm resulted.

436)     The callously indifferent, reckless and grossly negligent conduct of Defendants as to Weinacker, includes, without limitation: manipulation and development of fabricated claims; refusal to subject false claims to alternative hypotheses for investigation; providing false, misleading, negative and damaging information to the grand jury and the District Attorney's office; not conducting an thorough investigation; denying  Constitutional rights; denying due process; denying fairness; consistent efforts to "spin" everything in order to support their false ideas that Weinacker had perpetrated some kind of fraud; and, maliciously making false and defamatory statements regarding Weinacker.

437)     As a proximate result of the Defendants' conduct, which was callously indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury or harm resulted, Weinacker was cruelly and severely damaged.

438)     As a result of such conduct, Weinacker is entitled to recover from Defendants, jointly and severally, compensatory damages, general damages, exemplary damages as set forth herein below.

### TENTH CLAIM FOR RELIEF – COUNT TEN
### DEFAMATION *PER SE*

439)     Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

440)     Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

441)     Following the conclusion of the criminal proceedings in the State of Alabama, Defendants had published in writing, reports, statements and pleadings making false and defamatory statements of and concerning Weinacker, as detailed above.

442)     At the time these false and defamatory writings, reports, statements and pleadings concerning Weinacker, as described above, Defendants knew or should have known that the statements were false, wrong and incorrect.

443)     The false and defamatory statements which Defendants published and in writing described Weinacker as a criminal, as a felon.

444)     These statements were lacking in reasonable basis in fact and were untrue.

445)     These statements were defamatory.

446)     These statements were published to third parties.

447)     These statements were made maliciously.

448)     Based upon the nature of these statements, they represent slander *per se* under Federal and Alabama State law.

449)     As a proximate result of the statements of false and defamatory remarks, Weinacker was harmed, injured and damaged.

450)     As a result of such conduct, Weinacker is entitled to recover from Defendants, jointly and severally, compensatory damages, general damages, special damages, exemplary damages and punitive damages because of false, defamatory, deceitful, and slanderous remarks, of which will determined at trial.

451)     As a proximate result of Defendants' unlawful conduct, Weinacker suffered substantial injuries, harm, losses and damages, entitling her to compensatory damages, general damages, special damages, exemplary damages and punitive damages including but not limited to reputational loss, loss of standing, character, and status, loss of Constitutional and statutory rights, in amounts to be proven at trial.

452)     Because of Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress,

reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial.

453)     Compensatory damages for Weinacker's psychological and emotional distress and damages, loss of standing in her community and industry, damage to her reputation and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

454)     Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

455)     Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

**ELEVENTH CLAIM FOR RELIEF – COUNT ELEVEN**
**PROCEDURAL DUE PROCESS – STIGMA PLUS**

456)     Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

457)     Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

458)     Weinacker possesses the right to basic human dignity.

459)     Weinacker has the right to protect her good name, honor, integrity and reputation.

460)     Weinacker has an irreparable harm, damages and injuries to her reputation as well as loss of job, loss of future employment prospects, loss of enjoyment of life, loss of home, loss of millions of dollars of real estate, loss of pet adoption agency, loss of pet travel agency, loss of family relations, loss of right to vote, loss of right to bear arms, loss to travel freely, loss of health, loss of 17-year-old small business, loss of self-esteem, loss of quality of life, loss of retirement benefits, loss of insurance benefits, loss of $6 million in intellectual properties,  loss of toy tying equipment, loss of rope making equipment, loss of advertising wrapped vehicle, loss of thousands of dollars of trade show and marketing materials as well as other losses to be determined.

461) Weinacker possesses the right to be free from criminal prosecution without procedural due process.

462) Defendants isolated Weinacker and ruled the Constitution did not exist for her.

463) Defendants destroyed Weinacker's name, reputation, honor and integrity when they accused her of lying, making false entries, concealing, covering up, falsifying, and executing schemes in Xena's bankruptcy.

464) Defendants imposed a stigma upon Weinacker by foreclosing and forcing Xena into Chapter 7 bankruptcy, by not protecting Xena in the bankruptcy process, and foreclosing future employment opportunities.

465) Weinacker's personal and professional reputations were stigmatized by the Defendants' actions.

466) Defendants' actions deprived Weinacker of her home, vehicle, company, retirement, insurance, health and enjoyment of life.

467) Defendants' actions deprived Weinacker the right to vote, a right protected by the United States Constitution.

468) Defendants' actions deprived Weinacker of the right to bear arms, a right protected by the United States Constitution.

469) Defendants' actions resulted in immeasurable, severe and irreparable harm to Weinacker.

470) Weinacker was humiliated and suffered mental and emotional anguish as a result of Defendants acts and omissions.

471) Weinacker possesses the right to her reputation built by her integrity, her honorable conduct and her right living.

472) Defendants' caused stigmatic injury to Weinacker by labeling her as a criminal wrongdoer without adequate procedural due process.

473) By way of example, Weinacker directs this Court's attention to clearly established law:

   i) In *Rosenblatt v. Baer*, 383 U.S. 75 (1966), Justice Stewart, described a person's right to protect his or her name as essential to our concept of ordered liberty and stated that "[t]he protection of private personality, like the protection of life itself **...** is entitled to [no] less recognition **by** this Court as [is] a basic [right] of our Constitutional system."

   ii) It is well-settled that a liberty interest is involved when:(1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities. *Perry v. FBI*, 781 F.2d 1294 (1986), cert. denied, 479 U.S. 814

(1986). See *Codd v. Velger*, 429 U.S. 624 (1977); *Bishop v. Wood*, 426 U.S. 341 (1976); *Board of Regents v. Roth*, 408 U.S. 564 (1972). The defendants have placed each of the plaintiffs' good names, reputations, honors and integrity at stake when they accused them of lying about drug use, drug dealing, serious crimes, making false statements or other issues that arose during their application process.

iii) Justice Brennan commented on the often determinative character of the question of privacy in *Rosenbloom v. Metromedia*, 403 U.S. 29 (1971): General references to the values protected by the law of libel conceal important distinctions. Traditional arguments suggest that libel law protects two separate interests of the individual: first, his desire to preserve a certain privacy around his personality from unwanted intrusion, and second, a desire to preserve his public good name and reputation.

iv) Stigma-plus claims arise when an individual alleges both the loss of a legally recognized right or status due to government action, and reputation damage due to defamatory statements of government actors. See *Behrens v. Regier*, 422 F.3d 1255, 1260 (2005) (citing *Paul*, 424 U.S. at 701-02, 711).

v) Justice Brennan acknowledged the impact of state-instituted social labels on individual identity, State condemnation of "individuals as criminals," Brennan noted, in effect "brand[s] them with one of the most stigmatizing and debilitating labels in our society." *Paul v. Davis*, 424 U.S. (1976)

vi) … we have said that "[t]he risk inherent in a stigma-plus claim is the risk that the false charges against the plaintiff will go unrefuted and that [her] name will remain stigmatized." *Patterson v. City of Utica,* 370 F.3d 332 (2004).

474)    As a proximate result of the Defendants' extreme and outrageous conduct, Weinacker was injured and damaged.

475)    As a proximate result of the Defendants' conduct, Weinacker suffered and continues to suffer, substantial damages and irreparable harm.

476)    As a proximate result of the breach of the duty to use ordinary and reasonable care, Weinacker is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages and punitive damages as set forth herein

477)    As a proximate result of Defendants' unlawful conduct, Weinacker suffered substantial injuries, harm, losses and damages, entitling her to compensatory damages, general damages, special damages, exemplary damages and punitive damages including but not limited to reputational loss,

loss of standing, character, and status, loss of Constitutional and statutory rights, in amounts to be proven at trial.

478) Because of Defendants' conduct, Weinacker has suffered substantial injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be determined at trial.

479) Compensatory damages for Weinacker's psychological and emotional distress and damages, loss of standing in her community and industry, damage to her reputation and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

480) Weinacker has suffered emotional and mental distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

### TWELTH CLAIM FOR RELIEF – COUNT TWELVE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

481) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

482) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

483) As described herein, Defendants acted towards Weinacker with conduct a reasonable person would describe as extreme and outrageous.

484) Defendants owed a duty to Weinacker to exercise ordinary care in investigating allegations against her.

485) Defendants owed a responsibility to Weinacker to seek out every available clue, document, accounting, report, testimony etc. and examine all witnesses in every proper way to find if a crime had truly been committed.

486) Defendants owed a duty to Weinacker to question Grodsky and review Grodsky's files before accusing her of crimes.

487) Even if such duty did not originally exist, such duty arose when Defendants undertook to conduct an investigation into allegations against Weinacker.

488) Defendants breached this duty by failing to properly investigate these allegations, by manipulating and modifying evidence and by ignoring exculpatory evidence which tended to indicate Weinacker did not commit the offenses as alleged.

489) At the time each of these Defendants interacted with Weinacker, it was reasonably foreseeable a lack of ordinary care on the part of these Defendants could and would damage Weinacker.

490) As a result of the foreseeability of damage to Weinacker, which could result from a lack of ordinary care, these Defendants owed an obligation to Weinacker to use ordinary and reasonable care.

491) These Defendants did not use ordinary and reasonable care in their interactions with Weinacker.

492) The lack of ordinary and reasonable care constituted a breach of the duty these Defendants owed to Weinacker.

493) The extreme and outrageous conduct of Defendants engaged in was with callous indifference, recklessly and without regard to whether it might cause injury or harm to Weinacker.

494) The extreme and outrageous conduct of Defendants was designed to subvert the relationship between Weinacker and her husband.

495) The extreme and outrageous conduct of Defendants is illustrated by, but not limited to, the examples set forth throughout this Complaint.

496) By way of example, Weinacker directs this Court's attention to clearly established law:

i) Merely to be charged with a crime is a punishing experience. The defendant's reputation is immediately damaged, usually irreparably, despite an ultimate failure to convict. Anguish and anxiety become a daily presence for the defendant . . . The financial burdens can be enormous, and may well include loss of employment because of absenteeism due to pretrial detention or time required away from work during hearings and the trial, or because of the mere fact of having been named as a criminal defendant. MONROE H. FREEDMAN, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975).

ii) Roger T. Brice, Comment, *Grand Jury Proceedings: The Prosecutor, the Trial Judge, and Undue Influence*, 39 U. CHI. L. REV. 761, 762 (1972) ("Whatever the final outcome of [a defendant's case] may be, indictment can cause the accused loss of employment, lessening of community respect, and an expensive, time-consuming legal battle.")

iii) For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal *In re* Fried, 161 F.2d 453, 458 (2d Cir. 1947)

497) As a proximate result of Defendants' unlawful conduct, Weinacker suffered accusations, injuries, losses and damages, entitling her to recover compensatory damages including loss of Constitutional rights, loss of familial interactions, loss of enjoyment of life, pain and grief, actual and special damages, all in amounts to be determined at trial.

498) Because of Defendants' behavior, Weinacker has suffered considerable injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be proven at trial.

499) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

500) Compensatory damages for Weinacker's mental and emotional distress and damages, loss of standing in her community and business relations, damage to her character and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

501) Weinacker is entitled to punitive damages against Defendants, in that the actions were taken cruelly, willfully and with a reckless or malevolent disregard of the Constitutional rights of Weinacker.

502) Weinacker has suffered emotional and mental distress and psychological damage, and her reputation has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

503) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

504) As a proximate result of the *Defendants' extreme and outrageous conduct,* Weinacker was injured, harmed and damaged.

505) As a proximate result of the breach of the duty to use ordinary and reasonable care by these Defendants named in this Complaint, Weinacker was injured, harmed and damaged.

506) As a result of such conduct, Weinacker is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages and punitive damages as set forth herein below.

## THIRTEENTH CLAIM FOR RELIEF – COUNT THIRTEEN
### GROSS NEGLIGENCES

507) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

508) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

509) Defendants, named herein, owed clearly cognizable legal duties and responsibilities to Weinacker to avoid engaging in intentional acts designed to convict Weinacker of a crime of which she did not commit and these Defendants knew or should have known she did not commit.

510) Defendants, each of them, acted with conduct which was callously indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury or harm resulted to Weinacker.

511) Defendants was callously indifferent and reckless as to demonstrate a substantial lack of concern whether Weinacker suffered an injury or harm from their conduct.

512) Compensatory damages for Weinacker's emotional distress and damages, loss of reputation, loss of familial interactions, pain and grief and her family's unreimbursed out of pocket expenses incurred in response to Weinacker's circumstances, in amounts to be proven at trial.

513) As a proximate result of the Defendants' conduct, which was callously indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury or harm resulted, Weinacker was damaged.

514) As a proximate result of Defendants' unlawful conduct, Weinacker suffered accusations, injuries, losses and damages, entitling her to recover damages, all in amounts to be determined at trial.

515) Because of Defendants' behavior, Weinacker has suffered considerable injuries, harm and losses, entitling her to compensatory, general, exemplary, punitive and special damages, including but limited to loss of Constitutional and statutory rights, expenses, emotional and mental distress, reputational assault, psychological damage, stigma, and ongoing special damages, in amounts to be proven at trial.

516) Weinacker is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

517) Weinacker is entitled to punitive damages against Defendants, in that the actions were taken cruelly, willfully and with a reckless or malevolent disregard of the Constitutional rights of Weinacker.

518) Weinacker has suffered emotional and mental distress and psychological damage, and her reputation has suffered as a direct and proximate result of Defendants deliberate indifference to her Constitutional and statutory rights, in amounts to be determined at trial.

## FOURTEENTH CLAIM FOR RELIEF – COUNT FOURTEEN
## LOSS OF CONSORTIUM

519) Weinacker hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. The statements, law, and facts together with the complete wording in Exhibits "A" through "KK" are hereby restated and incorporated into the Complaint with the same force and effect as though Exhibits were set forth in full detail herein.

520) Exhibits are exact copies from court records, court transcripts and an FBI investigation documents. These are the actual documents in these proceedings outlining the truth of all facts concerning this complaint.

521) At all relevant times of in Weinacker's Complaint, Weinacker was married to Charles Weinacker and they continue to be married.

522) That as a result of the wrongful and negligent acts of the Defendants, and each of them, Charles Weinacker was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, loss or deprivation of companionship, emotional support, sexual relations, affection, love, comfort, mental distress, conjugal fellowship, loss of reputation, loss of family relations, humiliation, embarrassment, and emotional distress, all to the detriment of their martial relationship.

523) Before suffering these wrongful and negligent acts, Weinacker was able to and did perform all duties of a wife, including assisting in maintaining the home, and providing love, companionship, affection, society, sexual relations, moral support and solace. As a direct and proximate result of the actions of the Defendants against Weinacker, Weinacker has been unable to perform the duties of a wife in that she no longer assists with house or yard work, has sexual intercourse, participates in family or social activities, and no longer enjoys life. Due to the nature and the severe physical and psychological strains they cause Weinacker, she is no longer to provide Charles Weinacker with love, companionship, affection, society, moral support and solace.

524) That all the aforesaid injuries and damages were caused solely and proximately by the negligence of the Defendants.

525) The Defendants, each of them, acted with conduct to Charles Weinacker which was callously indifferent and so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

526) As a result of such conduct, Weinacker is entitled to recover of Defendants, jointly and severally, compensatory damages, general damages, exemplary damages, and punitive damages as set for herein below.

527) Charles Weinacker demands judgment against the Defendants, jointly and severally, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus costs, prejudgment interest, post judgment interest, and any other costs this Honorable Court deems appropriate.

## PRAYER FOR RELIEF REQUESTED

WHEREFORE, Weinacker prays that this Honorable Court enter judgment for Weinacker and against each of the Defendants and grant:

(A) Compensatory and consequential damages, including economic losses, loss of Constitutional rights, damages for emotional distress, damages for mental distress, humiliation, shame, embarrassment, post-traumatic stress, loss of enjoyment of life, harm to my confidence, my pride, my reputation and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(B) Special/actual damages in amounts to be finally ascertained and determined at trial;

(C) Punitive damages on all federal claims allowed by law against individual Defendants and in an amount to be determined at trial;

(D) Punitive/exemplary damages against Defendants in whatever amount, exclusive of costs and interest, that Weinacker is found to be entitled;

(E) Attorneys' fees and the costs associated with this actions under 42 U.S.C. § 1988, on all claims allowed by law;

(F) An award of interest, costs, and reasonable attorney's fees.

(G) Pre-and post-judgment interest at the lawful rate; and,

(H) Any further relief including declaratory or injunctive relief that this Honorable Court deems just and proper, and any other appropriate relief at law and equity.

**WEINACKER REQUESTS A TRIAL BY JURY.**

Respectfully submitted this 20th day of May, 2015,

*[signature: Teresa Y. Weinacker]*

Teresa Y. Weinacker, *Pro Se*
21520 County Road 68 N
Robertsdale, AL 36567
Cell: (251) 752-9395
Cell: (251) 751-9447
Email: teresa.weinacker@gmail.com

### CERTIFICATE OF SERVICE

I, Teresa Y. Weinacker, do hereby certify that a copy of the foregoing Complaint for Violations of Constitutional Rights, Conspiracy and Obstruction was forwarded via officers of the court, this 20th day of May 2015.

Charles Baer
Offices of the United States Attorneys
Southern District Of Alabama
63 South Royal Street, Suite 600
Mobile, AL 36602182

Henry A. Callaway
U.S. Bankruptcy Court
Southern District of Alabama
201 St. Louis Street
Mobile, AL 36602

Donald A. Friedlander
Friedlander Law Firm
56 St. Joseph Street, Suite 408
Mobile, AL 36602

Irvin Grodsky
Irvin Grodsky PC
454 Dauphin Street
Mobile, AL 36602

Charles Hendricks
c/o Karen Roberts
Wal-Mart Stores, Inc.
702 S.W. 8th Street
Bentonville, AR 72716-8611

Travis M. Bedsole, Jr.
Bankruptcy Administrator
U.S. Bankruptcy Court
Southern District of Alabama
St. Francis Street, Suite 100
Mobile, AL 36602

Kristi K. DuBose
U.S. District Court
Southern District of Alabama
113 St. Joseph Street
Mobile, AL 36602

Jonathan B. Friedlander
Friedlander Law Firm
56 St. Joseph Street, Suite 408
Mobile, AL 36602

Callie V. S. Granade
U.S. District Court
Southern District of Alabama
113 St. Joseph Street
Mobile, AL 36602

Katherine P. Nelson
U.S. District Court
Southern District of Alabama
113 St. Joseph Street
Mobile, AL 36602

William S. Shulman
U.S. Bankruptcy Court
Southern District of Alabama
201 St. Louis Street
Mobile, AL 36602

Lisa M. Reiter
Federal Bureau of Investigation
200 N Royal Street
Mobile, AL 36602

Amy White
Federal Bureau of Investigation
200 N Royal Street
Mobile, AL 36602

Loretta E. Lynch
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Eric H. Holder, Jr.
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Kenyen R. Brown
Offices of United States Attorneys
Southern District Of Alabama
63 South Royal Street, Suite 600
Mobile, AL 36602

John Cherry, Criminal Division
Offices of United States Attorneys
Southern District Of Alabama
63 South Royal Street, Suite 600
Mobile, AL 36602

James C. Duff
United States Courts – Judiciary
Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, D.C. 20544

James Comey
Federal Bureau Investigation
FBI Headquarters
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

James C. Duff
United States Courts – Administrative
Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, D.C. 20544

Donald A. Friedlander
Jonathan B. Friedlander
Friedlander Law Firm
56 St. Joseph Street, Suite 408
Mobile, AL 36602

Roger L. Bates
Hand Arendall LLC
11 N. Water Street Suite 30200
Mobile, AL 36602

James T. Allen
Hand Arendall LLC
11 N. Water Street Suite 30200
Mobile, AL 36602

Stephen G. Crawford – Registered Agent
Hand Arendall LLC
11 N. Water Street Suite 30200
Mobile, AL 36602

Irvin Grodsky – Registered Agent
Irvin Grodsky PC
454 Dauphin Street
Mobile, AL 36602

Doug McMillon
Wal-Mart Stores, Inc.
702 S.W. 8th Street
Bentonville, AR 72716-8611

Robert L. Stevenson - Registered Agent
National Loan Acquisitions Company
9126 S.W. Ridder Road
Wilsonville, OR 97070

Wal-Mart Stores, Inc. – Registered Agent
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Karen Roberts
Wal-Mart Stores, Inc.
702 S.W. 8th Street
Bentonville, AR 72716-8611

Robert L. Stevenson
National Loan Acquisitions Company
9126 S.W. Ridder Road
Wilsonville, OR 97070

Teresa Y. Weinacker

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
DIVISION I

NATIONAL LOAN ACQUISITION COMPANY                    NO. 09-01122

V.

TERESA WEINACKER

BEFORE THE HONORABLE WILLIAM SHULMAN

December 1, 2009

APPEARANCES

Attorney for Plaintiff - Henry Callaway

Attorney for Debtor  - Pro Se

On behalf of Wal-Mart Stores, Inc. - Charles Hendricks

Also appearing - Irvin Grodsky

*Duggan Transcription Service*
*(501) 753-3221*

**Exhibit "A"**

000126

```
1                    P R O C E E D I N G S

2              JUDGE SHULMAN:  All right, now we're

3         proceeding on number fifteen, National Loan

4         Acquisitions versus Weinacker.  I'd like the

5         witness sworn in, please.

6                    (Witness sworn)

7              MR. CALLAWAY:  Please state your --

8              MR. GRODSKY:  Judge, if I may just make a

9         statement that Ms. Weinacker was subpoenaed to

10        appear today and she is here pursuant to that

11        subpoena.  I do not represent her personally.

12        I have instructed her and she has advised me

13        that if certain questions are asked of a

14        certain nature she is going to refuse to

15        testify based on her Fifth Amendment rights.

16             JUDGE SHULMAN:  Well, let's at least let

17        her get her name out.  I don't think there's

18        any violation of constitutional rights with

19        that.

20   Thereupon,

21                    TERESA WEINACKER

22   having been called for examination, and after being first

23   duly sworn, was examined and testified as follows:

24                    DIRECT EXAMINATION

25   BY MR. CALLAWAY:
```

*Duggan Transcription Service*
*(501) 753-3221*

**Exhibit "B"**

000127

1    filed.  I don't have any problem with Two,

2    Three, Four, Five, Six, Eight.  Then I need a -

3    - I have not looked through my Seven and Nine,

4    Seven, Nine and Ten.  Your Honor, --

5          JUDGE SHULMAN:  One, Two, Three, Four,

6    Five, Six --

7          MR. GRODSKY:  And Eight.  I'm looking --

8    Your Honor, I'm looking --

9          JUDGE SHULMAN:  -- and Eight are in

10   evidence.  Seven, Nine and Ten --

11         MR. GRODSKY:  We'll address Seven, Nine

12   and Ten when we get to them.

13         JUDGE SHULMAN:  -- Seven, Nine and Ten

14   will remain to be proven up.

15         MR. GRODSKY:  Judge, I don't think that

16   we're going to have an objection to Nine.  I

17   just didn't have an opportunity to look at it

18   and I don't that Ms. Weinacker has had an

19   opportunity to look at that, so --

20         JUDGE SHULMAN:  All right.

21         MR. GRODSKY:  I don't think we're -- if I

22   may just show that to her real quickly.

23         MR. CALLAWAY:  She's got a booklet up

24   there.

25         JUDGE SHULMAN:  She has her own book.

**Exhibit "C"**

1           to Xena.

2                   MR. CALLAWAY:  So all of the exhibits are

3           in except Number Seven and Ten?

4                   JUDGE SHULMAN:  Seven and Ten, everything

5           else is in.

6    MR. CALLAWAY: (Continuing)

7    Q    Ms. Weinacker, before the bankruptcy Pet Friendly's

8    regular corporate account was at Bank Trust; is that

9    correct?

10   A    Correct.

11   Q    Let me ask you to turn to Exhibit Four, which were

12   admitted into evidence.  Looking at pages one, and two,

13   and three of that exhibit I see a lot of notations that

14   say "trade payment Wal-Mart Stores."  Do you see those?

15   A    Yeah.

16   Q    And those are electronic funds transfers from Wal-

17   Mart into the Pet Friendly account at Bank Trust; is that

18   correct?

19   A    This is dated prior to the bankruptcy, I'm not

20   answering it.

21   Q    I'm sorry?

22   A    It's dated prior to the bankruptcy, and I refuse to

23   answer the question.

24                   JUDGE SHULMAN:  Okay.  Let me just -- just

25           for the record I'm going to advise you that you

*Duggan Transcription Service*
*(501) 753-3221*

**Exhibit "D"**

1        -- under the Fifth Amendment of the

2        Constitution you do not have to answer any

3        questions that may incriminate you.  That's the

4        amendment that keeps people from incriminating

5        themselves.  So you do not have a lawyer here.

6    A    Correct.

7              JUDGE SHULMAN:  So it's up to you to state

8        whether or not you will refuse or answer a

9        question.

10   A    I'm not answering any question dated prior to the

11   bankruptcy until I talk to an attorney, period.

12   MR. CALLAWAY: (Continuing)

13   Q    Are you refusing to answer on the basis that it may

14   tend to incriminate you, on the basis of the Fifth

15   Amendment?

16   A    I stated that I will not answer it until I talk to

17   an attorney.  Anything dated prior to the bankruptcy.

18   Can't make it any clearer than what I just said.

19             JUDGE SHULMAN:  Well, you can make it

20        clearer.  Are you claiming your Fifth Amendment

21        rights?

22   A    If that's what I have to do, yes.

23   MR. CALLAWAY: (Continuing)

24   Q    Ms. Weinacker, let me ask you to turn to the fourth

25   page of Exhibit Four.  I see a lot of notations about

*Duggan Transcription Service*
*(501) 753-3221*

**Exhibit "E"**

1     transfer to Smart BS, or SMARTBS, what are those?

2     A    What is the date?

3     Q    There are transfers dated 9-4, 9-8, 9-9, 9-10 --

4     A    Is that dated before October the 15th?

5     Q    Ma'am, I'm asking the questions here.

6     A    Well, I just told you I'm not answering anything

7     dated before October the 15th, until I talk to my own

8     personal attorney.

9               JUDGE SHULMAN:  You can shorten your

10               response by just saying, I take the Fifth.  Go

11               ahead.

12    MR. CALLAWAY:  (Continuing)

13     Q    Ms. Weinacker, if you'll go to page six of that

14     account statement I see a transfer dated 9-30 to SMARTBS

15     in the amount of $8,000.  What was that for?

16     A    I take the Fifth.

17     Q    If you turn to page eight of Exhibit Four -- are you

18     going to -- are you to refuse to answer any questions

19     regarding any of these checks written on the Pet Friendly

20     account which took place prior to the bankruptcy?

21     A    Correct.

22     Q    All right.  That will shorten things up.  Let me you

23     ask about Exhibit Number Five.  Please turn to Exhibit

24     Five.

25               JUDGE SHULMAN:  While we're waiting is

**Exhibit "F"**

1    is -- we're now into the post-petition period, after the

2    bankruptcy.  This statement -- this statement covers

3    October 1 through October 31, 2009, ma'am.  Is this page

4    three of Exhibit Seven, page three and subsequent pages,

5    are these true and correct copies of statements of

6    account for the Teresa Weinacker, d/b/a Pet Friendly

7    account at Hancock Bank.

8    Q    I don't know I haven't seen them.  This is the first

9    time I have seen them.

10             JUDGE SHULMAN:  You have the right to take

11             the Fifth Amendment, against self

12             incrimination.

13   A    Well, I take the Fifth.

14   Q    Please look at -- look in the middle of the page at

15   -- under deposits and other credits and tell me if I'm

16   reading this correctly.  On October 16, there was a

17   deposit of $48,551.54 as a trade payment from Wal-Mart

18   Stores; is that correct?

19   A    I take the Fifth.

20   Q    And you filed -- Pet Friendly filed bankruptcy on

21   October 15th; is that correct?

22   A    I still take the Fifth.

23   Q    So this payment came in the day after the

24   bankruptcy; is that right?

25   A    I take the Fifth.

**Exhibit "G"**

1  taking the Fifth?

2  A    Correct, until I seek counsel.

3  Q    There's another check made payable to cash for

4  $1,280, and signed by you and the notation says "Hangar."

5  What was that for?

6  A    I take the Fifth.

7  Q    Is that for an airplane hangar for your husband's

8  airplane?

9  A    I'm taking the Fifth.

10  Q    There's a check number 1004, the next one down dated

11  October 23, 2009, in the amount of $2,000, and the

12  notation says "payroll."   What was that for?

13  A    I take the Fifth.

14  Q    The next check, 1005, is dated 10-25 to CVS Pharmacy

15  for $372.07.

16  A    Still the Fifth.

17  Q    Was that on behalf of the Debtor?

18  A    Fifth.

19  Q    Let's turn two pages over.  Looking at the checks at

20  the top left.  On October 16, 2006 (sic) the same date

21  that the money was deposited from Wal-Mart you wrote,

22  there was a check, a cashier's check written to Teresa

23  Weinacker for $22,000; is that correct?

24  A    The Fifth.

25  Q    Moving down on the left to the middle check on the

**Exhibit "H"**

1        JUDGE SHULMAN:  Admitted.

2        MR. CALLAWAY:  Your Honor, I don't have an

3    affidavit on Number Ten, but I move for the

4    admission of the Bank Trust records, which were

5    also received in response to a subpoena

6    received from this court.

7        JUDGE SHULMAN:  Admitted.

8        MR. CALLAWAY:  Nothing further, Your

9    Honor.

10        JUDGE SHULMAN:  Any other questions of

11    this witness.

12        MR. HENDRICKS:  I'm going to ask a couple

13    of questions.

14        JUDGE SHULMAN:  You need to -- yeah, go

15    ahead.

16                CROSS EXAMINATION

17    BY MR. HENDRICKS:

18    Q    Ms. Weinacker, my name is Charles Hendricks and I

19    represent Wal-Mart Stores, Inc.  It appears that you

20    filed the Chapter 11 sometime during the day of October

21    15th, 2009; is that correct?

22    A    Yes, sir.

23    Q    After you filed the bankruptcy did you send a fax to

24    Wal-Mart asking for the release of funds to Pet Friendly?

25        JUDGE SHULMAN:  You have the right to take

**Exhibit "I"**

000148

1              the Fifth Amendment.

2    A   I take the Fifth.  Thank you.

3    MR. HENDRICKS:  (Continuing)

4    Q   Did you receive funds from Wal-Mart after you sent a

5    request on October 15th, 2009?

6    A   I take the Fifth.

7    Q   Ms. Weinacker, why did you request a bank account

8    change from Wal-Mart at the end of September of 2009?

9    A   I take the Fifth.

10           MR. HENDRICKS:  No further questions.

11           JUDGE SHULMAN:  Any other questions of

12           this witness?

13           MR. CALLAWAY:  I have one or two other

14           questions.  I need Ms. Jimison's help me play

15           an excerpt from, a couple of minutes from the

16           341 Meeting.  I've got it in here.  I need to

17           go to minute 17.

18           MS. JIMISON:  I can do it.  All of the

19           minutes or is it just that one?

20           MR. CALLAWAY:  The whole thing is on there

21           but I need to move it up to 17 minutes, if I

22           can.

23                REDIRECT EXAMINATION

24    BY MR. CALLAWAY:

25    Q   Ms. Weinacker, you were the representative of the

1   that now.

2   JUDGE SHULMAN:  Well, she's already take

3   the Fifth.  What's going to happen is, I'm

4   going to order it, then they're going to file a

5   motion and then she's going to come back in

6   court with counsel and take the Fifth as to why

7   she's refusing to comply with the injunction.

8   MR. CALLAWAY:  Your Honor, I would suggest

9   that the injunction --

10  JUDGE SHULMAN:  And if she has money and

11  wants to give the money back, you know, the

12  funds that, you know, they've alleged that

13  she's converted, then that should be in the

14  order, too.

15  MR. GRODSKY:  Judge, but what I would be

16  saying to Your Honor is that a ruling, an entry

17  of an order that says that she has to provide

18  an accounting for and return funds that she has

19  converted is a conclusion that is not merited

20  by the evidence at this point.

21  JUDGE SHULMAN:  Well, the Court can draw -

22  -

23  MR. GRODSKY:  Beg your pardon?

24  JUDGE SHULMAN:  The Court can draw, you

25  know, conclusions from somebody taking the

*Duggan Transcription Service*
*(501) 753-3221*

**Exhibit "K"**

1    Fifth as to what the evidence shows.  I have
2    the documentary evidence before me.  And the
3    fact that she is taking the Fifth, I mean the
4    Court can still draw some conclusions from the
5    other evidence and can draw an inference, you
6    know, a negative inference from her refusing to
7    testify.  And that's what I'm doing.  I think
8    that's what the rules say with respect to
9    somebody that takes the Fifth, that the Court
10   can draw a negative inference from that.  And,
11   plus, I've got all of the documentary evidence
12   which is in evidence.

13        MR. GRODSKY:  Judge, all that you have is
14   evidence that there was monies that were in the
15   account.  First, much of that is in an account
16   that was established before the filing of the
17   Chapter 11.  If fact the disposition of that
18   monies, the Court has no evidence of what
19   exactly those monies were used for.  And that
20   does not mean that it was used by her, and it
21   does not establish a conversion by her.

22        JUDGE SHULMAN:  No, but I can draw an
23   inference from the fact that she took a $23,000
24   check and made payable to herself and cashed
25   it.

**Exhibit "L"**

1         MR. GRODSKY: Well, Judge, the other

2    inference of that is that that $23,000 was used

3    to pay expenses of the company. You haven't

4    heard that testimony. And there's a trustee

5    being appointed, and the trustee is going to be

6    able to get to the issue. There's no --

7    there's -- at this point the Court has not had

8    the evidence to establish who received that

9    money.

10         There was a check, but there's no

11    indication that that money was her money, or

12    that she --

13         JUDGE SHULMAN: Well then I'll make this a

14    preliminary injunction, and we'll hold the

15    final hearing later.

16         MR. GRODSKY: That would be fine, but I

17    would just ask the Court --

18         JUDGE SHULMAN: And that way -- that way -

19    -

20         MR. GRODSKY: -- not to get her an order

21    that would make a finding that there's been a

22    conversion by her of those monies.

23         JUDGE SHULMAN: I'm not making a finding,

24    I'm just saying that she is being required to

25    return the money and to make an accounting.

*Duggan Transcription Service*
*(501) 753-3221*

**Exhibit "M"**

# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| | )    Case No. 1:12-cr-00168-CG |
| | ) |
| Teresa Weinacker | ) |
| *Defendant* | ) |

## SUMMONS IN A CRIMINAL CASE

**YOU ARE SUMMONED** to appear before the United States district court at the time, date, and place set forth below to answer to one or more offenses or violations based on the following document filed with the court:

☑ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of Court

| | |
|---|---|
| Place: U.S. DISTRICT COURT 113 ST. JOSEPH ST. MOBILE, AL | Courtroom No.: 3B |
| | Date and Time: 09/05/2012 2:00 pm |

This offense is briefly described as follows:

BANKRUPTCY FRAUD
(1-2)
FALSIFICATION OF RECORDS
(3)
WIRE FRAUD

**As soon as you employ a lawyer to represent you in this case, that lawyer should give notice of his/her appearance by calling the office of the Clerk of court, (251)-690-2371.**

Date: **August 21, 2012**

**CHARLES R. DIARD, JR.**
*Issuing officer's signature*

*Maria Payne*
*Printed name and title*

---

I declare under penalty of perjury that I have:

☐ Executed and returned this summons     ☐ Returned this summons unexecuted

Date:

# Exhibit "N"

*Server's signature*

**You are required to contact the U.S. Probation Office at 251-441-6800 within 24 hours to schedule a pretrial services interview.**

*Printed name and title*

Wilson Castle 251-441-6048

Charles Baer Asst U.S Atty
251-415-7161
251-441-5845



**U.S. DEPARTMENT OF JUSTICE**
FEDERAL BUREAU OF INVESTIGATION

**Amy White**          cell
Special Agent          895-3607
Mobile Field Office

200 North Royal Street
Mobile, AL 36602

Telephone:   (251) 438-3674
Fax:         (251) 219-3517
E-mail: amy.white@ic.fbi.gov



**U.S. DEPARTMENT OF JUSTICE**
FEDERAL BUREAU OF INVESTIGATION

**Lisa M. Reiter**
Special Agent

200 North Royal Street
Mobile, AL 36602

Telephone:   (251) 438-3674
Fax:         (251) 219-3517
Direct:      (251) 415-3215
E-mail: lisa_reiter@ic.fbi.gov

# Exhibit "O"

brother-in-law, Burton Clark, and that Bernie Hegman (ph) was also a realtor for the building. Charles and Teresa originally leased the building from David Oreck, and later bought the building from Oreck, who financed the transaction.

When they were evicted out of the building, they were only given four days to get all of their equipment out. Charles stated that everything in the building was paid for, all of the equipment and machines, but that they were property of the bankruptcy estate. After they were evicted, they were not able to access the building for another year, when Burton Clark called them and asked them to take everything out because he could not sell the building with the equipment in there.

Teresa and Charles advised that sometime around 2000, they had an employee named Steve Sisk who stole more than $1.5 million from Pet Friendly through forged checks. They reported Sisk to Jimmy Hasser, a former District Attorney, but nothing was ever done about the situation. They also said that it was reported to the Mobile FBI office, but that nothing was done.

Teresa also noted that her former comptroller, Karen Maddox, got the company in trouble with taxes. Teresa advised that Maddox was withholding taxes, but used the money to pay other vendors, causing the company to owe $80,000 in taxes.

Teresa and Charles advised that the business was "hated" by the Mardi Gras Association. Apparently a situation arose with people with the Mardi Gras Association parking in their employee's spots, which lead to the business placing a fence around their building. They speculated that some individuals in the Mardi Gras association may have wanted to see them out of business because of that.

Charles advised that Jim Currington and Greg Friedlander provided them with legal counsel over the years, and that Currington is their current attorney. Teresa noted that when she was a paralegal, she worked in the same building as Hand Arendall. She advised that she did not trust the attorneys who worked there, and that if someone was represented by Hand Arendall, that the other party would lose.

At the conclusion of the interview, Teresa was advised that she had been indicted by the Federal Grand Jury, and served with a summons for her appearance on September 5, 2012 at 2:00pm.

Teresa provided the interviewing agents with the affidavit that she prepared, but was never filed, along with a two-page spreadsheet detailing the activity conducted with the Hancock Bank account. These documents will

**Exhibit "P"**

000399

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA

       CASE NO. CR12-00168

v.

       COURTROOM 2B

TERESA WEINACKER,

       MOBILE, ALABAMA

     Defendant.

       MONDAY, FEBRUARY 25, 2013

* * * * * * * * * * * * * * *

SENTENCING – PART TWO
BEFORE THE HONORABLE CALLIE V. S. GRANADE,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
    CHARLES BAER
    Assistant United States Attorney
    United States Attorney's Office
    63 S. Royal Street, Suite 600
    Mobile, AL  36602
    (251) 441-5845

FOR THE DEFENDANT:
    DONALD A. FRIEDLANDER
    JONATHAN BLAKE FRIEDLANDER
    P.O. Box 2554
    Mobile, AL  36652
    (251) 432-5531

THE CLERK:  MARY ANN BOYLES
COURT REPORTER:  ROY ISBELL, CCR, RDR, CRR

     Proceedings recorded by OFFICIAL COURT REPORTER
    Qualified pursuant to 28 U.S.C. 753(a) & Guide to
Judiciary Policies and Procedures Vol. VI, Chapter III, D.2.
     Transcript produced by computerized stenotype.

**Exhibit "Q"**

1  A   That was only after I had brought that subject up to you on

2  the second time you had come into my office.

3  Q   And then I explained to you that that was my office that

4  had done that?

5  A   Right.  When I said to you -- when I said to you,

6  Mr. Friedlander:  "why did you bring in a cover sheet to try to

7  indicate that these four pages were sent at the same time?"

8  Q   No, sir.  That wasn't the conversation at all, Mr. Grodsky,

9  was it?

10  A   It was.

11  Q   Let's move on.  When you've seen -- by the way, you've met

12  with the U.S. Attorney, I guess, before today to discuss this?

13  A   Say it one more time?

14  Q   Have you met with Mr. Baer before today to discuss this?

15  A   Yes.

16  Q   How many times?

17  A   Once.

18  Q   Okay.  Now, you saw the documents that I attached to my --

19  did you read the letter that I had written to the Court?

20  A   I do not think I have read the letter.  I do not recall

21  seeing the letter.

22  Q   Okay.  Did you look at the Gmail that is before you

23  there --

24  A   Yes.

25  Q   -- that I believe that I attached to my letter?  Did you

**Exhibit "R"**

1  look at that?

2  A    Yes.

3  Q    And it discusses back in October 15th -- by the way, when

4  was this, when were the schedules filed?

5  A    Not until November 10th, I think.

6  Q    Right.  And what do you -- what was the effective date of

7  the filing of the bankruptcy in October --

8  A    October 15, I believe it was.

9  Q    October 15.  And October 15 you had discussed the matter

10  with Ms. Weinacker that she had monies at Wal-Mart, accounts

11  receivable from Wal-Mart, did you not?

12  A    I can't say that I specifically discussed it with her on

13  October 15.  But things are run together over that period of

14  time.  I'm certain that I did speak to her about monies owed by

15  Wal-Mart.

16  Q    And did you know that she had actual monies that were owed

17  to her?

18  A    Not to -- to the corporation, yes.  Yes.

19  Q    And you knew that before the filing of the bankruptcy, did

20  you not?

21  A    Yes.

22  Q    Okay.  Because the fax asked:  "Does it mean they will get

23  our Wal-Mart money?"  So you knew that there were monies there,

24  did you not?

25  A    (Pause.)  Well --

**Exhibit "S"**

1   MR. FRIEDLANDER:

2   Q   Mr. Grodsky, when you file the bankruptcy, you only file

3   the bare bones, do you not?

4   A   That is correct.

5   Q   You don't file the schedules?

6   A   That is correct.

7   Q   Okay. The schedules were filed when please, sir?

8   A   Well, I think they were filed on November 10, according to

9   what I saw in my file.

10   Q   And had Mr. Callaway filed his complaint in bankruptcy

11   court prior to that time?

12   A   No.

13   Q   Okay. Did Mrs. Weinacker come back by the office to visit

14   with you or Lori to get the information to put in the

15   schedules?

16   A   Well, Ms. Weinacker provided us with a great deal of

17   information to put into the schedules, yes. I don't -- I don't

18   recall specifically meeting with her and I don't know if she

19   met with Lori. But she provided information.

20   Q   Her signature was placed on the papers for the original

21   filing of the bankruptcy? Or was that just an electronic

22   signature?

23   A   No, I think she signed the papers. For filing on October

24   15th?

25   Q   Right.

**Exhibit "T"**

1    A    No. I'm not absolutely sure.  But I would -- my belief is

2    that if there was something about that account provided at that

3    time --

4              MR. FRIEDLANDER:  Judge, I would move to strike his

5    answer.  He said he's not sure.

6              THE COURT:  Well, I want to hear the rest of his

7    answer.  So go ahead, Mr. Grodsky.

8              THE WITNESS:  Well, if I had been alerted to the

9    existence of the account before Mr. Callaway's complaint, I

10   feel certain that I would have recommended doing something to

11   amend the schedules or to do something to bring it to the

12   attention of all the parties.

13        (A discussion was held off the record between the defendant

14   and her attorney.)

15             MR. FRIEDLANDER:  Nothing further, Judge.

16             THE COURT:  Mr. Baer?

17             MR. BAER:  Yes, Your Honor.

18        (A discussion was held off the record between counsel.)

19             MR. BAER:  If I may approach, Your Honor?

20             THE COURT:  All right.

21                     REDIRECT EXAMINATION

22   BY MR. BAER:

23   Q    I believe you testified that you could not remember for

24   sure if Ms. Weinacker had signed the bankruptcy documents?

25   A    The amendment that added all this, the information.

**Exhibit "U"**

1    THE COURT:  All right.

2    MR. BAER:  The United States calls Lisa Reiter.

3    THE CLERK:  Ms. Reiter, if you'll step forward toward

4    the witness stand, I'll swear you in.  Let me get you to raise

5    your right hand.

6    (The witness Lisa Reiter was sworn.)

7    THE WITNESS:  I do.

8    THE CLERK:  Thank you, ma'am.  Please be seated.

9    MR. BAER:  Your Honor, Mr. Grodsky would like to be

10   excused.

11   THE COURT:  Well, actually, I have a question that

12   maybe Mr. Grodsky can answer.  But I don't want to ask him

13   without asking counsel whether or not --

14   MR. BAER:  There's no need.

15   MR. GRODSKY:  Judge, I'll just stay.

16   THE COURT:  Okay.

17   MR. BAER:  I don't think there's any need for us to

18   approach, if the Court wants to ask us.

19   THE COURT:  Well, Mr. Friedlander may object.  But

20   there was some indication there was a preliminary injunction

21   and then a permanent injunction entered in regards to

22   Mr. Callaway's complaint in this case, in the bankruptcy case,

23   and that part of the injunction required Ms. Weinacker to give

24   an accounting of what happened with all the funds that were

25   deposited into that Hancock Bank account.  And there's been a

# Exhibit "V"

1  suggestion that she never did that, as required by the Court's

2  order.  And I wanted to find out whether or not that was

3  correct.

4           MR. GRODSKY:  May I answer that?

5           THE COURT:  Well, I don't know.  Do you have any

6  objection to the Court finding out that information,

7  Mr. Friedlander?

8           MR. FRIEDLANDER:  No, ma'am.

9           THE COURT:  All right.  Go ahead, Mr. Grodsky.

10          MR. GRODSKY:  Judge?  Your Honor, Ms. Weinacker did

11  give me a listing of money -- of how the monies were expended.

12  There is a listing that was provided to the bankruptcy trustee

13  that was appointed in the chapter seven, but she gave it to me

14  as we were walking over there to that hearing on November --

15  December 1st.  And the -- well, I'm not answering your

16  question.

17          MR. CALLAWAY:  Your Honor, it's never been provided to

18  the creditor or the court.  We never got anything.

19          MR. GRODSKY:  It was provided to the trustee to the

20  chapter seven.

21          THE COURT:  The chapter seven wasn't --

22          MR. CALLAWAY:  There wasn't a chapter seven trustee at

23  that time.

24          MR. GRODSKY:  No, no.  I'm saying it was subsequently

25  provided to the chapter seven trustee.

**Exhibit "W"**

1          THE COURT:  Okay.  But it was not provided to the

2    court prior to the time she filed chapter seven; is that

3    correct?

4          MR. CALLAWAY:  It's never been provided to the court,

5    Your Honor.  There's nothing ever been filed with the

6    court.  There's nothing ever been provided to my client,

7    National Loan Acquisitions.

8          THE COURT:  But, Mr. Grodsky, you say that that

9    information was provided to you; is that correct?

10          MR. GRODSKY:  It was provided to me.  If I may

11    explain?

12          THE COURT:  Sure.

13          MR. GRODSKY:  Without going into the details of all

14    the transactions, I'm trying to recall them all, but shortly

15    after that hearing we filed a motion to dismiss the chapter 11

16    or convert it and the judge converted it within a short period

17    of time.  I would say within 30 days after that hearing.

18    That's why I estimated January of 2009.

19          In the meantime the request had been made that I

20    prepare schedules, which would have reflected all of that, and

21    I attempted to prepare those schedules but was unable to

22    prepare the schedules in a way that I felt was proper and

23    therefore I filed a motion to withdraw and the court allowed me

24    to withdraw at some point in time in 2010.

25          The chapter seven trustee, I believe, when examining

**Exhibit "X"**

1  A   Yes, I did.

2  Q   During that interview did you discuss generally the Pet

3  Friendly-Xena Express bankruptcy and the Hancock Bank

4  transactions?

5  A   Yes, we did.

6  Q   Okay.  What if anything did Ms. Weinacker say about

7  Mr. Grodsky being at fault for failing to disclose that

8  information to the Court?

9  A   She never said anything to me about him having knowledge or

10 involvement in that account.

11 Q   What did she say about how the funds in the Hancock Bank

12 account were used?

13 A   She told me that she -- she opened the account to try to

14 save her business and that she was using that money to pay

15 bills that she owed.

16 Q   Did she mention any particular type of bills or debts?

17 A   She just said bills to employees, as I recall.

18 Q   But she said employees?

19 A   Yes.

20 Q   Okay.  Did you subsequently investigate the allegation the

21 money was used to pay employees?

22 A   Yes, I did.  During our interview she provided me with an

23 affidavit that she had prepared and had filed along with a

24 spreadsheet of the expenses, basically what she did with the

25 monies.  What I did is I took that spreadsheet and compared it

**Exhibit "Y"**

1     the bank accounts we had previously received.  There were --

2     there were several charges for things like gas and, you know,

3     there were a lot of gas purchases.  I was able to match those

4     purchases up to money that had already been spent and taken out

5     of the corporate bank trust account.

6          I then went through the list of names of who I

7     believed to be employees.  I did not recognize any of them

8     because we had attempted to interview employees prior.  But I

9     went ahead and we served the subpoena on the Department of

10    Industrial Relations for the second and third quarters of 2009

11    to determine if any of those individuals were -- had reported

12    wages during that time.  None of them did.  None of their

13    names -- I did not see any of their names in prior payroll

14    checks that had issued by Pet Friendly or Payroll Express.

15         I talked to two former employees, running that list of

16    names by those two employees.  They basically did not recognize

17    any of them as employees at that time.  There was one

18    individual who recognized some of the names but said they had

19    been -- might have been employees several years prior.

20         And then I also went through, basically trying to look

21    through our data bases, to match up names and whatever address

22    information was given with these individuals through our

23    databases to try to determine if I could identify them and was

24    mostly unsuccessful with that.

25    Q    Just to summarize, when you attempted to match the names on

**Exhibit "Z"**

1    A    No, she did not tell me that.

2    Q    Did she say anything about that, ma'am?

3    A    Other than saying that most of -- a lot of them did not

4    speak English very well, no, she did not tell me they were

5    undocumented workers.

6    Q    And she told you that she paid these people in cash?

7    A    She did, yes.  I mean, I presume, through the spreadsheet,

8    yes, that's what she did with the money.  It's what she claimed

9    she did with the money.

10    Q    So you went into some database somewhere to determine if

11    you could find these people, the names she gave you?

12    A    That's correct.  We wanted to verify that she did pay these

13    individuals.

14    Q    Were you able to document any of them?

15    A    No.

16    Q    Okay.  How many different people's names did she give you?

17    A    I think there were about 12 to 15 names.

18    Q    In the systems that you went to to find the names of these

19    people, do they list the names of illegals?

20    A    I don't know.  I mean, I searched -- if they don't have a

21    driver's license or any sort of criminal record, they would not

22    have shown up in our law enforcement databases.  As far as

23    clear, you know, if they ever had any sort of credit, they may

24    have shown up.  If they didn't have any sort of credit or any

25    history --

**Exhibit "AA"**

1 counsel, Your Honor?

2        THE COURT:  Yes.

3        All right.  I have heard the evidence and I don't find

4 that there's any evidence that she opened that bank account on

5 anybody's suggestion but her own and that she did it to conceal

6 the monies, which is essentially what she pled guilty to.

7        But I don't think that -- the fact that it was

8 represented to the Court that she did it on the advice or with

9 the knowledge of her attorney, I think, is an indication that

10 she has not fully accepted responsibility.  And I find that the

11 emails, the one email that she authored and sent after the

12 fact, also indicates that she didn't accept responsibility.

13 And the fact that she stated in the interview to the probation

14 office that if she had paid more attention to detail, this

15 never would have happened -- I don't know.  That is not, to me,

16 an acceptance of responsibility.  Because it's clearly a

17 purposeful thing that she did.

18        Now, having stated that, I find that the total offense

19 level in this case is 14 with a criminal history category of

20 I.  Are there further objections to the Court's findings?

21        MR. FRIEDLANDER:  No, ma'am.

22        THE COURT:  I will hear from you on behalf of your

23 client.

24        MR. FRIEDLANDER:  Judge, I think that there were some

25 mistakes made here.  The question that she pled guilty to, that

**Exhibit "BB"**

1  low end of the guidelines.  I checked the plea agreement, and

2  the plea agreement says nothing about acceptance -- whether or

3  not we agreed there was acceptance of responsibility.

4            We agree with the Court's finding that there was

5  not.

6            I do note that a representative of the victim is in

7  court.  He has previously filed something.  I don't know if the

8  Court wants to hear from him further.  But I should bring it to

9  the Court's attention.

10            THE COURT:  The letter that he filed, he clearly

11  stated that it was his own personal capacity and it was not on

12  behalf of the victim.  But if there's something that the victim

13  wants to present through counsel, I will hear it.

14            MR. CALLAWAY:  Your Honor, I sent you a copy of a

15  letter I received after talking with my client.  After it was

16  made, they have asked me and authorized me to speak on their

17  behalf today.  And I sent you a copy of the letter I sent to

18  the other attorneys, confirming that with the client.

19            THE COURT:  All right.  I'll hear whatever you have to

20  say on behalf of --

21            MR. FRIEDLANDER:  Judge, if I could, please, I would

22  object to that.  I think it's -- there were originally all

23  through this whole process, before I got involved in it, there

24  were allegations of conflicts of interest between

25  Mr. Callaway's law firm, one of Neal Johnston, who was a member

**Exhibit "CC"**

1 of the firm of Hand, Arendall.

2 THE COURT: Well, he's not representing her on this --

3 MR. FRIEDLANDER: But I understand, Judge.

4 THE COURT: He's representing the victim and the

5 victim has a statutory right to say something.

6 MR. FRIEDLANDER: I submit to you, Judge, that he's

7 speaking on his own behalf. How can he write the letter that

8 he initially did and then now he's going to speak on behalf of

9 the victim? I mean, that to me appears to be an obvious

10 conflict. Your Honor, if you want to hear it, of course,

11 that's fine.

12 THE COURT: Well, I want to hear what he has to say.

13 MR. FRIEDLANDER: Yes, ma'am.

14 THE COURT: Because he does in fact represent the

15 victim, there is no prohibition on people giving their personal

16 opinions. As a matter of fact, I receive letters all the time

17 from relatives and friends of people that I'm about to

18 sentence, giving their personal opinions. And I think that the

19 law does not prohibit even a lawyer representing a victim to

20 give his personal opinion. So I will hear whatever

21 Mr. Callaway -- I've heard from him in that letter as to what

22 his personal opinion is, but I think the victim has a right to

23 be represented and to allow him to speak. All right.

24 Mr. Callaway?

25 MR. CALLAWAY: Your Honor, my name is Henry Callaway.

**Exhibit "DD"**

1  I represented National Loan Acquisitions Company in the
2  underlying offense and was intimately involved in uncovering
3  the fraud.  And I'm also authorized by National Loan
4  Acquisitions Company to speak on its behalf here today.
5       When I wrote you a letter at the end of December, I
6  put in there I was doing it on my own behalf because I wanted
7  to try to shield my client in case there's some kind of blow
8  back.  I didn't want my client to get sued, you know, to make
9  the situation even worse.
10      National Loan Acquisitions held a note for $300,000
11 that was owed by Pet Friendly and guaranteed by the
12 Weinackers.  It was secured with a second mortgage on their
13 business property.  The mortgage was foreclosed upon, I sued on
14 behalf of the client in this court, and actually this same
15 Court entered a judgment for about $160,000 in May of 2009.
16      The Weinackers refused to leave the business premises.
17 We had to file suit in Baldwin County Circuit Court, finally
18 got a judgment for ejectment, and I had to physically go with a
19 Baldwin County Sheriff's deputy to their place of business and
20 they were ejected in early September of 2009.
21      We now know that right about that same time, within a
22 day or two after that, Mrs. Weinacker opened up the account at
23 Hancock Bank.  The company had left the premises.  They were
24 essentially out of business.  She opened up the account at
25 Hancock Bank in her own name.

**Exhibit "EE"**

1 and to provide an accounting.

2      Today is the first time I ever heard about any

3 accounting. Nothing was ever provided to the court or to the

4 creditor. We eventually got a final injunction to the same

5 effect.

6      From the creditor's point of view, and from my point

7 of view as a bankruptcy attorney of 20 years or so, you know,

8 bankruptcy is a tradeoff. You know, on one hand, the debtor

9 gets the      protection, they get the automatic stay, they get

10 the ability to maybe rework their debt, pay it over time,

11 change the terms. But from the creditor's point of view, the

12 debtor also has to operate under supervision of the bankruptcy

13 court. The debtor has to file schedules, they have to reveal

14 all their assets. They are not allowed to use assets that

15 belong to the creditors without permission of the court or

16 permission of the creditors. They have to set up a special

17 debtor-in-possession account that all the money that even says

18 "debtor-in-possession account" on it that all the money to the

19 debtor has to go into.

20      To add insult to jury in this case, Ms. Weinacker

21 emptied the debtor-in-possession account. She took the $23,000

22 out of the debtor-in-possession account and completely emptied

23 that in early November, which we found out after the fact.

24      I just had four -- but my point is the whole system

25 depends upon debtors being honest. The creditors and the court

1 and the bankruptcy administrator don't have the ability to go

2 around subpoenaing bank records for everybody and the whole

3 system depends on everybody being straight up and flying right

4 and following the rules and the system just collapses if you

5 can't trust that -- as might have occurred there, if I hadn't

6 started snooping around.

7       And I just had four quick points. One is that, as the

8 Court's pointed out, this is not a simple, a simple oversight

9 or an impulse move. It was planned out over a period of

10 several months, starting in early September, when the account's

11 opened. Late September she tells Wal-Mart to change the

12 accounts. In mid October they file and then immediately she

13 contacted Wal-Mart and says: "Pay the money into this Hancock

14 Bank account," which was -- which was done.

15       It required some planning. Until today I had never

16 heard any kind of confession or -- two, there was real

17 damage. I mean, my client lost out on that money. The $5,500

18 that was diverted to the account, we never got a dime on

19 that. $23,000 that disappeared from the debtor-in-possession

20 account, we'd have resolved and probably gotten a chunk, maybe

21 all of that. That, that money's gone. There's never been a

22 dime paid on it since that time.

23       The second mortgage that my client had got wiped out

24 when the first mortgage holder foreclosed upon the real

25 estate. So that's gone.

**Exhibit "GG"**

1　　　　And so that was truly a loss, just as if Ms. Weinacker

2　had gone into a bank with a note and said, you know: "Give me

3　all the money you've got in your -- got in your drawer."

4　　　　Third, I agree with the Court that I haven't seen any

5　real remorse or taking personal responsibility. We didn't see

6　any kind of official accounting in response to the bankruptcy

7　orders. No money's ever been paid back. Not a dime.

8　Ms. Weinacker's response all along has been to lash out at

9　Mr. Grodsky; at the bankruptcy court, Judge Shulman; Travis

10　Bedsole, the bankruptcy administrator; and me. I'm now accused

11　of having a personal vendetta against Mrs. Weinacker, which is

12　not true. I just happen to have been the lawyer on the watch

13　when my client's money was stolen. So I'm not happy about

14　it. I turned it over to the U.S. Attorney's Office, as I think

15　I should have. I'm following through with this to see that

16　something is done about it. I don't have any kind of personal

17　vendetta.

18　　　　It's ironic to me that I'm accused of having a

19　personal vendetta when threats and bad things are being said

20　about me all the time. I've done everything according to the

21　law and everything according to the proper procedure, and I'm

22　just reporting back. But the procedure failed here, the law

23　failed here, because somebody else did not, did not follow the

24　rules.

25　　　　And my final point is that -- I have no opinion on

**Exhibit "HH"**

I I

FILED IN OPEN COURT

JUL 2 6 2012

CHARLES R. DIARD, JR.
CLERK

CAB

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 12- 00168 - CG |
| | * | USAO NO.  10R00028 |
| v. | * | |
| | * | |
| TERESA WEINACKER | * | VIOLATIONS: |
| | * | 18 USC § 152 |
| | * | 18 USC § 1519 |
| | * | 18 USC § 1344 |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE

From on or about September 9, 2009 to on or about October 15, 2009, in the Southern

District of Alabama, Southern Division, and elsewhere, the defendant,

**TERESA WEINAKER**

personally and as president of Xena Express, Inc., doing business as Pet Friendly, in

contemplation of a case under Title 11, the Bankruptcy Code, by Xena Express, Inc., a

corporation, did knowingly and fraudulently, with the intent to defeat the provisions of Title 11,

transfer and conceal property of Xena Express, Inc, including funds due Xena Express, Inc. from

Wal-Mart Stores, Inc. in excess of $48,000

In violation of Title 18, United States Code, Section 152(7).

### COUNT TWO

From on or about October 15, 2009 and continuing to on or about April 30, 2010, in the

Southern District of Alabama, Southern Division, and elsewhere, the defendant,

**TERESA WEINAKER**

## Exhibit "II" - Page 1 of 4

did knowingly and fraudulently conceal from the creditors and others, in connection with the case In re Xena Express, Case No. 09-14817, a case under Chapters 11 and 7 of Title 11, United States Code, the Bankruptcy Code, property belonging to the estate of a debtor, Xena Express, Inc., including its interest in funds due from and paid by Wal-Mart Stores, Inc. in excess of $48,000.

In violation of Title 18, United States Code, Section 152(1).

## COUNT THREE

On or about November 10, 2009 in the Southern District of Alabama, Southern Division, the defendant,

## TERESA WEINAKER

with the intent to impede, obstruct, and influence the proper administration of a case filed under Title 11, of the United States Code, specifically, the case of In re Xena Express, Case No. 09-14817, a case under Chapters 11 and 7 of Title 11, United States Code, the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Alabama, did knowingly and fraudulently conceal, cover up, falsify and make a false entry in a document, as follows:

In answer to Question 10 of the Statement of Financial Affairs of Xena Express, Inc., which required Xena Express, Inc. to list all property transferred by Xena Express, Inc. within two years immediately preceding the commencement of the bankruptcy case of Xena Express, Inc., other than property transferred in the ordinary course of business, she answered, on behalf of Xena Express, Inc, "NONE. when she had transferred the right of Xena Express, Inc. to receive payments from Wal-Mart Stores, Inc.to a bank account at Hancock Bank in her name, doing business as Pet Friendly.

**Exhibit "II" - Page 2 of 4**

In violation of Title 18, United States Code, Section 1519.

## COUNT FOUR

On or about September, 2009, in the Southern District of Alabama, and elsewhere, the defendant,

## TERESA WEINACKER

did knowingly and willfully and with intent to deceive and for the purpose of fraudulently obtaining funds that belonged to the bankruptcy estate of Xena Express, Inc. did execute a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and premises to the United States, well knowing at the time that the pretenses, representations and premises were and would be false when made. **WEINACKER,** caused an electronic message, a facsimile messages, to be sent to Wal-Mart Stores, Inc., a use of wire communication in interstate commerce.  The message was sent from Baldwin County to Bentonville, Arkansas.

In furtherance of the above described scheme to defraud, in the Southern District of Alabama, and elsewhere, **WEINACKER,** for the purpose of executing the above described scheme and attempting to do so, knowingly caused to be transmitted by means wire communication in interstate commerce the facsimile message signals and sounds described below:

| Count | Date | Transaction |
|-------|------|-------------|
| 4 | 09/30/2009 | Facsimile from Teresa Weinacker to Wal-Mart Stores |

In violation of Title 18, United States Code, Section 1343.

3

**Exhibit "II" - Page 3 of 4**

A TRUE BILL

████████████████████

FOREMAN, UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA


KENYEN R. BROWN
UNITED STATES ATTORNEY

By:

*Charles Baer*

Charles A. Baer
Assistant U.S. Attorney

*John Cherry*

John G. Cherry
Chief, Criminal Division

JULY 2012

4

**Exhibit "II" - Page 4 of 4**

9. **Payments related to debt counseling or bankruptcy**

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

(PROVIDE NAME AND ADDRESS OF PAYEE, DATE OF PAYMENT, NAME OF PAYOR OF OTHER THAN DEBTOR, AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY)

Irvin Grodsky, Esquire, 454 Dauphin Street, PO Box 3123, Mobile, Alabama 36532

---

10. **Other transfers**

a.  List all other property, other than property transferred in the ordinary course or business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under Chapter 12 of Chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

(PROVIDE NAME AND ADDRESS OF TRANSFEREE, RELATIONSHOIP TO DEBTOR, DATE, DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED)

## NONE

---

b.  List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

(PROVIDE NAME OF TRUST OR OTHER DEVISE, DATE(S) OF TRANSFER(S), AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR INTEREST IN PROPERTY)

## NONE

Wachovia Bank, National Association NC0002, PO Box 563966, Corporate Checking Account, Account Number 2000030491137, Final Balance $0, Closed 2009.

Wachovia Bank, National Association NC8502, PO Box 563966, Charlotte, NC 28256-3966, Payroll Checking Account, Account Number 2000030491140, Final Balance $0, Closed 2009.

---

12. **Safe deposit boxes**

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under Chapter 12 of Chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

# Question 10 of the Statement of Financial Affairs

Xena Express Inc a/k/a Pet Friendly Inc

7

# Exhibit "JJ"

**Henry A. Callaway**
P.O. Box 123
Mobile, Alabama 36601

December 27, 2012

Honorable Callie V.S. Granade
United States District Court
Southern District of Alabama
113 St. Joseph Street
Mobile, Alabama 36602

     Re:    <u>USA v. Teresa Weinacker</u>, Criminal Case No. 1:12-cr-00168-CG-N

Dear Judge Granade:

        I am a lawyer in private practice with the firm of Hand Arendall LLC. I have practiced in Mobile since 1983, with an emphasis on bankruptcy for the last twenty years or so. I represented creditor National Loan Acquisition Company ("National Loan") in its collection of a debt owed by Xena Express, Inc. d/b/a Pet Friendly ("Pet Friendly"), Charles Weinacker, and defendant Teresa Weinacker. I am the person who discovered the fraud which is the basis of the criminal charges in this case. I am writing solely in my own personal capacity and not on behalf of either National Loan or my law firm.

        National Loan held a $300,000 note by Pet Friendly which was guaranteed by the Weinackers and secured by a second mortgage on the business location in Fairhope (behind a first mortgage of about $1 million). My law partner David Quittmeyer foreclosed upon the second mortgage. I then filed an ejectment action on behalf of National Loan against Pet Friendly in the Circuit Court of Baldwin County. Pet Friendly and the Weinackers refused to vacate. I finally obtained a summary judgment for ejectment and went with a Baldwin County sheriff's deputy and a locksmith to take physical possession and secure the premises on September 8, 2009.

        I also filed suit in this court on the deficiency, <u>National Loan Acquisition Company v. Pet Friendly, Inc. n/k/a Xena Express, Inc., Charles W. Weinacker Jr., and Teresa Y. Weinacker,</u> Civil Action No. 1:09-cv-00169-CG-B. On May 29, 2009, this Court entered a default judgment against all the defendants in the amount of $160,731.22 and for possession of Pet Friendly's accounts receivable and inventory. In August 2009, I filed a motion for a writ of garnishment to Walmart, Inc., which the Court issued on August 28, 2009.

        Pet Friendly filed a Chapter 11 bankruptcy, Case No. 09-14817, on October 15, 2009. As noted above, National Loan held a security interest in Pet Friendly's accounts receivable and had been awarded those accounts receivable by this Court.

**Exhibit "KK" - Page 1 of 3**

Under Bankruptcy Code § 363(c)(2), a debtor cannot use a secured creditor's "cash collateral" such as accounts receivable without permission from the creditor or bankruptcy court authorization. On behalf of the secured creditor, I thus wanted to make sure that all of the accounts receivable from Walmart were preserved and ultimately remitted to my client.

However, as I investigated the situation and discussed the matter with Walmart's outside counsel, I was very surprised to learn from him that, pursuant to Teresa Weinacker's instruction, Walmart had paid a total of $54,961.56 on October 16 and 19, 2009 to a bank account which was not listed in the bankruptcy schedules. Enclosed is a copy of the authorization sheet which Teresa Weinacker had sent to Walmart directing that payments go to account number 043337626 at Hancock Bank. I immediately subpoenaed records of that account from Hancock Bank and found that Ms. Weinacker had opened the account in September 2009 in the name of "Teresa Y. Weinacker d/b/a Pet Friendly" (see enclosed account records). Ms. Weinacker did not reveal the Hancock Bank account in the bankruptcy schedules or at the meeting of creditors at which she testified under oath.

A Chapter 11 debtor must set up a "debtor-in-possession" bank account and is required to file monthly and quarterly reports with the bankruptcy court as to what money is going in and out of that account. Attached is a copy of the November 2009 Regions bank statement for Pet Friendly's debtor-in-possession account. Teresa Weinacker wrote a check (also enclosed) dated November 2, 2009 to "cash" in the amount of $23,000 from the Pet Friendly debtor-in-possession account and endorsed it herself, almost emptying the account. Although Ms. Weinacker later claimed that the money had gone to pay employees, she never produced any evidence of such, she did not obtain bankruptcy court authorization to do so, and it is inconsistent with the fact that the business had closed almost two months earlier on September 8, 2009.

After discovering what had happened, I filed an adversary proceeding in bankruptcy court, a copy of which is enclosed (the exhibits are available on ECF). After an evidentiary hearing, Bankruptcy Judge William Shulman entered a preliminary injunction, a copy of which is also enclosed. As far as I know, Ms. Weinacker never took any actions in response to the preliminary injunction, did not turn over records or account for the missing funds as ordered, and never repaid any money. The bankruptcy court ultimately entered a similar final injunction against Ms. Weinacker, with which she also did not comply (enclosed).

The bankruptcy court converted the Pet Friendly case to Chapter 7 liquidation. The Chapter 7 trustee has recovered only a very small amount from the sale of assets, and no distribution has been made to date to creditors. The Weinackers and Pet Friendly have paid nothing voluntarily on the civil judgment entered by this Court.

Although I am a creditor's attorney, I am very sympathetic to the situation of the honest debtor, whether a corporation or an individual. As we all know, real estate can go down in value, business can drop off, and companies can fail. The bankruptcy courts provide a way for honest debtors to make a fresh start while at the same time maximizing the return for creditors to the extent possible.

**Exhibit "JJ" - Page 2 of 3**

However, the entire bankruptcy system depends upon the honesty of debtors. The bankruptcy court and creditors do not have the time and resources to go behind a debtor's schedules and statement of financial affairs to determine whether the information contained in them is correct. In its schedules and statement of financial affairs, a debtor is required to provide under oath very detailed information about its current and past financial status. The debtor's representative -- here Ms. Weinacker -- is then required to testify to the veracity of those schedules and answer questions about them at the meeting of creditors held in each bankruptcy case. If the bankruptcy court and creditors cannot rely on information provided by a debtor, the whole bankruptcy system collapses.

From my perspective, Ms. Weinacker has shown no repentance or remorse over her bankruptcy fraud. Instead, the response of her husband and her has been to lash out at the other parties involved, such as Judge Shulman, Bankruptcy Administrator Travis Bedsole, Pet Friendly's bankruptcy attorney Irvin Grodsky, and me as National Loan's attorney. Enclosed is a copy of an e-mail which Ms. Weinacker sent to bankruptcy court personnel which caused the U.S. Marshals to get involved. I am also enclosing copies of e-mails that Charles Weinacker sent my law partner David Quittmeyer during the foreclosure process threatening to have him disbarred and to Aurora Bank, holder of the first mortgage, regarding assets he claimed to own in the Cayman Islands and Honduras. Teresa Weinacker did not comply with the two injunctions entered by the bankruptcy court and has provided no accounting for the missing funds. The Weinackers have made no attempts to pay on the civil judgment entered by this Court. Given the history to date, I doubt that an order of criminal restitution will be more effective.

I understand that Ms. Weinacker has pleaded guilty and is coming before you for sentencing on January 17, 2013. In my opinion, Ms. Weinacker's actions were not a simple oversight but a deliberate, ongoing, intentional fraud on the bankruptcy court and creditors. To me, a sentence of probation plus restitution (for money that is already the subject of a civil judgment and two bankruptcy court orders) does not seem like much deterrent to others who might be tempted to take similar actions.

Thank you for your consideration.

Yours truly,

Henry A. Callaway

HAC/apw
Enclosures
M:207541
1608167_1.doc

**Exhibit "KK" - Page 3 of 3**