# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERESA Y. WEINACKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **1:15-cv-267-AKK** |
| **CHARLES BAER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Teresa Y. Weinacker pursues this case against the named defendants[1] under 18 U.S.C. §§ 241 and 242, and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. Doc. 28. Weinacker alleges that during a civil bankruptcy she filed for her company, the named defendants acted individually and in concert to obstruct justice and violate her constitutional rights. *See generally* doc. 28. Presently before the court are motions to dismiss the amended complaint filed by numerous defendants. *See* docs. 36, 39, 40, 41, 42, 46. Based on a review of the evidence and

---

[1] In addition to the 34 named defendants, who include judicial officers, employees of the Department of Justice, and private lawyers, Weinacker has also alleged claims against John Does. Doc. 28 at 1. Generally, there is no fictitious party practice in federal court unless a plaintiff is able to specifically describe or identify the defendant. *See Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010); *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n.1 (11th Cir. 1997). In light of Weinacker's failure to specifically describe or identify the fictitious defendants, the claims against these fictitious parties are due to be dismissed.

the law, the court finds that Weinacker has failed to state cognizable claims and the motions are due to be granted.[2]

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the claimant is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(6) is permitted when a plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In a motion to dismiss, the factual allegations in the plaintiff's complaint are taken as true and "the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *South Florida Water Mgmt Dis. v. Montalvo*, 84 F.3d 402, 406 (1996). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is plausible where it "pleads

---

[2] Weinacker has also filed a motion to disqualify counsel for defendants Hand Arendall, LLC, Henry Callaway, Roger L. Bates, James T. Allen, National Loan Acquisitions Company, and Robert L. Stevenson. Doc. 19. In light of the finding that her claims against those defendants are time-barred, the motion to disqualify is **MOOT**.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal for failure to state a claim, then, is appropriate where the plaintiff fails to state a claim that is "plausible on its face." *Id*. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.    <u>FACTUAL BACKGROUND</u>[3]

The allegations in this lawsuit center around Xena Express, a business Weinacker incorporated in 1992. In March 2009, Xena Express' creditors began filing lawsuits to recover outstanding debts. That October, after several creditors obtained judgments against Xena Express, including the seizure of a company bank account and garnishments of the Wal-Mart account used to pay company receivables, Weinacker hired Charles Grodsky, one of the defendants in this case, to file a Chapter 11 bankruptcy petition for Xena Express.

As far as the court can ascertain, Weinacker alleges that Grodsky, various bankruptcy administrators, and creditors behaved unfairly and unlawfully. Allegedly, Grodsky failed to adequately represent Xena Express by refusing to amend the filing to include updated financial information. Weinacker also contends that Bankruptcy Judge William Shulman violated her constitutional rights by

---

[3] For the purposes of Fed. R. Civ. P. 12(b)(6), the plaintiff's allegations are presumed true. As such, the facts are taken from Weinacker's Second Amended Complaint, doc. 28.

instructing her to assert the Fifth Amendment and then drawing a negative inference when Weinacker's refused to answer certain questions.

Apparently, at some point, authorities initiated a criminal investigation against Weinacker for fraud in the bankruptcy filing. Weinacker contends that the Federal Bureau of Investigation and Special Agents Lisa Reiter and Amy White purportedly failed to adequately investigate the evidence against her before presenting it to Assistant United States Attorneys Charles Baer and John Cherry, who then also purportedly failed to investigate prior to presenting their evidence and securing an indictment against Weinacker. Also, Special Agents Reiter and White allegedly violated Weinacker's Fifth Amendment rights when they interviewed her prior to providing her with a copy of the indictment.

As a result of the indictment, Weinacker hired the Friedlander Firm to represent her in the criminal proceeding. This representation is the basis for her claims against the law firm in this lawsuit. Among other things, Weinacker claims the firm failed to investigate, research, file motions, produce mitigating evidence, or prepare a defense strategy. Her primary contention is that the Friedlander Firm purportedly failed to prepare for trial and misled her into accepting a plea deal.

### III.   ANALYSIS

Weinacker has filed a twenty-three count complaint. The movants raise several grounds for dismissal: statute of limitations, failure to state a claim, judicial

immunity, prosecutorial immunity, and standing. To say that Weinacker's complaint is not a model of the short and plain statement required by Federal Rule of Civil Procedure 8 would be an understatement. Indeed, it is the quintessential shotgun pleading that requires the parties and the court to parse out what precisely Weinacker is alleging against each defendant and what laws they purportedly violated. The court has painstakingly reviewed the complaint and the parties' briefs and concludes that Weinacker has failed to plead cognizable claims. To deal with the large volume of allegations, the court will first address the general deficiencies in Weinacker's complaint. Thereafter, in section B, the court will group the defendants into subcategories and address the contentions of each subcategory collectively. Finally, in section C, the court will address the state law claims.

## A. General Pleading Deficiencies

Defendants raise various deficiencies in Weinacker's pleadings that they contend violate Rule 8(a) of the Federal Rules of Civil Procedure. In reviewing these contentions, the court must construe Weinacker's pleadings liberally because she is proceeding *pro se*. *See Alba v. Montford,* 517 F.3d 1249, 1252 (11th Cir. 2008). However, this does not mean that the court is at liberty "to serve as *de facto* counsel for [Weinacker], or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cnty. of Escambia Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott,* 610 F.3d 701 (11th Cir.

2010). With these general edicts in mind, the court will now address the specific contentions.

### 1. Claims against Doug McMillon, Karen Roberts, and Charles Hendricks

Although Weinacker names McMillon, Roberts, and Hendricks as defendants, the amended complaint does not identify which counts apply to them. In fact, the complaint does not identify what their role is, if any, in this dispute. Having reviewed the complaint, the court agrees with McMillon, Roberts, and Hendricks that Weinacker makes no specific allegations against them and that she does not provide any information from which the court can infer their alleged wrongful conduct. *See generally* docs. 1 and 28. Because the allegations against these defendants fail to comply with the pleading standards of Fed. R. Civ. P. 8(a) and fail to state a cognizable claim against them, their motion to dismiss, doc. 42, is due to be granted.

### 2. Counts 8, 9, 13, and 18–20

The court also agrees with the remaining defendants that Counts 8, 9, 13, 18, 19 and 20 fail to state any cognizable right to relief. These counts amount to unsupported legal conclusions that Weinacker generally alleges against all 34 defendants and that offer no reasonable inference of liability. *See Iqbal*, 556 U.S. at 679. For example, Weinacker asserts a violation of unspecified "latent rights" under the Ninth Amendment in Count 8, due to unspecified "unlawful conduct by

the Defendants." Doc. 28 at 19. In Count 9, she invokes Article 1 of the Alabama Constitution against all defendants, alleging that defendants "[denied her] equality and rights to life, liberty and the pursuit of happiness." *Id.* In Count 13, she asserts a claim for an alleged failure to prevent a conspiracy, including a claim that "Defendants furthered the conspiracy by cooperation with lending aid and encouragement to or ratified and adopted the acts of Defendants in turning a blind eye." *Id.* at 23. This count does not specifically outline what the defendants did and what laws they purportedly violated, and instead generally references the bankruptcy case and the alleged procedural issues that occurred at Weinacker's criminal sentencing. *Id.* Next, in Count 18, Weinacker asserts that some of the named defendants falsely portrayed themselves as "victims" of her fraud at sentencing and again takes issue with her criminal conviction. *Id.* at 27. In Count 19, she makes a generalized claim for "restitution" that seems to assert that she is entitled to recover a sum of money because the judge in her criminal case purportedly miscalculated the restitution amount Weinacker owed, and, in Count 20, she makes a claim under the "one satisfaction rule" in which she contends that various defendants erred in concluding that she had committed bankruptcy fraud. *Id.* at 27–28. While Rule 8(a) allows for liberal pleading, these counts are unadorned accusations of purported harm with no indication of what laws these

defendants purportedly violated or how their actions would result in the imposition of liability against them. Therefore, these counts are due to be dismissed.

### 3. Claims under 18 U.S.C. §§ 241 and 242

Counts 1–22 repeatedly reference 18 U.S.C. §§ 241 and 242, which are criminal statutes that prohibit individuals from conspiring or depriving another person's civil rights. To the extent Weinacker intended to raise a civil claim for purported violations of these statutes, she cannot do so because neither statute provides a private cause of action. *See Butler v. Morgan*, 562 F. App'x 832, 835 (11th Cir. 2014); *Milakovich v. USCIS-Orlando,* 500 F. App'x 873, 875–76 (11th Cir. 2012); *Thibeaux v. U.S. Atty. Gen.*, 275 F. App'x 889, 893 (11th Cir. 2008); *Muhammad v. Bethel-Muhammad*, No. CIV.A. 11-0690-WS-B, 2013 WL 5531397, at *4 (S.D. Ala. Oct. 7, 2013). Accordingly, the civil claims, if any, based on 18 U.S.C. §§ 241 and 242 are due to be dismissed.

### 4. Claims under 42 U.S.C. § 1981

The complaint seems to also allege discrimination under 42 U.S.C. § 1981. *See generally* doc. 28. Section 1981 was enacted to "proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger,* 539 U.S. 244, 277 n.23 (2003); 42 U.S.C. § 1981. To state a claim under § 1981, a plaintiff must allege facts establishing at a minimum that she is a member of a racial minority. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250,

1270 (11th Cir. 2004). There is no such allegation here. Moreover, the complaint does not identify even one enumerated activity in connection with the § 1981 claims. *See* doc. 28; *see also Kinnon v. Arcoub, Gopman & Associates, Inc.,* 490 F.3d 886, 890 (11th Cir. 2007) ("To state a claim under § 1981, a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights.") (internal citations omitted). Instead, Weinacker states only that her "allegations are factual as referenced and demonstrate inadequate treatment, discrimination, bias and prejudice." Doc. 28 at 11. These contentions fall significantly short of pleading a claim for race discrimination.

### 5. *Claims under 42 U.S.C. § 1983*

Weinacker also alleges claims pursuant to § 1983 for alleged harm in her civil and criminal proceedings. In general, she alleges various constitutional violations that she argues led to her indictment and subsequent conviction of bankruptcy fraud. *See generally* doc. 28. As a threshold matter, as to her criminal case, "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477 (1994) (emphasis original); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) (a plaintiff cannot use § 1983 to challenge the fact or duration of a valid conviction.). Therefore, because Weinacker has not pleaded that a court has invalidated her convictions, the § 1983 claims related to her convictions fail.

Moreover, her § 1983 claims are barred by the statute of limitations. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). "The two-year limitations period of Ala. Code § 6-2-38(l) applies to section 1983 actions in Alabama." *Belue v. Benn*, 599 F. App'x 370 (11th Cir. 2015). Based on her contentions, it is clear that Weinacker had notice of her purported cause of action during the allegedly wrongful conduct that occurred in the civil bankruptcy filing in 2009 and the subsequent criminal proceeding in October 2012. *See Rawlings v. Ray,* 312 U.S. 96, 98 (1941). Indeed, given Weinacker's contentions that she is innocent, she should have known of the alleged violations contemporaneously, doc. 28, and should have filed her lawsuit by October 2014, or certainly by February 2015—i.e., two years after her sentencing. Because Weinacker filed this lawsuit in May 2015, *see* doc. 1, and has offered no reason for equitable tolling,[4] her § 1983 claims are time barred.

---

[4] In light of the 1996 amendment, which became effective May 17, 1996, Weinacker's incarceration is not a valid basis to toll the statute of limitations under Alabama law. *See* Ala Code § 6-2-8-(a) (1975 as amended). Pre-1996, the statute stated "[i]f anyone entitled to commence any of the actions enumerated in this chapter . . . is . . . imprisoned on a criminal charge for any term less than life, he shall have three years, or the period allowed by law for the commencement of such action if it be less than three years, after the termination of such disability to commence an action…" Ala. Code §6-2-8(a) (1975).

### 6. Claims under 42 U.S.C. § 1985

Weinacker claims that the defendants conspired to deprive her of her civil rights and to send her to prison for bankruptcy fraud, in violation of 42 U.S.C. § 1985. Presumably, because Weinacker has not alleged that defendants prevented officers from performing their duties or obstructed justice by intimidating witnesses or parties, *see* 42 U.S.C. §1985(1) and (2), she is pursuing a claim under section 3, which concerns the deprivation of rights or privileges under the Constitution. To state a claim under §1985(3), Weinacker must allege and prove "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. Of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–9 (1983). Weinacker's claim fails because, with respect to the second element, she cannot show that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–268 (1993). In fact, the Second Amended Complaint, which only states vaguely that "[t]he conduct and actions of Defendants acting in concert under color of law

in authorizing, directing and causing [Weinacker's] criminal charges were excessive and unreasonable," doc. 28 at 13, alleges no facts that hint at either a racial or class-based discriminatory animus. Accordingly, the conspiracy claims are due to be dismissed.[5]

### 7. Claims under 42 U.S.C. § 1988

Dismissal is also warranted for the alleged violations of 42 U.S.C. § 1988. Section 1988 allows for the recovery of attorney fees by *lawyers* for prevailing parties in civil rights actions and has no application to non-lawyer *pro se* litigants. *See Kay v. Ehrler*, 499 U.S. 432, 434 (1991) ("The circuits are in agreement . . . on the proposition that a *pro se* litigant who is not a lawyer is *not* entitled to attorney's fees. . . . We are also satisfied that they were correctly decided."); *Cofield v. City of Atlanta*, 648 F.2d 986 (5th Cir. 1981) ("[T]he intent of Congress in enacting section 1988 would be seriously undermined if we allowed *pro se* litigants to recover legal fees under that section."). Therefore, to the extent Weinacker is attempting to recover attorney fees or to state a cause of action under § 1988, those claims are due to be dismissed. *See, e.g., McLaughlin v. City of LaGrange*, 662

---

[5] The court must also dismiss the derivative claims under 42 U.S.C. § 1986, which require liability under § 1985. *See Park v. City of Atlanta*, 120 F.3d 1157, 1159 (11th Cir. 1997) (holding that § 1986 "provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'") (citing 42 U.S.C. §1986).

F.2d 1385, 1388 n.1 (11th Cir. 1981) ("Section 1988 does not create an independent cause of action for deprivation of constitutional rights . . .").

## B. Claims Against Each Subset of Defendants

The court turns next to the claims Weinacker asserts against each subset of defendants. For the reasons stated below, these claims are also due to be dismissed.

### 1. Claims against Prosecutors Charles Baer, Kenyen R. Brown, and John Cherry

According to Weinacker, Assistant United States Attorneys Baer and Cherry, and United States Attorney Brown violated her rights by using "improper methods which were calculated to produce [Weinacker's indictment and] wrongful conviction by not using any of [Weinacker's] evidence." Doc. 28 at 11–12. Allegedly, "[i]t was the Defendants' duty to use every legitimate resource to bring about a just conviction for [Weinacker]." *Id.* at 11.

Prosecutors are entitled to absolute immunity for actions taken in the performance of their function as advocates for the government. *Buckley v. Fitzsimmons,* 509 U.S. 259, 272–3 (1993). These include the initiation and pursuit of criminal prosecution, as well as their appearances before the court. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–43 (2009); *Burns v. Reed*, 500 U.S. 478, 492 (1991). Moreover, decisions relating to the types of evidence to present, including exculpatory material, and what cases to present to a grand jury are acts

within the discretion of the prosecutor. *Rehberg v. Paulk*, 611 F.3d 828, 837–38 (11th Cir. 2010) (citing *Burns v. Reed*, 500 U.S. at 490–92). Relevant here, the bulk of Weinacker's claims concern the manner in which these prosecutors decided to bring charges against her and their decisions about the presentation of evidence to the grand jury. Doc. 28 (generally counts 1–22). This is conduct that is within their capacities as advocates for the government and for which they are entitled to absolute prosecutorial immunity. That these prosecutors purportedly improperly influenced the grand jury, failed to use all the evidence at their disposal, and failed to fully investigate the claims against Weinacker, doc. 28 at 12–13, 18, is irrelevant because "it is clear that, even if [the prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial, he is entitled to absolute immunity from liability for doing so." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279–80 (11th Cir. 2002).

Weinacker also takes issue with the statements Brown made to the press regarding her conviction. "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor." *Buckley*, 509 U.S. at 277–78. As such, prosecutors are only entitled to qualified immunity for media related comments. However, while "[d]efamation, by itself, is a tort actionable under the laws of most States, [it is] not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Therefore, "a plaintiff claiming a deprivation

based on defamation by the government must establish the fact of the defamation "plus" the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1302 (11th Cir. 2001). Weinacker cannot make this showing because the alleged defamatory statements detailed the objective facts of her conviction. According to Weinacker, two months after she pleaded guilty and a week before her sentencing, Brown issued a press release stating that Weinacker's charges concerned a "bust-out scheme" and that the court had "sentenced [Weinacker] to federal prison for felony falsification of a Statement of Financial Affairs filed in her company's bankruptcy and ordered to pay restitution." Doc. 28 at 25. Although Brown purportedly issued the press release a week before Weinacker's sentencing, there is no constitutional injury because Weinacker has not alleged that Brown's statements prejudiced her at sentencing or led to some other injury. Without a constitutional injury, Weinacker cannot maintain a defamation claim against Brown.

For all these reasons, the claims against the prosecutorial subset of defendants are due to be dismissed.

### 2. *Claims against Judicial Officers*

Weinacker asserts money damages claims against retired Bankruptcy Administrator Travis M. Bedsole, Jr., Bankruptcy Judge William Shulman, United

States District Judges Kristi DuBose and Callie V.S. Granade, and United States Magistrate Judge Katherine P. Nelson for various purported violations of §§ 1981, 1983, 1985, 1986, and 1988, as well as various state law claims. Allegedly, the judicial defendants acted in concert to violate her constitutional rights. Judges who are performing judicial acts are entitled to judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 13 (1991). In determining whether an act is judicial, the court considers "the 'nature' and 'function' of the act, not the act itself." *Id*. Whether a judge's actions are "judicial in nature," hinges on "(1) whether the precise act complained of is a judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). However, "[i]n some situations, immunity is to be afforded even though one or more of the factors is not met." *Id*. Critically, judges are entitled to absolute immunity for all actions taken in their judicial capacity, "except for where that judge acts in the absence of all jurisdiction." *Christman v. Walsh,* 416 F. App'x 841, 844–45 (11th Cir. 2011) (internal citations omitted); *see also Mireles*, 502 U.S. at 10. Moreover, judicial immunity "applies even when the judge is accused of acting maliciously and corruptly . . .," *Pierson v. Ray,* 386 U.S. 547, 554 (1967),

and "even when the judge's acts are in error, . . . or were in excess of his or her jurisdiction," *Christman,* 416 F. App'x at 845.

The acts Weinacker cites are quintessentially judicial in nature. More specifically, overseeing a criminal trial, including dealing with evidentiary and procedural matters, and sentencing a defendant fall squarely within *Mireles.* There is no allegation in the complaint that the judicial officers acted in a clear absence of jurisdiction or outside of their judicial capacity. *See generally* doc. 28. Rather, these officers purportedly acted unfairly or were reckless and/or negligent in their sentencing or oversight of Weinacker's judicial proceedings. *Id.* This alleged conduct—even if true—is not grounds for waiving judicial immunity because "[it] applies even when the judge is accused of acting maliciously and corruptly . . ." *Pierson,* 386 U.S. at 554. Indeed, "[a]lthough unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles,* 502 U.S. at 11. Accordingly, because Weinacker has failed to meet her burden, the claims against the judicial officers are due to be dismissed.

Judicial immunity also extends to non-judges "who perform functions closely associated with the judicial process." *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.

1988); *see also Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 603 (11th Cir. 1985) (finding court-appointed officials "enjoy judicial immunity for acts within the scope of their authority, and that their authority extends to carrying out faithfully and carefully the orders of the appointing judge."). Courts follow a functional approach to determinations of entitlement to judicial immunity and under this approach, immunity "flows . . . from the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985). Consequently, courts have extended immunity to law clerks, judicial assistants, prosecutorial staff, as well as bankruptcy judges, administrators, and trustees. *See, e.g., Mosser v. Darrow,* 341 U.S. 267 (1951)*; Mullis v. United States Bankruptcy Court*, 828 F.2d 1385 (9th Cir. 1987); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A, 1981). Therefore, with respect to Weinacker's claims against Judge Shulman and Administrator Bedsole for their actions in the bankruptcy proceeding, these officers are also entitled to judicial immunity. *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). The crux of Weinacker's allegations against Judge Shulman is that he conducted the civil bankruptcy proceeding in an unfair manner and made errors in overseeing evidentiary matters. Doc. 28 at 17–18. Overseeing a bankruptcy and making procedural decisions are clearly judicial activities. *Bolin v. Story,* 225 F.3d 1234, 1240 (11th Cir. 2000). Likewise, Bedsole's alleged misconduct—i.e., purportedly carrying out his duties

unfairly by failing to update Weinacker's bankruptcy schedules, doc. 28 at 17, and providing information to the FBI about the purported materiality of certain accounts that were the subject of the criminal investigation, *id.* at 19, also falls within the purview of the judicial process. *See Mireles*, 502 U.S. at 13. Significantly, although she contends these officers failed to carry out their duties, Weinacker does not plead that Bedsole or Judge Shulman acted outside the scope of their respective judicial functions or authority. Without such a showing, no basis exists to find that Bedsole or Judge Shulman are not entitled to judicial immunity.

### 3. *Claims against federal agencies and their directors*

Weinacker makes general claims for damages under 42 U.S.C. § 1981 *et seq.*, as well as a *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) (hereafter "*Bivens*") action, arising out of the investigation conducted by Special Agents Lisa Reiter and Amy White of the FBI that led to her criminal conviction. She brings these claims against United States Attorney General Loretta Lynch, her predecessor Eric Holder, Jr., FBI Director James Comey, and Director of the Administrative Office of United States Courts James C. Duff, individually and in their official capacities, and is also suing their respective federal agencies.

These claims have several deficiencies that warrant dismissal. First, federal agencies are not entities that are subject to suit, *see, e.g., Castleberry v. Alcohol*

*Tobacco and Firearms Division*, 530 F.2d 672, 673 n.3 (5th Cir. 1976), and "[a]n extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself," *F.D.I.C. v. Meyer,* 510 U.S. 471, 486 (1994). As a result, Weinacker's claims against these agencies actually function as claims against the United States and fail on sovereign immunity grounds. *See, e.g., Lehman v. Nakshian,* 453 U.S. 156, 160 (1981) ("[T]he United States, as sovereign, is immune from suit save as it consents to be sued."); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686 (1949). Similarly, suits against agency heads in their official capacities are suits against the agency and the United States and, as such, fail for the same reasons. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Therefore, the claims against the federal agencies and the official capacity claims against the agency heads are due to be dismissed.

Moreover, to the extent that Weinacker is making a claim against these agency heads on the basis of *respondeat superior*, a government official sued in her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a *respondeat superior* theory or on the basis of vicarious liability. *Iqbal*, 556 U.S. at 676; *see also Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992) ("Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability."). Rather, Weinacker is required to plead that each

government-official defendant, through that individual's own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676. Because there is no allegation in the amended complaint showing that the supervisory officials had any involvement with or personal knowledge of the alleged conduct, the individual capacity claims against these agency heads are also due to be dismissed.

### 4. *Claims Against Legal Providers*

Weinacker makes numerous claims against her lawyers and the lawyer for Xena Express for purported ineffective assistance they provided. As pleaded, Weinacker contends that the lawyers violated her Sixth Amendment right to counsel. Doc. 28 at 15. However, by its language, the Sixth Amendment does not afford a cause of action against a private attorney for her performance. Moreover, § 1983 actions for violating constitutional rights will not impose liability on private persons unless the challenged conduct may be "fairly attributable to the state." *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982). Because the complaint states that the named attorneys are private attorneys and provides no facts to establish a state action, Weinacker cannot pursue a § 1983 claim against the legal providers.[6]

---

[6] To the extent that Weinacker intended to plead state law malpractice claims instead of a Sixth Amendment claim, those claims are also due to be dismissed. First, as to the civil case, Weinacker does not dispute that Grodsky actually represented Xena Express, instead of Weinacker, in the bankruptcy case. Docs. 38 at 2; 28 at 3, 4, 5. A legal malpractice claim under the Alabama Legal Services Liability Act ("ALSLA"), Ala. Code 1975 §§ 6-5-572, 574, requires "a duty, a breach of that duty, an injury, that the breach was the proximate cause of the injury, and damages." *Indep. Stave Co. v. Bell, Richardson & Sparkman, P.A.,* 678 So. 2d 770, 771 (Ala. 1996). Because Grodsky did not represent Weinacker, Weinacker lacks standing to bring a claim against him for legal malpractice. *Cunningham v. Langston, Frazer, Sweet & Freese, P.A.,* 727 So. 2d 800, 803 (Ala. 1999) ("The language of the ALSLA makes it

## C. **State Law Claims**

Weinacker also pleads several state claims, including outrage, intentional infliction of emotional distress, abuse of process, and loss of consortium. Doc. 28 at 19–35. For the reasons below, dismissal is also warranted on these claims.

### 1. *Tort of Outrage/Intentional Infliction of Emotional Distress*

Weinacker pleads separate claims for outrage and intentional infliction of emotional distress. Doc. 28 at 20, 24. However, the claims are identical in Alabama. *See, e.g., Chaney v. Ala West-AL, LLC*, 22 So. 3d 488, 498 (Ala. 2008). To recover for an outrage claim, Weinacker must prove that the defendants' conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Harrelson v. R.J.*, 882 So. 2d 217, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993)). Significantly, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *American Road Service Co. v. Inmon*, 394 So. 2d 361,

---

clear that the Act refers to actions against 'legal services providers' alleging breaches of their duties *in providing legal services.*") (emphasis original). Alternatively, the claim also fails because Weinacker filed this action almost three years after Grodsky withdrew from representing Xena Express in June 2012. *See* doc. 39 at 4; Ala. Code § 6-5-574(a) ("All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim . . .").

Likewise, any claim against Weinacker's defense lawyers is also barred by the statute of limitations. Based on Weinacker's pleadings, the Friedlanders' alleged malpractice occurred in October 2012 when they counseled Weinacker to enter a guilty plea. Doc. 28 at 8. Therefore, Weinacker had until October 2014, or, alternatively, if the court uses her sentencing date in February 2013, then until February 2015, to file her claim.

365 (Ala. 1980). Rather, outrage is a limited cause of action "available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). To that end, the Alabama Supreme Court has recognized the tort only in three categories: "1) cases having to do with wrongful conduct in the context of family burials; 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim; and 3) a case involving egregious sexual harassment." *Id.* (internal citations omitted); *Callens v. Jefferson County Nursing Home,* 769 So. 2d 273 (Ala. 2000).[7] The facts alleged here, i.e., purported damages arising from a criminal conviction that still stands or the publication of the conviction, simply do not rise to a level that could be "regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co*., 394 So. 2d at 365.

## 2. *Abuse of Process*

An abuse of process claim requires a showing of: "(1) malice; (2) the existence of an ulterior purpose; and, (3) improper use of process in the prosecution of the action." *Caldwell v. City of Tallassee*, 679 So. 2d 1125, 1126 (Ala. Civ. App. 1996). A plaintiff must prove each element individually. The claim "presupposes an originally valid and regular process, duly and properly issued" and "the validity

---

[7] *See also O'Rear v. B.H.*, 69 So. 3d 106, 118-19 (Ala. 2011) (affirming an outrage judgment against a physician who, when asked by a mother to counsel her teenage son about the unhappiness he experienced as a result of his parents' divorce, instead began exchanging addictive prescription drugs for sex for a number of years, resulting in the boy's drug addiction).

of the process is no defense to an action for its abuse. It is the malicious perversion of a regularly issued process to accomplish a purpose whereby a result not lawfully or properly obtainable under it is secured." *Farm Country Homes, Inc. v. Rigsby*, 404 So. 2d 573, 576 (Ala. 1981). However, a defendant "cannot be held liable for abuse of process unless he or she somehow acted outside the boundaries of legitimate procedure after the initiation of the proceeding." *Haynes v. Coleman*, 30 So. 3d 420, 426 (Ala. Civ. App. 2009).

Weinacker has alleged no facts from which the court could infer malice or the existence of an ulterior motive from any of the defendants. Instead, Weinacker makes conclusory allegations about the purported motivations of various defendants. *See, e.g.,* doc. 28 at 21–22. Even construing the complaint liberally, there is nothing from which the court can infer that any defendant had an ulterior purpose or acted with malice. Accordingly, this claim is due to be dismissed.

### 3. Loss of consortium

Finally, dismissal is also warranted on the loss of consortium claim Weinacker asserts for her husband in Count 23. Doc. 28 at 34. The claim belongs to Weinacker's husband and is one that Weinacker cannot raise on his behalf. *Ex parte N.P.*, 676 So. 2d 928, 931 (Ala. 1996) (loss of consortium claim is the derivative claim of the non-injured spouse arising out of injury to the injured spouse); *Jenkins v. State Farm Mut. Auto. Ins. Co.,* 30 So. 3d 414, 418-19 (Ala.

Civ. App. 2008) (The non-injured spouse's right is "his or her independent right and a separate property right" and therefore "the noninjured spouse is entitled to pursue an independent cause of action of his or her own behalf."). The claims also fail even under the alternative pleading under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 because those claims are not derivative, but are "personal to the injured party." *Estate of Gilliam ex rel. Waldroup v. City of Prattville,* 639 F.3d 1041, 1047 (11th Cir. 2011). Because Weinacker cannot allege a personal interest in a loss of consortium and her husband cannot tack on a derivative claim arising out of any alleged violation of her constitutional rights, Weinacker's claim against the defendants for loss of consortium is also due to be dismissed.

## CONCLUSION

For the reasons above, the motions to dismiss, docs. 36, 39, 40, 41, 42, 46, are due to be granted. In granting these motions, the court notes that Weinacker has filed a Third Amended Complaint, doc. 56, well after the defendants filed their motions to dismiss. Under Fed. R. Civ. P. 15(a)(2), which Weinacker invokes, a party "may amend its pleading only with the opposing party's written consent or the court's leave . . . ." Weinacker's amendment is flawed because Weinacker has not moved for leave to amend and the Third Amended Complaint does not have the consent of the opposing parties. *See* Fed. R. Civ. P. (15)(a)(2). In fact, the defendants have moved to strike. Docs. 61, 62, 63, 64, 65. While leave to amend

should be "freely given where justice requires," Fed. R. Civ. P. 15(a)(2), the court is not required to grant leave "when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999). Upon review of the Third Amended Complaint, it suffers from the same defects as the initial complaint the court struck, doc. 1, in that it contains no numbered counts, does not clearly identify the defendants' conduct and the purported laws they violated, and does not indicate which defendants each "violation" is against. *See generally* doc. 56 at 8–21. In fact, the substance of the Third Amended Complaint is virtually identical to the Second Amended Complaint that is the subject of the current motions to dismiss, doc. 28, albeit some 10 pages shorter. In short, because the Third Amended Complaint offers no additional facts to cure the various deficiencies raised by the defendants, the court **STRIKES** the Third Amended Complaint as futile.

**DONE** the 23rd day of August, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE